1   Leodis C. Matthews [SBN 109064]
    lmatthews@lmattys.com
2   D. P. Sindicich (Of Counsel) [SBN 78162]
    JurPython@roadrunner.com
3   LAW OFFICES OF LEODIS C. MATTHEWS, APC
    4322 WILSHIRE BOULEVARD, STE 200
4   LOS ANGELES, CALIFORNIA 90010-3792
    TELEPHONE: 323.930.5690
5   FACSIMILE: 323.930.5693

6   Attorneys For:  PLAINTIFF
    C-ONE TECHNOLOGY
7   & PRETEC ELECTRONICS CORPORATION.

8
                    **UNITED STATES DISTRICT COURT**
9
                  **NORTHERN DISTRICT OF CALIFORNIA**
10
                      **SAN FRANCISCO DIVISION**
11

12
    **MOUNT & STOELKER, A PROFESSIONAL**        CASE NUMBER:  **3 6 6 0**
13  **CORPORATION,**                            CV  08

14                          **Plaintiffs**       **NOTICE OF REMOVAL OF
                                                 SANTA CLARA SUPERIOR COURT
15                                               CASE NO 108 CV 105975
                                                 TO THE SAN FRANCISCO DIVISION
16                                               OF THE UNITED STATES
                                                 DISTRICT COURT FOR THE
17                      - Vs -                    NORTHERN DISTRICT
                                                 OF CALIFORNIA**
18

19
    **C-ONE TECHNOLOGY, A TAIWANESE
20  CORPORATION; PRETEC ELECTRONICS
    CORPORATION, A CALIFORNIA
21  CORPORATION; INTERNATIONAL CENTER
    FOR DISPUTE RESOLUTION, A DIVISION OF
22  THE AMERICAN ARBITRATION
    ASSOCIATION, AND DOES 1 THROUGH 50
23  INCLUSIVE**

24                          **Defendants.**

25

26
    **To The United States District Court For The Northern District of California:**
27

28  **NOTICE OF REMOVAL OF SANTA CLARA SUPERIOR COURT ACTION TO FEDERAL COURT
    C-ONE TECHNOLOGY -V- MOUNT & STOELKER
    Case No.**

1    1.    C-One Technology, a Taiwanese Corporation, is a named Plaintiff in the
2  above-entitled cause and a named Defendant in the California State Court action brought in
3  the Alameda Superior Court (San Jose Division)[1]. Pursuant to the provisions of Sections
4  1332, 1441, and 1446 of Title 28 of the United States Code, C-One Technology removes this
5  California Superior Court action [Case No. 108 CV 105975] to the United States District
6  Court for the Northern District of California, San Francisco Division, which is within the
7  same the federal judicial district and division in which the action between C-One
8  Technology, as plaintiff, and Mount & Stoelker, et. al., as defendant, is currently pending
9  [Ref. Case No. 3:08-cv-02442-MEJ].

10    2.    The State Court action for which removal is being sought is a claim for
11  Declaratory Relief stemming from a claim filed by both C-One Technology and Pretec
12  Electronics for arbitration of their disputes with *Mount and Stoelker, et al.*, before the
13  "International Centre for Dispute Resolution", a division of the American Arbitration
14  Association. To preserve their rights C-One Technology and Pretec Electronics filed their
15  above-referenced  federal action which alleged the same claims as those set forth in the
16  arbitral claim as well as a prayer for declaratory relief.

17    3.    Mount and Stoelker (Plaintiff in the State action and Defendant in the Federal
18  action) is a Professional Corporation organized and existing under the laws of the State of
19  California, with its principal place of business in the City of San Jose, County of Santa Clara.

20    4.    Daniel S. Mount (Defendant ins the Federal action) is a citizen of the State of
21  California, is licensed to engage in the practice of law in this State and was practicing law
22  at Mount & Stoelker's office located at Suite 1650, 333 West San Carlos, San Jose,
23  California.

24    5.    C-One Techonolgy (Plaintiff in the Federal action and Defendant in the State
25  action is and at al times herein relevant was a Taiwanese Corporation which has its principal

26  _____

27    [1] First Amended Complaint filed February 25, 2008

28  **NOTICE OF REMOVAL OF SANTA CLARA SUPERIOR COURT ACTION TO FEDERAL COURT**
**C-ONE TECHNOLOGY -V- MOUNT & STOELKER**
**Case No.**                                                                Page -2-

1  place of business in Hsin-Chu, Taiwan. In its State action, Mount and Stoelker admitted (Pg.

2  1., Ln. 21 of its complaint) that C-One Technology was a Taiwanese Corporation.

3      6.    Given the above, removal of the Santa Clara Superior Court State action to the

4  United States District Court for the Northern District of California (San Francisco Division)

5  is entirely proper under 28 U.S. C. 1441 because there is complete diversity of citizenship

6  between C-One Technology, a Taiwanese Corporation and both Mount & Stoelker, a

7  California Professional Corporation and Daniel S. Mount, an individual who is domiciled in

8  and citizen of the State of California. The United States District Court would, therefore,

9  have had original jurisdiction of the California State Court matter filed by Mount & Stoelker

10 under 28 U.S.C. 1332 had the action been brought in federal court originally.

11     7.    C-One Technology further believes that removal of the Santa Clara Superior

12 Court State action to the United States District Court is also proper under the one-judgment

13 rule since the issues raised in Mount & Stoelker's declaratory relief state action are either (a)

14 inextricably tied to, or (b) would be rendered moot by the filing of the above-referenced

15 federal action in which Plaintiff's are seeking damages well in excess of the jurisdictional

16 threshold amount of $75,000.00 exclusive of interest and costs.

17     8.    C-One Technology files a copy of all process, pleadings, papers, and orders

18 served and/or received on defendants in this Santa Clara Superior Court state action with this

19 Notice.  These documents are attached to this Notice as EXHIBITS "A" through "O",

20 respectively.

21     9.    This Notice of Removal is timely under 28 U.S.C. § 1446(b) because it was

22 filed (a) within one year of the commencement of the state court action, and (b) service of the

23 state court declaratory complaint has not served upon the defendants and no responsive

24 pleadings have been filed in the state court action, although counsel for C-One Technology

25 did make a "special appearance" in the state court action only for the purpose to challenge

26

27

28 **NOTICE OF REMOVAL OF SANTA CLARA SUPERIOR COURT ACTION TO FEDERAL COURT**
   **C-ONE TECHNOLOGY -v- MOUNT & STOELKER**
   **Case No.**                                                                    Page -3-

1　jurisdiction of the state court. C-One Technology has not otherwise been served as a

2　defendant in that action nor otherwise appeared in the state court action.

3　　　　　10.　　Pretec Electronics Corporation [2] (Defendant in the State action and Plaintiff

4　in the Federal action) which had its principal place of business in the City of Fremont,

5　California joins in and consents to the removal of the Santa Clara Superior Court state action

6　to the United States District Court for the Northern District of California, San Francisco

7　Division. This consent is indicated by the signature of its counsel on this Notice of Removal.

8　　　　　　　　　　　　　　　　　　　　　　　　　　Respectfully Submitted

9　Date: July 16, 2008

10　　　　　　　　　　　　　　　　By:

11　　　　　　　　　　　　　　　　　　Leodis C. Matthews
　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiffs
　　　　　　　　　　　　　　　　　　　C-One Technologies &
12　　　　　　　　　　　　　　　　　　Pretec Electronics Corporation

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27　　　　　[2] Pretec Electronic's corporate structure has since been dissolved.

28

# Exhibit A

00001

# CIVIL LAWSUIT NOTICE

**ATTACHMENT CV-5012**

CASE NUMBER: ___ **1 0 8 C V 1 0 5 9 7 5**

Superior Court of California, County of Santa Clara
191 N. First St., San Jose, CA 95113

## READ THIS ENTIRE FORM

**PLAINTIFFS** (the person(s) suing): Within 60 days after filing the lawsuit, you must serve each defendant with the *Complaint, Summons*, an *Alternative Dispute Resolution (ADR) Information Sheet*, and a copy of this *Civil Lawsuit Notice*, and you must file written proof of such service.

> **DEFENDANTS** (The person(s) being sued): You must do each of the following to protect your rights:
>
> 1. You must file a written response to the *Complaint*, in the Clerk's Office of the Court, within 30 days of the date the *Summons* and *Complaint* were served on you;
> 2. You must send a copy of your written response to the plaintiff; and
> 3. You must attend the first Case Management Conference.
>
> **Warning:** If you do not do these three things, you may automatically lose this case.

**RULES AND FORMS:** You must follow the California Rules of Court (CRC) and the Santa Clara County Superior Court Local Civil Rules and use proper forms. You can get legal information, view the rules and get forms, free of charge, from the Self-Service Center at 99 Notre Dame Avenue, San Jose (408-882-2900 x-2926), or from:

- State Rules and Judicial Council Forms: www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms: http://www.scsuperiorcourt.org/civil/rule1toc.htm
- Rose Printing: 408-293-8177 or becky@rose-printing.com (there is a charge for forms)

For other local legal information, visit the Court's Self-Service website www.scselfservice.org and select "Civil."

**CASE MANAGEMENT CONFERENCE (CMC):** You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC. You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

You or your attorney must appear at the CMC. You may ask to appear by telephone – see Local Civil Rule 8.

Your Case Management Judge is: **Mary Jo Levinger**          Department: __**5**__

The 1st CMC is scheduled for: (Completed by Clerk of Court)
        Date: **JUL - 8 2008**   Time: **2:15 PM**   in Department   **5**

The next CMC is scheduled for: (Completed by party if the 1st CMC was continued or has passed)
        Date: _____   Time: _____   in Department _____

**ALTERNATIVE DISPUTE RESOLUTION (ADR):** If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.scsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

**WARNING:** Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

Form CV-5012
Rev. 07/01/07

**CIVIL LAWSUIT NOTICE**

Page 1 of 1

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
## ALTERNATIVE DISPUTE RESOLUTION
## INFORMATION SHEET / CIVIL DIVISION

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

*What is ADR?*

ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

*What are the advantages of choosing ADR instead of litigation?*

ADR can have a number of advantages over litigation:

< ADR can save time. A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

< ADR can save money. Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

< ADR provides more participation. Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

< ADR provides more control and flexibility. Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

< ADR can reduce stress. ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

*What are the main forms of ADR offered by the Court?*

< Mediation is an informal, confidential process in which a neutral party (the mediator) assists the parties in understanding their own interests, the interests of the other parties, and the practical and legal realities they all face. The mediator then helps the parties to explore options and arrive at a mutually acceptable resolution of the dispute. The mediator does not decide the dispute. The parties do..

< Mediation may be appropriate when:
    < The parties want a non-adversary procedure
    < The parties have a continuing business or personal relationship
    < Communication problems are interfering with a resolution
    < There is an emotional element involved
    < The parties are interested in an injunction, consent decree, or other form of equitable relief

*-over-*

< Arbitration is a normally informal process in which the neutral (the arbitrator) decides the dispute after hearing the evidence and arguments of the parties. The parties can agree to binding or non-binding arbitration. Binding arbitration is designed to give the parties a resolution of their dispute when they cannot agree by themselves or with a mediator. If the arbitration is non-binding, any party can reject the arbitrator's decision and request a trial.

Arbitration may be appropriate when:
< The action is for personal injury, property damage, or breach of contract
< Only monetary damages are sought
< Witness testimony, under oath, is desired
< An advisory opinion is sought from an experienced litigator (if a non-binding arbitration)

< Neutral evaluation is an informal process in which a neutral party (the evaluator) reviews the case with counsel and gives a non-binding assessment of the strengths and weaknesses on each side and the likely outcome. The neutral can help parties to identify issues, prepare stipulations, and draft discovery plans. The parties may use the neutral's evaluation to discuss settlement.

Neutral evaluation may be appropriate when:
< The parties are far apart in their view of the law or value of the case
< The case involves a technical issue in which the evaluator has expertise
< Case planning assistance would be helpful and would save legal fees and costs
< The parties are interested in an injunction, consent decree, or other form of equitable relief

< Special masters and referees are neutral parties who may be appointed by the court to obtain information or to make specific fact findings that may lead to a resolution of a dispute.

Special masters and referees can be particularly effective in complex cases with a number of parties, like construction disputes.

< Settlement conferences are informal processes in which the neutral (a judge or an experienced attorney) meets with the parties or their attorneys, hears the facts of the dispute, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations.

Settlement conferences can be effective when the authority or expertise of the judge or experienced attorney may help the parties reach a resolution.

*What kind of disputes can be resolved by ADR?*

Although some disputes must go to court, almost any dispute can be resolved through ADR. This includes disputes involving business matters; civil rights; corporations; construction; consumer protection; contracts; copyrights; defamation; disabilities; discrimination; employment; environmental problems; harassment; health care; housing; insurance; intellectual property; labor; landlord/tenant; media; medical malpractice and other professional negligence; neighborhood problems; partnerships; patents; personal injury; probate; product liability; property damage; real estate; securities; and sports, among other matters.

*Where can you get assistance with selecting an appropriate form of ADR and a neutral for your case, for information about ADR procedures, or for other questions about ADR?*

Contact:
Santa Clara County Superior Court          Santa Clara County DRPA Coordinator
ADR Administrator                          408-792-2704
408-882-2530

---

**ALTERNATIVE DISPUTE RESOLUTION INFORMATION SHEET/ CIVIL DIVISION**

CV-5003 RE / 6/05

# Exhibit B

SUM-100

AMENDED **SUMMONS**
**(CITACION JUDICIAL)**

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**
C-One Technology, A Taiwanese Corporation; PRETEC ELECTRONICS
A California Corporation; INTERNATIONAL CENTER FOR DISPUTE
RESOLUTION, A DIVISION OF THE AMERICAN ARBITRATION
ASSOCIATION; AND DOES 1 through 50 inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTA DEMANDANDO EL DEMANDANTE):**
Mount & Stoelker, A Professional Corporation

ENDORSED

2008 FEB 25 A 11: 15

M. Rosales

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

Tiene 30 DIAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.

| The name and address of the court is: (El nombre y dirección de la corte es): | CASE NUMBER: (Número del Caso): 108 CV 105975 |
|---|---|

Superior Court, Santa Clara County
Santa Clara
191 N. First Street                        San Jose, CA 95113

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Jerry R. Hauser                        Phillips, Greenberg & Hauser, LLP
4 Embarcadero Center, 39th Floor       San Francisco, CA 94111
(415) 981-7777

| DATE: (Fecha) | Clerk, by (Secretario) | , Deputy (Adjunto) |
|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☐ on behalf of (specify):
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. January 1, 2004)
Made Court Essential Forms TM

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

Mount & Stoelker

00006

PHILLIPS, GREENBERG & HAUSER, L.L.P.
JERRY R. HAUSER, SBN. 111568
ERIK C. VAN HESPEN, SBN. 214774
Four Embarcadero Center, 39th Floor
San Francisco, California 94111
Telephone:    (415) 981-7777
Facsimile:    (415) 398-5786

Attorneys for Plaintiff,
MOUNT & STOELKER, A PROFESSIONAL CORPORATION

ENDORSED

2000 FEB 25  A 11: 15

CLERK OF THE SUPERIOR COURT
COUNTY OF SANTA CLARA, CALIFORNIA

M. Rosales

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SANTA CLARA

| | |
|---|---|
| MOUNT & STOELKER, A PROFESSIONAL CORPORATION, | CASE NO.: 108 CV 105975 |
| Plaintiffs, | FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF, TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTION |
| -v- | |
| C-ONE TECHNOLOGY, A TAIWANESE CORPORATION; PRETEC ELECTRONICS CORPORATION, A CALIFORNIA CORPORATION; INTERNATIONAL CENTER FOR DISPUTE RESOLUTION, A DIVISION OF THE AMERICAN ARBITRATION ASSOCIATION; AND DOES 1 through 50 inclusive, | BY FAX |
| Defendants. | |

1.      Defendant C-One Technology ("C-One"), is a Taiwanese Corporation.

2.      Defendant Pretec Electronics Corporation, is a California Corporation ("Pretec"), with its principle place of business in Fremont California. On November 28, 2006, Pretec dissolved its corporate structure. Pretec was a subsidiary of C-One.

3.      Defendant International Center for Dispute Resolution ("ICDR") is a division of the American Arbitration Association ("AAA") located in New York and entity of some unknown form. ICDR is located in New York.

4.      Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1

1  through 50, inclusive, and therefore sues these defendants by these fictitious names. Plaintiff will amend

2  the complaint to allege their true names and capacities when ascertained.

3       5.      On or about October 7, 2002, Plaintiff was retained by Pretec to represent Pretec in an

4  action that was filed by Lexar Media, Inc. ("Lexar") for a patent infringement in the United States

5  District Court, Northern District of California, Case Number 00-4770 MJJ, hereinafter referred to as the

6  "Lexar Action". A copy of the retainer agreement between Plaintiff and Pretec is attached hereto as

7  Exhibit A.

8       6.      On October 7, 2002, Plaintiff and Pretec entered into another attorney fee agreement

9  wherein Plaintiff would represent Pretec in an action filed by SanDisk Corporation ("SanDisk") for

10  patent infringement in the United States District Court, Northern District of California, Case Number 01-

11  4063 VRW, hereinafter referred to as the "SanDisk Action". A copy of the second fee agreement between

12  Plaintiff and Pretec is attached hereto as Exhibit B. Exhibits A and B are hereinafter referred to as the

13  "Pretec Fee Agreements."

14       7.      On or about May 8, 2003, C-One was served with a summons and amended complaint

15  naming it as an additional defendant in the Lexar Action. Plaintiff agreed to defend C-One in the Lexar

16  Action, but no separate retainer agreement was entered into by and between C-One and Plaintiff. On or

17  about September 26, 2003, Memtec Products, Inc. ("Memorex") filed a complaint for declaratory relief,

18  breach of contract and injunctive relief against C-One and Pretec in the Superior Court of California,

19  County of Alameda, Action Number RG03118916, hereinafter referred to as the "Memorex Action".

20  Plaintiff represented Defendant and Pretec in the Memorex Action, but did not enter into a separate fee

21  agreement for such services.

22       8.      In May/June of 2006, Plaintiff ceased all representation of Defendants in the Lexar

23  Action and in the Memorex Action. Even though the court denied Plaintiff's motion to withdraw as

24  counsel of record in the SanDisk Action for Pretec, after May/June of 2006 Pretec refused to participate

25  in the defense of the Sandisk Action. By May/June 2006 Pretec effectively terminated the attorney client

26  relationship with Plaintiff in the SanDisk Action.

27       9.      On or about December 15, 2006, judgment was entered in the Memorex Action against

28  C-One and Pretec.

00009

2

10.     On or about January 11, 2008, C-One initiated arbitration before the AAA in Santa Clara California against Plaintiff based on legal services rendered in the Lexar, SanDisk and Memorex Actions, hereinafter referred to as the "C-One Arbitration". The C-One Arbitration was assigned to the ICDR for administration out of New York City. On or about February 19, 2008, C-One filed an Amended Statement of Claim in the C-One Arbitration and identified Pretec as a claimant. A copy of the First Amended Statement of Claim ("Statement of Claim") is attached hereto as Exhibit C.

11.     The Statement of Claim consists of three claims: 1) legal malpractice by C-One and Pretec against Plaintiff with regard to services rendered in the Memorex Action; 2) questionable billing practices by C-One against Plaintiff in the Lexar and SanDisk Actions; and 3) "equitable indemnity due to breach of fiduciary duty" by C-One and Pretec against Plaintiff based on services rendered in the Memorex Action. C-One and Pretec assert that Plaintiff's negligence caused the judgment in the Memorex Action to be entered against it. In addition, C-One seek a reimbursement of fees paid to Plaintiff by Pretec prior to May of 2006. C-One also asserts that since there was no fee agreement between it and Plaintiff, Plaintiff is only allowed to recover fees based on Quantum Meruit.

12.     Defendants asserts that the contractual basis for the arbitration proceeding are the Pretec Fee Agreements which are attached hereto as Exhibits A and B. Defendants make this claim despite the fact the arbitration clause in the Pretec Fee Agreements were expressly excluded; C-One is not a party to the Pretec Fee Agreements; in the Statement of Claim filed in the C-One Arbitration C-One denies that it is bound by the terms of the Pretec Fee Agreements and further asserts that there is no contract, for arbitration or otherwise, between it and Plaintiff; C-One claims that it is not the successor in interest to Pretec and Pretec is " a wholly separate and distinct legal entity from C-One and have separate business operations as well as separate personnel, separate business facilities and operations;" and legal services rendered in the Memorex Action were not pursuant to or within the scope of the Pretec Fee Agreements.

13.     Plaintiff is informed and believes that Defendants maintain that the C-One Arbitration is controlled by international rules for arbitration, that the arbitration is to be administered out of New York and said international rules permit either party to proceed with arbitration ex parte if the other party does not appoint an arbitrator and does not participate in the arbitration. Defendants have refused to stay the arbitration pending resolution of this action.

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND

14.    A bona fide dispute exists between Plaintiff and Defendants in that:

a.    Defendants, and each of them, contend that their disputes with Plaintiff with regard to legal services Plaintiff provided to Defendants are subject to arbitration based on the Pretec Fee Agreements, and that the arbitrator has exclusive jurisdiction to determine whether or not any issues are to be excluded from arbitration.

b.    Plaintiff, however, contends that the disputes between it and C-One and Pretec are not subject to arbitration in that C-One is a non-signatory to the Pretec Fee Agreements and that there is no enforceable agreement between the parties containing an arbitration clause. Therefore, any controversy between Plaintiff and C-One and Pretec are not subject to arbitration. Further, all claims by C-One and Pretec are time barred.

15.    Unless Defendants are restrained by the court from proceeding with the C-One Arbitration pending hearing on Plaintiff's Order To Show Cause/Preliminary Injunction and pending trial of this action, and unless Defendants are permanently enjoined as herein prayed, Defendants threaten to proceed with the arbitration as herein alleged and Plaintiff will, as a proximate result, suffer great and irreparable injury and will be compelled to submit to arbitration when no such requirement to do so exists.

Wherefore, Plaintiff prays judgment against Defendants as follows:

1.    The court determines that the existing controversy between Plaintiff and Defendants is not subject to arbitration.

2.    For an order requiring Defendants to show cause, if any, why it should not be enjoined during the pendency of this action from further proceedings with the arbitration.

3.    For a temporary restraining order, a preliminary injunction, and a permanent injunction enjoining the Defendants from proceeding with the arbitration of the controversy alleged herein until the issue of whether or not the disputes between the parties are subject to arbitration has been determined by the court of competent jurisdiction.

4.    For costs of suit incurred herein including reasonable attorneys' fees against C-One and Pretec only.

00011

5.    For such other and further relief as the court may deem proper.

4

1

2 | DATE:  February 22, 2008

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PHILLIPS, GREENBERG & HAUSER, L.L.P.

By: _____
                JERRY R. HAUSER

00012

5

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF, TEMPORARY RESTRAINING ORDER, AND PRELIMINARY AND

# Exhibit C

00007

1

**VERIFICATION**

2        I, Daniel Mount, am a shareholder of Plaintiff in this action. I have read the foregoing First

3    Amended Complaint and know its contents. The same is true of my own knowledge, except to those

4    matters that are therein alleged on information and belief, and as to those matters, I believe them to

5    be true.

6        I declare under penalty of perjury and the laws of the State of California that the

7    foregoing is true and correct. Executed on this __2l__ day of February, 2008, at San Jose California.

8

9                                                    _____

10                                                   DANIEL MOUNT

11

12

13

14

·15

16

17

18

19

20

21

22

23

24

25

26

27

28

00013

6

EXHIBIT D-1

# MOUNT & STOELKER
### ATTORNEYS

DANIEL A. MOUNT
JAMES L. STOELKER
RICHARD J. LA FLEUR
SCOTT A. HOOF
KATHRYN M. EIDMAN
ALFREDO A. BISMONTE

WILLIAM D. SAVERS
OF COUNSEL

CERTIFIED SPECIALIST IN
ESTATE PLANNING, TRUST & PROBATE LAW,
THE STATE BAR OF CALIFORNIA
BOARD OF LEGAL SPECIALIZATION

RIVERPARK TOWER, SUITE 1050
333 WEST SAN CARLOS
SAN JOSE, CALIFORNIA 95110-2711
(408) 279-7000
FAX (408) 998-1473

October 7, 2002

LESLIE J. HOEMPLER
RON C. FINLEY
LARA J. HODGSON
NADINE B. TAFIN
MARK A. SCHMUCK
ASHLEY X. JIANG
HANA S. CALLAGHAN
PEGGY H. CHEN

LICENSED ONLY IN THE
PEOPLE'S REPUBLIC OF CHINA

Pretec Electronics Corp.
Attn: Charles Lin
40979 Encyclopedia Cr.
Fremont, CA 94538

Re:    Lexar Media v. Pretec Electronics, et al. – Our File No. Prete001

Dear Mr. Lin:

This letter sets forth the basis upon which this office will represent Pretec Electronics Corp. with regard to the above matter in terms of both the scope of our legal representation of Pretec Electronics, as well as Pretec Electronics' obligations to us as a client. This letter further sets out the agreement by which attorneys' fees and costs will be paid to this firm. For purposes of this agreement all parties are referred to collectively as "you."

I.    Legal Services to be Provided.

We will represent you regarding the above matters. We will provide those legal services reasonably necessary to represent you in this matter. We will take reasonable steps to keep you informed of the progress of this case and to respond to your inquiries.

We will represent you through a trial or arbitration of these matters, if any, and through any post-trial or arbitration motions or execution proceedings. After final judgment is entered, we will not represent you in any appellate court proceedings, unless a separate fee agreement is entered into between you and this firm. Unless we make a different agreement in writing, this agreement will govern all future services we may perform in these matters, or in any other matters in which we might represent you.

00014

EXHIBIT D-1

Pretec Electronics Corp.
Attn: Charles Lin.
October 7, 2002
Page 2

2.    Responsibilities of Attorney and Client.

    We will perform the legal services called for under this agreement, keep you and
Pretec informed of progress and developments in the case, and respond promptly to your
inquiries and communications. You agree to respond promptly to our inquiries, be truthful
with the firm at all times, cooperate fully with us, keep us informed of any developments in
this matter, abide by this agreement, and keep us advised of your current address(es) and
telephone number(s).

3.    Attorneys Fees and Costs.

    3.a.    Rates and Charges

$400.0 (4/4)

    You hereby agree to pay the hourly rate at our prevailing rates for time spent on this
matter by our legal personnel. Our current hourly rates range from $350.00 per hour for
senior attorneys down to $190.00 per hour for youngest attorneys. The rate schedule may
increase from time to time.

    We will charge you for time spent on telephone calls relating to this matter,
including calls to you, opposing counsel, or court personnel. The legal personnel assigned
to this matter will confer among themselves about the matter as required. When they do
confer, each person will charge for time expended. Likewise, if more than one of our legal
personnel attends a meeting, court hearing or other proceeding, each will charge for time
spent. You will be charged for waiting time in court and elsewhere, and for travel time, both
local and out-of-town.

    You agree to pay all "Costs" in connection with our representation of you under this
agreement. We may request you to pay Costs directly or in advance to this office. In the
event that we advance Costs on your account, we will then bill such Costs to you on a
monthly basis.

    Costs include, but are not limited to, court filing fees, deposition costs, expert fees
and expenses, investigation costs, long-distance telephone charges, messenger service fees,
in-house photocopying charges, photocopying expenses, mileage and process server fees.
Items that are not to be considered Costs, and that must be paid by you without being either
advanced or contributed to by Mount & Stoelker, include, but are not limited to, other
parties' costs, if any, that you are ultimately ordered or required to pay.

EXHIBIT D-1

Pretec Electronics Corp.
Attn: Charles Lin.
October 7, 2002
Page 3

     3.b.    <u>Statements and Payments.</u>

     We will send you monthly statements indicating attorneys' fees and costs incurred, and their basis any amounts applied, and any current balance owed. You agree to pay the balance due, in full, within 20 days after the statement is mailed. All parties are jointly and severally liable for payment of attorneys' fees and costs. At the end of our representation of you, any unused portion of the retainer will be returned to the party(ies) who deposited the retainer.

     3.c.    <u>Trial Deposit.</u>

     You will be required, 45 days prior to any scheduled trial, to post a deposit on account of fees. The deposit will be held in a trust account and withdrawn by Mount & Stoelker upon presentation of invoices for services. Any unused portion of the trial deposit will be available for return to you or credit for other services. The amount of the required trial deposit will be fixed as an estimate of the expected fees and Costs to be earned through the conclusion of the trial. Absent unusual circumstances, the trial deposit will be $12,000.00 for each day the trial is estimated to last.

     3.d.    <u>Replenishing Retainer.</u>

     You agree to pay $50,000.00 as a deposit against legal fees and costs for the Lexar Media v. Pretec matter. This sum is fully earned in consideration for our promise to represent you. However, we will apply that deposit to our bill for legal services and costs and the application will be reflected in the bill for services that you receive. You agree to keep the balance of the retainer at $50,000.00.

4.    <u>Settlement.</u>

     Mount & Stoelker will not settle the claims against you without your approval. You have the right to accept or reject any proposed settlement. You agree to act reasonably in deciding whether to accept or reject any settlement proposal. If you refuse to accept any reasonable settlement proposal which this firm has recommended that you accept, this firm may then withdraw from further representation of you in this matter upon such ground. We will notify you promptly of the terms of any settlement offer received by Mount & Stoelker.

5.    <u>Attorney's Lien.</u>

     You hereby grant us a lien on any and all claims or causes of action that are the subject of our representation of you. Our lien will be for any amounts owing to us. The lien

EXHIBIT D-1

Pretec Electronics Corp.
Attn: Charles Lin.
October 7, 2002
Page 4

will attach to any recovery you may obtain, whether by settlement, arbitration, award, court judgment or otherwise.

6.    **Termination of Relationship.**

   You may discharge Mount & Stoelker at any time.  If, at the time of discharge, Mount & Stoelker is your attorney of record in any proceeding, you will execute and return a substitution-of-attorney form immediately on its receipt from Mount & Stoelker. Notwithstanding any such discharge, the signators to this agreement agree to pay Mount & Stoelker its fees and Costs through the date of discharge.

   Mount & Stoelker may withdraw at any time as permitted under the Rules of Professional Conduct of the State Bar of California.

7.    **Release of Client's Papers and Property.**

   After our services have concluded, we will, upon your request, deliver your files to you, along with any of your funds or property then in our possession.  If no written instructions are received from you regarding disposition of the file materials, they will be destroyed 24 months after our services conclude.

8.    **Disclaimer of Warranty.**

   Nothing in this agreement and nothing in our statements to you will be construed as a promise or a guarantee of the outcome of this matter.  We make no such promises or guarantees.  Our comments about the outcome of this matter are expressions of opinion only.

9.    **Entire Agreement.**

   This writing contains our entire agreement regarding this firm's representation of you and regarding payment of fees. No other agreement, statement, or promise, whether written or oral, that was made on or before the effective date of this agreement will be binding on the parties.

10.   **Arbitration of Dispute.**

   If a dispute arises between Mount & Stoelker and you regarding any aspect of this agreement or its implementation, including but not limited to the following: (a) Mount & Stoelker's claim for attorney's fees or costs under this agreement: or (b) any claim you may make for unsatisfactory performance, including a claim of legal malpractice; you agree to

00017

EXHIBIT D-1

Pretec Electronics Corp.
Attn: Charles Lin.
October 7, 2002
Page 5

submit the matter to binding arbitration before the American Arbitration Association in Santa Clara County.

BE ADVISED THAT, BY AGREEING TO THIS PROVISION, BOTH OF US ARE WAIVING ANY RIGHT ONE MAY HAVE TO A TRIAL BY JURY. IF YOU CONSENT TO SUBMIT YOUR CLAIMS TO BINDING ARBITRATION, PLEASE INDICATE BY PLACING YOUR INITIALS IN THE SPACE PROVIDED:

PRETEC ELECTRONICS CORP.

Its _____

Mount & Stoelker

This agreement will take effect immediately upon receipt of the total retainer of $50,000.00. Please do not hesitate to contact me if you have any questions regarding this letter.

Sincerely,

Daniel S. Mount

The foregoing accurately reflects our agreement.

Dated: OCT 10, 2002

PRETEC ELECTRONICS CORP.

By _____  Its ___

z:/Pretec(X)1; (802:883)/Fee Agreement Letter

00018

EXHIBIT D-2

# MOUNT & STOELKER
### ATTORNEYS

DANIEL G. MOUNT
JAMES L. STOELKER
RICHARD J. LA FLEUR
SCOTT A. ROSS*
KATHRYN M. EHRMAN
ALFREDO A. BISMONTE

WILLIAM D. SAUERS
OF COUNSEL

*CERTIFIED SPECIALIST IN
ESTATE PLANNING, TRUST & PROBATE LAW,
THE STATE BAR OF CALIFORNIA
BOARD OF LEGAL SPECIALIZATION

RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS
SAN JOSE, CALIFORNIA 95110-2711
(408) 279-7000
FAX (408) 998-1473

LESLIE J. HOEKSTRA
RON C. FINLEY
LARA J. HODGSON
KADER R. YASIN
MARK A. SCHMUCK
ASHLEY K. JIANG†
NANA S. CALLAGHAN
PEGGY H. CHEN

†LICENSED ONLY IN THE
PEOPLE'S REPUBLIC OF CHINA

October 7, 2002

Pretec Electronics Corp.
Attn: Charles Lin
40979 Encyclopedia Cr.
Fremont, CA 94538

Re:    Sandisk Media v. Pretec Electronics, et al. — Our File No. Prete002

Dear Mr. Lin:

This letter sets forth the basis upon which this office will represent Pretec Electronics Corp. with regard to the above matter in terms of both the scope of our legal representation of Pretec Electronics, as well as Pretec Electronics' obligations to us as a client. This letter further sets out the agreement by which attorneys' fees and costs will be paid to this firm. For purposes of this agreement all parties are referred to collectively as "you."

1.    Legal Services to be Provided.

We will represent you regarding the above matters. We will provide those legal services reasonably necessary to represent you in this matter. We will take reasonable steps to keep you informed of the progress of this case and to respond to your inquiries.

We will represent you through a trial or arbitration of these matters, if any, and through any post-trial or arbitration motions or execution proceedings. After final judgment is entered, we will not represent you in any appellate court proceedings, unless a separate fee agreement is entered into between you and this firm. Unless we make a different agreement in writing, this agreement will govern all future services we may perform in these matters, or in any other matters in which we might represent you.

00019

EXHIBIT B

EXHIBIT D-2

Pretec Electronics Corp.
Attn: Charles Lin.
October 7, 2002
Page 2

2.     Responsibilities of Attorney and Client.

        We will perform the legal services called for under this agreement, keep you and Pretec informed of progress and developments in the case, and respond promptly to your inquiries and communications.  You agree to respond promptly to our inquiries, be truthful with the firm at all times, cooperate fully with us, keep us informed of any developments in this matter, abide by this agreement, and keep us advised of your current address(es) and telephone number(s).

3.     Attorneys Fees and Costs.

        3.a.    Rates and Charges

        You hereby agree to pay the hourly rate at our prevailing rates for time spent on this matter by our legal personnel.  Our current hourly rates range from $350.00 per hour for senior attorneys down to $190.00 per hour for youngest attorneys.  The rate schedule may increase from time to time.

        We will charge you for time spent on telephone calls relating to this matter, including calls to you, opposing counsel, or court personnel.  The legal personnel assigned to this matter will confer among themselves about the matter as required.  When they do confer, each person will charge for time expended.  Likewise, if more than one of our legal personnel attends a meeting, court hearing or other proceeding, each will charge for time spent.  You will be charged for waiting time in court and elsewhere, and for travel time, both local and out-of-town.

        You agree to pay all "Costs" in connection with our representation of you under this agreement.  We may request you to pay Costs directly or in advance to this office.  In the event that we advance Costs on your account, we will then bill such Costs to you on a monthly basis.

        Costs include, but are not limited to, court filing fees, deposition costs, expert fees and expenses, investigation costs, long-distance telephone charges, messenger service fees, in-house photocopying charges, photocopying expenses, mileage and process server fees.  Items that are not to be considered Costs, and that must be paid by you without being either advanced or contributed to by Mount & Stoelker, include, but are not limited to, other parties' costs, if any, that you are ultimately ordered or required to pay.

00020

EXHIBIT D-2

Pretec Electronics Corp.
Attn: Charles Lin.
October 7, 2002
Page 3

### 3.b.    Statements and Payments.

We will send you monthly statements indicating attorneys' fees and costs incurred, and their basis any amounts applied, and any current balance owed. You agree to pay the balance due, in full, within 20 days after the statement is mailed. All parties are jointly and severally liable for payment of attorneys' fees and costs. At the end of our representation of you, any unused portion of the retainer will be returned to the party(ies) who deposited the retainer.

### 3.c.    Trial Deposit.

You will be required, 45 days prior to any scheduled trial, to post a deposit on account of fees. The deposit will be held in a trust account and withdrawn by Mount & Stoelker upon presentation of invoices for services. Any unused portion of the trial deposit will be available for return to you or credit for other services. The amount of the required trial deposit will be fixed as an estimate of the expected fees and Costs to be earned through the conclusion of the trial. Absent unusual circumstances, the trial deposit will be $12,000.00 for each day the trial is estimated to last.

### 3.d.    Replenishing Retainer.

You agree to pay $50,000.00 as a deposit against legal fees and costs for the Sandisk Corporation v. Pretec matter. This sum is fully earned in consideration for our promise to represent you. However, we will apply that deposit to our bill for legal services and costs and the application will be reflected in the bill for services that you receive. You agree to keep the balance of the retainer at $50,000.00.

### 4.    Settlement.

Mount & Stoelker will not settle the claims against you without your approval. You have the right to accept or reject any proposed settlement. You agree to act reasonably in deciding whether to accept or reject any settlement proposal. If you refuse to accept any reasonable settlement proposal which this firm has recommended that you accept, this firm may then withdraw from further representation of you in this matter upon such ground. We will notify you promptly of the terms of any settlement offer received by Mount & Stoelker.

### 5.    Attorney's Lien.

You hereby grant us a lien on any and all claims or causes of action that are the subject of our representation of you. Our lien will be for any amounts owing to us. The lien

00021

EXHIBIT D-2

Pretec Electronics Corp.
Attn: Charles Lin.
October 7, 2002
Page 4

will attach to any recovery you may obtain, whether by settlement, arbitration award, court judgment or otherwise.

6.     Termination of Relationship.

You may discharge Mount & Stoelker at any time. If, at the time of discharge, Mount & Stoelker is your attorney of record in any proceeding, you will execute and return a substitution-of-attorney form immediately on its receipt from Mount & Stoelker. Notwithstanding any such discharge, the signators to this agreement agree to pay Mount & Stoelker its fees and costs through the date of discharge.

Mount & Stoelker may withdraw at any time as permitted under the Rules of Professional Conduct of the State Bar of California.

7.     Release of Client's Papers and Property.

After our services have concluded, we will, upon your request, deliver your files to you, along with any of your funds or property then in our possession. If no written instructions are received from you regarding disposition of the file materials, they will be destroyed 24 months after our services conclude.

8.     Disclaimer of Warranty.

Nothing in this agreement and nothing in our statements to you will be construed as a promise or a guarantee of the outcome of this matter. We make no such promises or guarantees. Our comments about the outcome of this matter are expressions of opinion only.

9.     Entire Agreement.

This writing contains our entire agreement regarding this firm's representation of you and regarding payment of fees. No other agreement, statement, or promise, whether written or oral, that was made on or before the effective date of this agreement will be binding on the parties.

10.     Arbitration of Dispute.

If a dispute arises between Mount & Stoelker and you regarding any aspect of this agreement or its implementation, including but not limited to the following: (a) Mount & Stoelker's claim for attorney's fees or costs under this agreement; or (b) any claim you may make for unsatisfactory performance, including a claim of legal malpractice; you agree to

EXHIBIT D-2

Pretec Electronics Corp.
Attn: Charles Lin.
October 7, 2002
Page 5

submit the matter to binding arbitration before the American Arbitration Association in Santa Clara County.

BE ADVISED THAT, BY AGREEING TO THIS PROVISION, BOTH OF US ARE WAIVING ANY RIGHT ONE MAY HAVE TO A TRIAL BY JURY. IF YOU CONSENT TO SUBMIT YOUR CLAIMS TO BINDING ARBITRATION, PLEASE INDICATE BY PLACING YOUR INITIALS IN THE SPACE PROVIDED:

PRETEC ELECTRONICS CORP.

Its _____

Mount & Stoelker

This agreement will take effect immediately upon receipt of the total retainer of $50,000.00. Please do not hesitate to contact me if you have any questions regarding this letter.

Sincerely,

Daniel S. Mount

The foregoing accurately reflects our agreement.

Dated: Oct 10, 2002

PRETEC ELECTRONICS CORP.

By _____
              Its _____

z:/Pretec002; 002;003/Fee Agreement Letter

Leodis C. Matthews [SBN 109064]
MATTHEWS & PARTNERS
4322 WILSHIRE BOULEVARD, STE. 200
LOS ANGELES, CALIFORNIA 90010-3792
TELEPHONE: 323.930.5690
FACSIMILE: 323.930.5693

Attorneys For Claimant:
C-One Technology & Pretec Electronics

## BEFORE THE AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| In The Arbitral Matter Between    ) | **AAA File No. 50 194 T 0000608** |
| ) | **AAA Confirmation No. 002-IV3-Z75** |
| C-ONE TECHNOLOGY, a Taiwanese ) | |
| Corporation;  Pretec  Electronics ) | FIRST AMENDED |
| Corporation, ) | STATEMENT OF CLAIM |
| ) | OF |
| ) | C-ONE TECHNOLOGIES |
| Claimants, ) | FOR |
| And ) | BREACH OF CONTRACT |
| ) | BREACH OF FIDUCIARY DUTY |
| ) | MISREPRESENTATION |
| ) | AND |
| MOUNT & STOELKER, a Professional ) | INDEMNIFICATION |
| Corporation, ) | |
| ) | |
| Respondent ) | |
| . ) | |

Comes Now, C-ONE TECHNOLOGY ["C-One"] and PRETEC ELECTRONICS CORPORATION

["Pretec"] by and through its attorneys of record, Leodis C. Matthews,  Matthews and Partners,

hereby files this Statement of Claim against MOUNT & STOELKER, P.C. ["M&S"], a San Jose,

California law firm which holds itself out as having an international client base and which "specializes in intellectual property litigation". M&S further represent that it has "successfully represented clients in lawsuits involving (among other things) Patent(s)" and employs attorneys who "are knowledgeable about technologies", including but not strictly limited to "Electronic Circuitry" and "Memory Devices"[1].

While the gravamen of this claim revolves around the reasonableness and unconscionableness of the legal fees and costs paid, as well as those which are allegedly still due and owing, its genesis lay on the well founded legal principals of contract, indemnification, professional responsibility, and the fiduciary duties which attorneys owe to their respective clients throughout the course of the attorney-client relationship and beyond.

## I.
## THE PARTIES

1    At all times herein relevant, C-One is and was a Taiwanese Corporation which has its principal place of business in Hsin-Chu, Taiwan.

2    At all times herein relevant, M&S is and was a Professional Corporation engaged in the practice of law with its principal office located in the City of San Jose, County of Santa Clara, State of California.

---

[1] Ref.: http://www.mount.com/index.cfm (Areas of Practice: Intellectual Property Litigation)

3.    Pretec was at all times herein relevant a California Corporation[2] which had its principal place of business in the City of Fremont, California and distributed by C-One's technological products in the United States, which included certain and specific flash memory devices. Pretec is a wholly separate and distinct legal entity from C-One and have separate business operations as well as separate personnel, separate business facilities and operations.

## II.
## The Facts Leading To The Filing of This Claim

A.    The Various Litigation Matters

4.    On or about April 21, 2001 Lexar Media, Inc. ["Lexar"][3], filed a patent infringement case in federal district court (Northern District of California Case No 00-4770 MJJ) against several defendants, including Pretec, C-One[4] and Memtec Products, Inc. ["Memorex"][5], alleging that the flash memory controller units manufactured by C-One, distributed by Pretec, and sold by Memorex infringed upon five of Lexar's patents.

5.    On or about July 30, 2001 C-One and Pretec entered into a written indemnification

---

[2] Pretec's corporate structure has since been dissolved.

[3] Referred to in M&S invoices as "File No. Prete.001".

[4] C-One was substituted in later in time in the stead of a fictitiously named Doe Defendant (See Below).

[5] PNY Technologies, Inc., a Delaware Corporation, was also a named defendant in this action and Pretec and C-One also provided a defense for PNY for certain claims pursuant to its distributor agreement.

agreement with Memorex whereby C-One and Pretec agreed to fully defend, indemnify, and hold Memorex harmless from and against all claims or causes of action that have been raised, could have been raised by Lexar or any third party in connection with any Products sold by Memorex that may infringe or violate the patent, copyright, trade secret, or other intellectual property right of a third party. More specifically, the scope of this indemnity included, without limitation, the following:

1.....(I) the obligation of C-One and Pretec to pay on behalf of Memtek any and all losses, costs, damages (compensatory and punitive), expenses, judgments, settlements, awards of costs or attorney fees, royalties, or any other amounts arising out of any claim that Memtek paid or is required to pay to opposing parties in connection with such claims; and (ii) the obligation for C-One and Pretec to assign counsel of its choice acceptable to Memtec to undertake the professional responsibility of representing Memtek in Lexar's claim and to assert any counterclaims, cross-claims, and/or third party claims arising out of the same transaction or series of transactions, and to pay all fees and expenses of such counsel and other professionals rendering assistance to such counsel......

2. C-One and Pretec agree to instruct its counsel to communicate with Memtec... and to keep Memtec regularly informed of the progress of the Action, settlement discussion, and any related third party claims or allegations of infringement. Memtec retains the right to have its counsel participate in any proceedings relating to Lexar's and/or any third party claims at Memtec's sole cost and expense; provided, however, that if Memtec claims that C-One or Pretec has breached this Agreement or is not satisfied with the legal representation being provided by C-One or Pretec on its behalf, then Memtec also reserves the right to serve written notice in C-One or Pretec and to have its own counsel resume representation of Memtec, and in that event Memtec reserves the right to seek recovery of all damages, attorney fees, and costs, and C-One and Pretec reserve the right to raise all claims and defenses thereto.

---

6.    Thereafter, on or about October 20, 2001, SanDisk Corporation ["SanDisk"][6] filed

a separate complaint in federal district court (Northern District of California Case No 01-4063

VRW) against, amongst others, Memorex and Pretec in which it alleged that the flash memory

technologies products distributed by Pretec and Memorex infringed on a SanDisk patent. C-One

was never a named party in the SanDisk case.

7.    Pursuant to the express terms of the Indemnity Agreement set forth above C-One

and Pretec were obliged to indemnify and hold Memorex harmless in the SanDisk case as well.

8.    On September 26, 2003 Memorex filed a Complaint for Declaratory Relief, Breach

of Contract, and Injunctive Relief against both C-One and Pretec (Alameda Superior Court Case

No RG03118916) alleging specific breaches of the Indemnification Agreement[7].

B.    M & S's Representation In Connection With Lexar And SanDisk

9.    Initially, attorney Thomas C. Jeing was retained to represent Pretec and Memorex

in both the Lexar and SanDisk federal court actions in or around October 2001. However, in or

around October 2002, it became apparent that Mr. Jeing had abandoned any meaningful

---

[6]  Referred to in M&S invoices as "File No. Prete.002".

[7]  These allegations and their implication on this instant claim will be discussed more
fulsomely below.

representation of either Pretec or Memorex in both of these pending patent infringement cases[8].

10.    On or about October 7, 2002 M&S was retained to represent Pretec, and the two American distributors, Memorex and PNY, in the Lexar litigation but Memorex declined to accept M&S's representation and instead retained the firm Keker & VanNest, LLP, to represent its interests. (A copy of the Pretec/M&S attorney fee agreement is attached as Exhibit D-1).

11.    M&S was also retained on that October 7, 2002 date to represent both Pretec and Memorex in the SanDisk case. M&S continued to represent Memorex in SanDisk through on or about November 14, 2002[9]. (A copy of the Pretec/M&S attorney fee agreement is attached as Exhibit D-2).

12.    On May 8, 2003 C-One was served in Taiwan with a summons and an amended complaint naming it as an additional defendant in the Lexar litigation at which time M&S appeared on behalf of C-One as its attorneys of record. Although M&S actively represented both C-One and Pretec in Lexar until May 30, 2006, at which time its motion to withdraw as attorneys of record was granted[10], no retainer agreement was ever entered into by and between C-One and

---

[8] Mr. Jeing also abandoned several other clients' cases during this same time and was ultimately disciplined by the California State Bar [Case Nos. 03-O-02715, 03-O-03913, and 04-O-13946].

[9] More fulsomely discussed in subsections "C" below.

[10] The court gave C-One and Pretec thirty days to find substitute counsel.

M&S regarding this representation.

13.    On July 11, 2003, Memorex sent a letter to C-One and Pretec requesting that they approve and finance a proposed settlement agreement by and between Memorex and SanDisk. Acting on the advice of M&S, C-One and Pretec informed Memorex that it would neither approve nor finance the settlement agreement and further went on to assert that they were not obligated under the indemnification agreement to pay for the fees and costs of Memorex's separate representation in both Lexar and SanDisk.

14    M&S ceased to actively participate and represent Pretec in SanDisk after filing its first motion to withdraw in May 2006. M&S's second motion to withdraw as counsel for Pretec was also denied on June 6, 2007 "for the same reasons and with the same conditions as its prior (May 2006) motion to withdraw"; to wit: M&S "fails to show that Pretec has obtained substitute counsel or that Pretec refuses to engage new counsel. To the contrary, the current motion requests that the court allow counsel to withdraw and "provide Pretec with appropriate time to engage new counsel"".

15.    On June 14, 2005, Memorex was dismissed from Lexar with prejudice based on its approval of the settlement agreement and mutual release reached by and between its attorneys (not M&S) and those representing the Plaintiff.

16.    On November 8, 2006 a stipulated order was entered in Lexar which substituted

the firm Beck, Ross, Bismonte & Finley, LLP, as attorneys of record for PNY in the stead of M&S.

17.    Thereafter, on April 18, 2007, PNY entered into a settlement agreement with the Plaintiff in Lexar which resulted in its dismissal from the case with prejudice on May 8, 2007.

18.    It is noted with acute particularity that in the Lexar litigation, all named defendants have already settled and have been dismissed except for C-One and Pretec and, with respect thereto, since retaining new counsel on June 30, 2007, C-One and Pretec has reached a settlement with the Plaintiff in the Lexar matter.

19.    Similarly, Pretec, with the same new counsel, has also reached a tentative settlement in the SanDisk litigation (all other Defendants having long since either settled or dismissed on other grounds). Until new counsel became attorney of record for SanDisk, on or about July/August 2007, M & S remained counsel of record in those proceedings.

C.    The Interplay, Relevance, and Significance of the Superior Court Action

20.    In its Statement of Decision of April 26, 2006 (Phase One), the State Superior Court found that Memorex was "justified, using an objectively reasonable standard of acceptability, in finding that (M&S) and their actions unacceptable under the terms of the Indemnification Agreement". In making this finding, the Court cited, *inter alia*, the following established facts:

a.   That M&S failed to communicate with Memorex's designated in-house counsel;

b.   That M&S did not communicate regularly to Memorex the status of important events in the SanDisk case;

c.   That M&S failed to provide Memorex with copies of the pleadings in the SanDisk case and did not clearly state the position it was taking in the SanDisk sanctions regarding Memorex and Pretec's respective conduct and culpability; and

d.   That M&S failed to inform Memorex that SanDisk was attempting to obtain sanctions against Memorex because of M&S's failure to present evidence that Memorex had no knowledge of Mr. Jeing's actions[11].

21.   In making its ruling that Memorex had objectively reasonable grounds for rejecting M&S, the Court made further and peculiar reference to a letter to Memorex from an M&S attorney (Ron C. Finley), dated November 15, 2002, which it found illustrative of "Memorex's concerns about the potential conflicts with" M&S's duel representation; noting that the "letter begins by stating that it sets forth Pretec's position. The letter then refers to Pretec as "our client". The letter takes positions adverse to Memorex in outlining why Pretec did not believe

---

[11] In SanDisk, the court imposed sanctions against both Mr. Jeing and Memorex while in Lexar, where Memorex was represented by Keker and VanNest, sanctions were only imposed against Mr. Jeing alone.

it was responsible for Memorex's legal fees. . . . The tone of the letter, failure to specifically state that Mr. Finley was neutral in any disputes between the parties, and advocacy on behalf of Defendants' (C-One and Pretec) position against Memorex, would give the recipient Memorex reasonable doubt about the loyalties of Mr. Finley."

22.    The State Superior Court further found that (1) C-One and Pretec breached the terms of the Indemnification Agreement and (2) that Memorex may recover damages as provided in Section 2 of the Agreement subject to any remaining defenses C-One and Pretec may have.

23    Two months later, on June 26, 2006, M&S's motion to be relieved as counsel for C-One and Pretec was granted.

24.    On December 15, 2006, a default judgment, which became final on January 14, 2007, was entered against C-One and Pretec and in favor of Memorex in the amount of $1,046,895.02 down as follows:

a.    $374,956.52 for attorney fees and costs incurred in the Lexar and SanDisk cases;

b.    $486,939.50 for attorney fees and costs incurred in litigating the Superior Court action; and

c.    $185,000.00 for the amount Memorex paid in settlement of the Lexar case.

D.    M&S Billings For Legal Services Rendered

25.    M&S's invoices for fees ($3,759,224.42) and costs together totaled $3,915,251.73 were all billed to its Pretec accounts and were paid in full.  Both Pretec and C-One believe that M&S are also seeking additional fees and costs over and above the amounts previously paid.

26.    For the reasons set forth below, Pretec and C-One challenge both the reasonableness and propriety of these fees and costs.

### III.
### C-One and Pretec Base This First Claim Against M&S
### Relating to the Alameda County Superior Court Case
### On The Relevant Facts As Set Forth Above And
### The Following Arguments

27.    Of the total amount of fees and costs paid to M&S to date, $727,156.00 in fees and $10,635.38 in costs were billed as legal services and costs rendered and expended in connection with M&S' representation of C-One and Pretec in the Lexar and Pretec federal cases when in fact they were actually performed and directly related to M&S's defense of C-One and Pretec in the Superior Court Action filed by Memorex.

28.    In addition to these fees, C-One and Pretec were also ordered to pay Memorex $486,939.50 for its attorney fees and the costs it incurred in litigating the Superior Court action.

### A.    No Written Fee Agreement Between The Parties Covered This Matter

29.    The written fee agreements between Pretec and M&S dealt solely with the two federal court actions (Lexar and SanDisk) which involved federal issues and questions of law

---

relating to intellectual property and patent infringement.

30.    While the fee agreement does refer to "any other matters in which we might represent you", it is C-one's position that it was not a party to this agreement and it is Pretec's position that at the time that this written agreement was executed it was not contemplated by the parties that it would become embroiled in a state court civil action which, for the reasons set forth below, was the direct and proximate result of M&S' legal advice and its failure to communicate with Memorex as required by the express terms of the Indemnification Agreement.

B.    Misrepresentation of the Law

31.    Both C-One and Pretec contend that its officers and directors were all Taiwanese nationals who had no education in United States law, that English was not their native tongue, and that did not have any prior experience dealing with either American contract law let alone the intricacies of U.S. Patent Law. Accordingly, when M&S advised both C-One and Pretec that, in its legal opinion, neither C-One nor Pretec was under any obligation to pay for either Memorex's separate legal fees or to approve the settlement offer Memorex had tentatively made with SanDisk, they had no reason to doubt these misrepresentations of the law at either the time that they were made or at the time it agreed to follow the advice of M&S as it related to its refusal of Memorex's demands for payment of its separate attorney fees and the approval and funding of the proposed settlement agreement.

32. If either C-One or Pretec had been aware of both the true facts and the true nature of the law at the time it would have not taken the advice of M&S as it related to their obligations under the Indemnity Agreement and would have performed all of their obligations under the Indemnification Agreement with Memorex. Instead, on the advice of M&S they litigated the matter and ultimately lost because there was no factual or legal justification to deny to their obligations.

33. As a direct and proximate result of M&S's misrepresentations of law and fact they incurred legal fees and costs billed by and paid to M&S in the total amount of $737,791.38 by reason of which both Pretec and C-One were damaged.

34. As a further direct and proximate result of M&S's misrepresentations of law and fact, C-One and Pretec were ordered by the Court to additionally pay Memorex's attorney fees and costs in the State Court action, in the total amount of $486,939.50, which caused C-One and Pretec to suffer even further damage and detriment.

C. Implied Equitable Indemnity

35. As part of C-One and Pretec's Indemnity Agreement with Memorex they were required to assign, provide and pay for "acceptable" counsel to Memorex to undertake "the professional responsibility" of representing Memorex in the above-referenced Lexar and SanDisk federal patent infringement cases.

36.    In its Statement of Decision of April 26, 2006 (Phase One), the Court [Memorex v C-One (ACSC Case No RG02-118916] found that Memorex was "justified, using an objectively reasonable standard of acceptability, in finding that (M&S) and their actions unacceptable under the terms of the Indemnification Agreement". Thereafter, in the "Phase Two" trial, the Court entered its Judgment and Order on December 15, 2006 wherein C-One and Pretec were ordered to pay Memorex $486.939.50 for attorney fees and costs it had incurred in litigating the Superior Court action. This judgment was based on M&S's wrongful acts as set forth above.

37.    By reason of the foregoing, including the fiduciary duty M&S owed to C-One and Pretec as an integral of their attorney-client relationship, C-One and Pretec are entitled to indemnity from M&S for all of the attorney fees and costs awarded to Memorex in connection with its litigation of the Superior Court Action. This breach of duty is all the more egregious given the fact that M&S withdrew from the case prior to the Phase Two damage portion of the trial which resulted in a default judgment and damages against C-One and Pretec. .

### IV.
### C-One Bases Its Second Claim Relating To M&S's Questionable Billing Practices In The Federal Lexar and SanDisk Cases On The Relevant Facts Set Forth Above, The More Particularized Facts Set Forth Immediately Below, And Their Attendant Arguments

38.    According to a review of the invoices submitted by M&S in connection with the

professional services it rendered on behalf of C-One and Pretec in the Lexar and SanDisk federal

cases (which also included services rendered in the Memorex State Court action), the following

problems with M&S's billing practices exist:

A.    Time Increments & Blocked Billing[12]

39.    M&S billed time in 0.10 hour ( six minute) increments. Eighty-four (84%) percent

(9,221 of 10,922) were billed in a block billing (multitask) format and only 32 of these total tasks

were charged at the 0.10 hour increment.

40.    This method of billing prevented them from not only evaluating the reasonableness

of time and fees charged for individual tasks but also prevented it from determining whether or

not the total daily time and fees charged by any particular timekeeper was overstated, inflated,

or duplicative of work performed by others.

41.    M&S charged $2,774,193.75 using blocked billing entries

B.    Lack Of Meaningful Review

42.    The exercise of meaningful billing judgment is a crucial element of an attorneys'

legal fees and the appropriate exercise of this billing judgment requires a good-faith effort to

exclude time charges for tasks that are excessive, redundant, or otherwise unnecessary.

43.    While occasional misspelling or typographical error is unavoidable by even the

---

[12] Blocked billing is the practice of grouping multiple tasks in a single entry with only a
single time amount associated with all the tasks in the entry.

most conscientious law firm, on the other hand, a number of obvious errors in billing entries indicate a lack of attention by the law firm's billing partner as well as suggests the absence of a meaningful billing review.

44.    As is applicable here, there are 63 instances of obvious M&S task description errors were identified on all 87 invoices reviewed, including the misspelling of party names ("Lexar" for "Lexar", "Ritec" for "Ritek") and the misspelling of the *City By the Bay* ("San Pracisco" instead of "San Francisco").

45.    Viewed in a vacuum this apparent lack of attention to detail may lose its significance.   However, the failure of M&S billing attorneys to identify and correct task description errors in the firms invoices is especially noteworthy in the context of the frequency of charges at premium rates by M&S partner-level attorneys for such things as "review", "attention to", and "consider" Lexar and SanDisk files and documents.

C.    Double Billing[13]

46.    The invoices prepared and submitted by M&S to Pretec and paid by C-One contain at least 5.65 hours, for a combined fee total of $2,091.00 which appear to be for identical task descriptions.

////

---

[13] Double Billing is defined as tasks billed on the same day and performed by the same timekeeper where the task descriptions and time billed are identical or nearly so.

## D.    Hourly Billing Increases

47.    The fee agreements by and between M&S and Pretec provided for a maximum hourly rate of $400 per hour for senior attorneys to a low of $190 per hour for less experienced attorneys. While the agreement further provided that this "rate schedule may increase from time to time" at no time did M&S give Pretec any advance notice of an anticipated, future rate increase prior to it being implemented.

48.    Claimants are informed and believe that, during the course of M&S's representation, M&S implemented rate increases for 13 timekeepers one or more times, ranging from a low of 10% to a high of 89%, without prior notice. The rates for named partner Daniel Mount increased by 19%.

49.    Claimants are further informed and believe that the total amount of fees billed based solely upon these increased rates is at least $377,560.50.

## E.    Potentially Rounded-Up Time Entries

50.    Claimants further contend that timekeepers who demonstrate an obvious pattern (increments of 0.25, 0.50, or 1.00 hour) may be systematically overcharging the actual time required to perform the task or tasks described.

51.    For example, attorney Mount submitted 588 total billing entries related to the Lexar and SanDisk cases of which 554 (or 94%) suggest a significant pattern of potentially round-up

entries (63 entries were even-hour amounts, 158 entries were half-hour amounts, and 333 were quarter-hour amounts). The total time charged by attorney Mount in these increments totaled $481,862.50.

F.    Non-Defense Related Activities

52.    Claimants contend that a law firm's activities to prepare and obtain court approval for a motion to withdraw are not considered defense-related tasks chargeable to the client. Likewise, tasks related to winding up the relationship after withdrawal motion has been filed are also considered noncompensable.

53.    The invoices submitted by M&S display combined hours of 51.48 and combined fees of $14,655.32 which identify tasks related solely to M&S's withdrawal from the Lexar and SanDisk litigation.

G.    Vaguely Described Tasks

54.    Claimants contend that, at a minimum, task descriptions should identify each service separately and in a manner sufficient to permit the client to determine the nature of the professional services performed and its benefit to the client. Here, M&S, a law firm which claims a level of expertise regarding patent litigation matters should be skilled in drafting accurate task descriptions that are both highly descriptive and yet still preserve both privileged and otherwise confidential client information.

55.     M&S firm task descriptions for the most part do not meet the objective standards of specificity and for the most part are so unacceptably vague that they preclude any insight into the nature of the task performed.   For instance:

a.     2,920 task descriptions referencing documents, issues and litigation activities prefaced only with the phrase "attention to";

b.     924 task descriptions were charged to "consider" or "consider issues re specific documents:

c.     598 task descriptions relating to meetings, internal conferences and telephone calls were so vaguely described that they shed absolutely no light on the subject matter being discussed;

d.     250 task descriptions relating to correspondence and correspondence review which neither identified an intended recipient or detail nor identified the source or its subject matter; and

e.     222 task descriptions for miscellaneous tasks, such as "review", which were too generally described to be meaningful.

56.     Taken together, a combined total of 4,934.44 hours and $1,570,038.94 in fees were charged by M&S for the types of vaguely described tasks set forth above.

## H.    Duplication of Effort

57.    Claimants contend that since M&S identifies itself as a patent litigation specialist, attorneys with that level of skill and experience should, in most instances, be able to handle important client matters without the involvement of multiple attorneys. However, since the retainer agreement does provide that "legal personnel assigned to this matter will confer among themselves as required, the following summary defines "Duplication of Effort" when time is charged by more than two attorneys and when preparation for activities are charged by attorneys who did not attend or participate in the activity for which such preparation time was billed. Using this yardstick, the following billing errors are identified:

a.    M&S billed 25.36 hours and $5,407.75 in combined fees for multiple involvement in outside meetings and conferences.

b.    M&S billed 69.57 hours and $16,835.58 in combined fees for multiple involvement at court appearances and depositions.

c.    M&S charges for internal firm conferences are approximately 7% of the total fees billed by the firm. Although productive conversations on relevant legal and factual issues between firm attorneys was contemplated by the retainer agreement, C-One contends that since meetings between three or more attorneys (particularly those which include associates and junior associates) have a significant downstream administrative component, it should not be charged for

the time M&S used to train its associates and, with respect thereto, C-One has identified at least 11.19 hours and combined fees of $2,570.64 associated with unnecessary participation in intra-office conferences.

I.   Duplicative or Redundant Activities

58.    Claimants concede that there are legitimate reasons for law firms to sometime charge for more than one timekeeper to research the same topic, prepare the same letter, pleading, or memorandum, or review the same document. However, Claimants nevertheless contend that these duplicative and/or redundant activities should not be billed to the client if their underlying purpose was to benefit the law firm rather than directly aided M&S in the presentation of their clients' defense, particularly where the utility to the client of these redundancies cannot be demonstrated.

59.    With respect to litigation project activities, by allowing the time and tasks charged by the most senior attorneys on these projects, and questioning only the duplicative involvement of lower level attorneys, C-One and Pretec are informed and believe that a combined total of $1,434.75 hours and a total of $258,488.10 in combined fees show duplicative efforts.

60.    Both C-One and Pretec submit that more experienced attorneys frequently review and edit drafts of major pleadings prepared by less experienced attorneys. By the same token, they are informed and believe that multiple review of the same documents by multiple attorneys is also

at times duplicative. Likewise, charges by both junior and senior attorneys to review the same incoming documents also reflects a similar redundancy. By questioning only the time charged by the more junior attorneys, C-One and Pretec are informed and believe that at least 54.09 cumulative hours and $11,727.50 in combined fees are either duplicative or redundant.

61.     Claimants are further informed and believe that at least five sporadic timekeepers, each of whom billed less than 15.00 hours, are lacking in utility, nonproductive, or duplicative of the activities of the other and more regular timekeepers. Likewise, none of the transient billing by attorney LaFleur for all three entries charged to the "Polaroid" matter, none of which appeared to reflect substantive legal services on an identifiable project.[14] Within this category, the efficacy of the 30.80 hours and combined fees of $6,881.00 billed by M&S and paid is improperly reflected in the Pretec invoices.

J.     Legal Research and Drafting Projects

62.     As advertised M&S attorneys are specialists in patent litigation and should therefore be well-versed with basic procedural rules of the jurisdictions where they routinely practice as well as the substantive area of law for which the law firm represents itself to have a superior level of competence. Notwithstanding the vagueness of its billings, at least $6,783.33 in combined legal fees for legal research activities is invoiced for which the subject matter as described is such

---

[14]/ M&S billed Pretec for work on a "Polaroid" matter not apparent from its fee agreement and not involved in either the SanDisk or Lexar nor Memorex matters.

that an experienced patent litigation attorney should already be most familiar with.

K.    Clerical Tasks

63.    Clerical tasks are those types of tasks that do not require legal acumen and that secretaries, file clerks, messengers, and other nonprofessional staff (as opposed to attorneys, paralegals, and legal assistants) can effectively perform. M&S timekeepers charged for such tasks as new matter set-up and organization, scheduling meetings and events, electronic document retrieval, scanning, copying, e-filing, and simple document organization; all of which fall within the ambit of the definition of a "clerical task".. With peculiar reference thereto, not less than 408.35 total hours and $55,664.15 in combined costs and fees was inappropriately charged to Pretec for the performance of such "clerical" tasks by its professional legal staff.

L.    Administrative Tasks

64.    While Claimants recognize that administrative tasks such as preparing invoices, managing and supervising support staff, processing invoices, in-house training and continuing education for attorneys, preparing budgets and forecasts, scheduling, software and systems training, and other similar tasks of an administrative nature are necessary for the effective and efficient administration of a law practice, they contend that these types of tasks are not typically considered "legal services" passed on and chargeable to a client. At least 98.23 total hours and $29,975.75 in combined fees were billed to Pretec as "legal fees" when in fact that they were

actually administrative "costs".

M.    <u>Expenses</u>

65.    M&S should have provided supporting documentation for external expenses to allow for the reconciliation of the expense charges to underlying receipts to determine if the expenses are billed to the appropriate client matter and at actual cost.  The external expenses totaling $155,580.31 for which no supporting documentation was provided and on this basis alone considers these external expenses questionable.

66.    M&S also billed Pretec for computer-assisted legal research charges totaling $16,868.38[15].  Traditionally, a "brick and mortar law library" was treated and considered as an overhead expense.  C-One and Pretec contend that computer-assisted legal research is but an alternative means of conducting legal research and accordingly should be treated the same - as part of the law firm's overhead and the cost included in the determination of M&S' hourly rates.  This is all the more true if the legal research engine is provided to the law firm as a fixed, monthly cost.

N    <u>Based On The Foregoing Billing and Collection Practices As Alleged M&S Breached Its Fiduciary Duties to C-One and Pretec</u>

67.    California Rules of Professional Conduct, Rule 3-500 states that an attorney has an affirmative duty to communicate promptly with a client regarding any significant changes in its

---

[15] This amount is included in the $155,580.31 set forth in Paragraph 65 but is set forth separately in this paragraph for the purpose of advancing an additional basis for this particular line-item's exclusion from the invoice

representation and included in the definition of "significant changes" is the requirement that attorneys provide their clients with advance notice of any changes in the amount of the fees being charged for the services being rendered. M&S failed to provided C-One with advance notice of the numerous increases in fees prior to the time when these increases were implemented.

68.    Under California Rules of Professional Conduct [Rule 4-200(A)] it a breach of an attorneys fiduciary duty to either charge or collect an unconscionable fee. Rule 4-200(B) sets forth a series of factors to be considered in determining whether or not a fee is unconscionable; not the least of which include: [a] the amount of the fee in proportion to the value of the services performed; [b] the relative sophistication of the lawyer and the client; [c] the informed consent of the client to the fee; and [d] the amount involved and the results obtained.

69.    As is wholly applicable here, M&S collected $3,759,224.72 in fees and $156,027.31 in costs before making its motion to withdraw without any result to its client favorable or otherwise. Corollary, Memorex was able to settle its case with Lexar for $185,000 and incurred total attorney fees and costs for both the Lexar and SanDisk cases of only $374,956.52.

70.    Furthermore, of the $3,759,224.42 in fees billed and collected by M&S, C-One and Pretec is informed and believes that based on the result of a review of its invoices at least $2,395,022.40 (64%) of the attorney fees charged are questionable.

71.    Claimants contend that if the amount of the attorney fees must be in proportion to

the value of the services rendered [California Rules of Professional Conduct, Rule 4-200(B)], then

the value of M&S services, per force, be worth less than the $374,956.52 awarded to Memorex's

attorneys in the Superior Court action given that they at least obtained a "favorable result" for their

client in the underlying Lexar and SanDisk patent infringement cases.

72.     Separately, Pretec contends that it should not have been billed under its retainer

agreement with M&S for the legal services M&S performed on behalf of C-One.

73.     Separately, C-One contends that, absent a signed retainer agreement with M&S, it

is not bound by the billing arrangements set forth in the retainer agreement by and between M&S

and Pretec but rather should only be charge a reasonable fee based on quantum meruit.

<div align="center">

**V.**
**Claimants Bases the Third Claim Against M&S**
**In Relation To The Federal Lexar and SanDisk Cases**
**On The Relevant Facts Set Forth Above**
**And The Following Attendant Arguments**

</div>

**A.     Equitable Indemnity Due To Breach Of Fiduciary Duty**

74.     At the time that M&S was retained to represent Pretec in the Lexar and SanDisk

patent infringement cases it was informed that, pursuant to the express terms of an Indemnity

Agreement, both C-One and Pretec were required to assign, provide and pay for "acceptable"

counsel to Memorex to undertake "the professional responsibility" of representing Memorex in

the above-referenced Lexar and SanDisk federal patent infringement cases.

75. In its Statement of Decision of April 26, 2006 (Phase One), the Court [Memorex v C-One (ACSC Case No RG02-118916] found that Memorex was "justified, using an objectively reasonable standard of acceptability, in finding that (M&S) and their actions unacceptable under the terms of the Indemnification Agreement".

76. After receiving this unfavorable ruling, M&S was granted leave to withdraw from the case without first assuring that the corporations (C-One and Pretec) had been able to secure substitute counsel.

77. Thereafter, in the "Phase Two" trial, the Court entered its Judgment and Order on December 15, 2006 wherein C-One and Pretec were ordered to pay Memorex's attorney fees and costs in the Lexar and SanDisk federal cases in the total amount of $374,956.52. This judgment was based in large measure on the court's factual findings regarding M&S's wrongful acts, as set forth above, including but not strictly limited to its failure to communicate with Memorex and the statements attributed to M&S attorney Finley which the court concluded afforded reasonable grounds to doubt M&S's loyalty.

78. By reason of the foregoing, including the professional responsibility and fiduciary duty M&S owed to both C-One and Pretec as an integral part of their attorney-client relationships, C-One and Pretec are entitled to indemnity from M&S for all of the attorney fees and costs, including any and all pre and postjudgment interest, awarded to Memorex in Alameda Superior

Court civil action filed in connection with C-One and Pretec's obligations under the agreement to indemnify Memorex.

## V.
## Requested Relief

Wherefore, and in light of all of the above, C-One requests an arbitral award of its claims as follows:

1.    With respect to C-One, given the lack of a signed retainer agreement, that M&S's attorney fees and costs be calculated and based on a Quantum Meruit basis only.

2.    With respect to Pretec, that its invoices be recalculated so as to exclude any and all legal services and costs associated with its representation of C-One in both the Lexar federal matter and the Memorex civil action.

3.    That the fees and costs invoiced to Pretec and paid in connection with the "Polaroid" matter be removed and reimbursed as being both unauthorized and outside the scope of the signed retainer agreement.

4.    That the fees and costs associated with M&S's representation of C-One in the Lexar case but invoiced to Pretec be reimbursed to Pretec and charged separately and directly to C-One.

5.    That, given the lack of a signed retainer agreement between M&S and C-One, all legal services provided to C-One in both the federal and state court actions be recalculated on the basis of quantum meruit.

6.    That the total, combined aggregate amount of those fees and costs associated with M&S's representation of C-One and Pretec in the two federal patent infringement cases (Lexar and SanDisk) be no greater than the $374,956.52 awarded to Memorex in the Alameda Superior Court case on the ground that based on the services performed and the results obtained the fees and costs collected by M&S from C-One are both excessive and unreasonable.

7.    That M&S be ordered to reimburse Claimants for the difference between the fees and costs found to be reasonable and proper under the circumstances set forth herein and the $3,759,224.42 in fees and $156,027.31 in expenses (for a total of $3,915.251.73) invoiced to Pretec which have already been paid and which M&S has already received

8.    That M&S hold harmless and indemnify both C-One and Pretec  by reimbursing them for the $486,939.50 they were ordered to pay Memorex for the attorney fees and costs it incurred in litigating the Alameda County Superior Court civil action.

9.    That M&S hold harmless and indemnify both C-One and Pretec by reimbursing them for the $374,956.52 in separate attorney fees and costs awarded to Memorex in the Alameda Superior Court case which were incurred by Memorex a direct result of the judgment holding that Memorex was "justified" in its refusal to accept M&S as its appointed counsel.

10.    For interest on the amounts awarded as a result of this claim.

11.    For attorneys and costs pursuant to AAA Rules.

12.. For such other and further relief as is deemed proper.

Respectfully Submitted

Leodis C. Matthews
Attorneys for Claimants

Date: February 15, 2008

# Exhibit D

00054

1 | PHILLIPS, GREENBERG & HAUSER, L.L.P.
  | JERRY R. HAUSER, SBN. 111568
2 | ERIK C. VAN HESPEN, SBN. 214774
  | Four Embarcadero Center, 39th Floor
3 | San Francisco, California 94111
  | Telephone:    (415) 981-7777
4 | Facsimile:    (415) 398-5786

5 | Attorneys for Plaintiff,
  | MOUNT & STOELKER, A PROFESSIONAL CORPORATION

6

7

8 |                IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

10 |                   IN AND FOR THE COUNTY OF SANTA CLARA

11 | MOUNT & STOELKER, A PROFESSIONAL          CASE NO.: 108 CV 105975
   | CORPORATION,
12
   |                   Plaintiffs,            NOTICE OF MOTION AND MOTION
13 |                                          FOR PRELIMINARY INJUNCTION
   |          -v-
14 |                                          Date:      March 25, 2008
15 | C-ONE TECHNOLOGY, A TAIWANESE            Time:      9:00 am
   | CORPORATION; PRETEC ELECTRONICS         Dept.:      5
16 | CORPORATION, A CALIFORNIA
   | CORPORATION; INTERNATIONAL
17 | CENTER FOR DISPUTE RESOLUTION, A
   | DIVISION OF THE AMERICAN
18 | ARBITRATION ASSOCIATION; AND
   | DOES 1 through 50 inclusive,
19
   |                   Defendants.
20

21 |        To all parties and their attorneys of record:

22 |        PLEASE TAKE NOTICE that on March 25, 2008 at 9 a.m., or as soon thereafter as the matter

23 | can be heard in Department 5 of this court, located at 191 North First Street, San Jose, California,

24 | Plaintiff Mount & Stoelker, A Professional Corporation ("Mount & Stoelker") will and does move

25 | the Court for an order enjoining defendants C-One Technology ("C-One"), Pretec Electronics

26 | Corporation ("Pretec") and the International Center for Dispute Resolution, a division of the

27 | American Arbitration Association ("ICDR") and their agents and employees and any other person or

28 | entity acting on their behalf from pursuing or taking any action in an arbitration proceeding initiated

1 | by C-One against M&S before the ICDR, Number 50 194 T 00006 08 (the "C-One Arbitration") and

2 | that said arbitration be stayed during the pendency of this action.

3 |    This motion is made on the grounds that: (1) there is not contractual agreement between

4 | Mount & Stoelker, on the one hand, and C-One and Pretec, on the other hand, requiring that the

5 | claims set forth in the C-One arbitration proceeding be subject to arbitration; (2) C-One is seeking to

6 | enforce an arbitration agreement in which it is not a signatory; (3) C-One and Pretec refused to

7 | dismiss the arbitration; (4) C-One, Pretec and the ICDR assert that the C-One Arbitration will go

8 | forward even if Mount & Stoelker refuses to participate on the contention that they have the right to

9 | proceed with the arbitration even if Mount & Stoelker does not participate in said arbitration; (5) C-

10 | One, Pretec and the ICDR assert that the ICDR has right to determine its jurisdiction under

11 | international law governing arbitrations; (6) there is a likelihood of success on the merits since there

12 | is no dispute that C-One is not signatory to the fee agreement between Mount & Stoelker and Pretec

13 | which allegedly contains arbitration agreement; (7) in the fee agreement between Mount & Stoelker

14 | and Pretec, Pretec elected to exclude the arbitration; and (8) unless C-One, Pretec and the ICDR are

15 | restrained by court order from proceeding with the C-One Arbitration pending this action, Mount &

16 | Stoelker will suffer great and irreparable injury and will be compelled to submit to arbitration despite

17 | the fact that no contract exists for said arbitration.

18 |    This application is based upon the Declaration of Daniel Mount, the Declaration of Jerry R.

19 | Hauser, the attached Memorandum of Points and Authorities, the Complaint and First Amended

20 | Complaint filed in this action, and on such oral and documented evidence as may be presented at the

21 | hearing on this motion.

22 | DATE: February 26, 2008       PHILLIPS, GREENBERG & HAUSER, L.L.P.

23 |

24 |                By:

25 |                   JERRY R. HAUSER

26 |

27 |

28 |                      00056

2

1

## PROOF OF SERVICE

2

*C-One v. Mount & Stoelker*

3

    The undersigned declares: I am a resident of the United States and am employed in the City

4 and County of San Francisco, State of California; I am over the age of eighteen years and not a party
to the within action; my business address is Phillips, Greenberg & Hauser, LLP, Four Embarcadero

5 Center, 39th Floor, San Francisco, California 94111. On the date indicated below, I served the
following documents:

6

7 **NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION;**

8 **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION;**

9

**DECLARATION OF DANIEL S. MOUNT IN SUPPORT OF MOTION FOR
10 PRELIMINARY INJUNCTION; and**

11 **DECLARATION OF JERRY R. HAUSER IN SUPPORT IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION**

12

by placing a true copy thereof enclosed in a sealed envelope and served in the manner described
13 below to the interested parties herein and addressed to:

14
Leodis Matthews                                Andrea H. Bugbee
15 Matthews & Partners                           ICDR Senior Case Manager
4322 Wilshire Blvd., Suite 200                 International Centre for Dispute Resolution
16 Los Angeles, CA 95110                         1633 Broadway
Leesq@aol.com                                  New York NY 10019-6708
17

18
  **X    FEDERAL EXPRESS – OVERNIGHT DELIVERY:** I caused such envelope to be
19 deposited with the Federal Express Office prior to the cut-off time for next day delivery with a
shipping label properly filled out with delivery to be made to the addressee designated.

20

21     I declare under penalty of perjury under the laws of the State of California that the forgoing is
true and correct. Executed on February 27, 2008 at San Francisco, California.

22

23                         _____

24                              Valerie Vitullo

25

26

27

28

00057

# Exhibit E

00058

1    PHILLIPS, GREENBERG & HAUSER, L.L.P.
     JERRY R. HAUSER, SBN. 111568
2    ERIK C. VAN HESPEN, SBN. 214774
     Four Embarcadero Center, 39th Floor
3    San Francisco, California 94111
     Telephone:    (415) 981-7777
4    Facsimile:    (415) 398-5786

5    Attorneys for Plaintiff,
     MOUNT & STOELKER, A PROFESSIONAL CORPORATION

6

7

8            IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

10             IN AND FOR THE COUNTY OF SANTA CLARA

11    MOUNT & STOELKER, A PROFESSIONAL      CASE NO.: 108 CV 105975
     CORPORATION,
12

13           Plaintiffs,        **MEMORANDUM OF POINTS AND**
                                 **AUTHORITIES IN SUPPORT OF**
        -v-                            **MOTION FOR PRELIMINARY**
14                                          **INJUNCTION**
   C-ONE TECHNOLOGY, A TAIWANESE
15    CORPORATION; PRETEC ELECTRONICS     Date:     March 25, 2008
     CORPORATION, A CALIFORNIA                 Time:     9:00 am
16    CORPORATION; INTERNATIONAL           Dept.:     5
     CENTER FOR DISPUTE RESOLUTION, A
17    DIVISION OF THE AMERICAN
     ARBITRATION ASSOCIATION; AND
18    DOES 1 through 50 inclusive,

19           Defendants.

20

21

22

23

24

25

26

27

28

00059

# I.    INTRODUCTION

Plaintiff Mount & Stoelker, A Professional Corporation ("Mount & Stoelker") is a law firm that provided legal services to Defendant C-One Technology, A Taiwanese Corporation, ("C-One") in a federal patent case and a state law declaratory relief and breach of contract action. In addition to representing C-One in the above litigation, Mount & Stoelker also represented Defendant Pretec Electronics Corporation ("Pretec"), a California Corporation that dissolved in December of 2006, in the same litigation and a second federal patent case. Pretec was a subsidiary of C-One and handled the distribution of C-One's products in the United States. There is no dispute that Mount & Stoelker ceased representing C-One and Pretec in May/June of 2006 in the state court action and one of the federal actions. There is a dispute with regard to whether Mount & Stoelker continued to represent Pretec in the other federal action after May/June of 2006.

A dispute has arisen between Mount & Stoelker, C-One and Pretec with regard to the legal services that Mount & Stoelker performed. This dispute involves billing practices and claims that Mount & Stoelker was negligent in performing legal services. On January 11, 2008, C-One initiated an arbitration proceeding with the American Arbitration Association ("AAA") with regard to the above-referenced disputes, despite the fact that C-One asserts that there is no contract or retainer agreement between Mount & Stoelker and C-One for the performance of legal services. Initially, Pretec was not a party to the C-One Arbitration. Despite asserting no contract exists, C-One claimed that it had the right to arbitrate these disputes because the fee agreements between Mount & Stoelker and Pretec do contain arbitration clauses. After Mount & Stoelker objected to the C-One Arbitration on the ground that no arbitration agreement exists, C-One filed and amended arbitration claim which named Pretec, a dissolved corporation, as a claimant.[1]

C-One and Pretec do not have a right to arbitrate the existing dispute with Mount & Stoelker because there is no contractual agreement between the parties for arbitration. In the Mount & Stoelker/Pretec fee agreements, Pretec declined to include the arbitration clause in the contract, which reads as follows:

00060

_____

[1] Mount & Stoelker, C-One and Pretec have agreed to stay the C-One Arbitration until April 1, 2008. If this court does not issue a preliminary injunction the C-One Arbitration will move forward.

1

1    If a dispute arises between Mount & Stoelker and you [Pretec]
regarding any aspect of this agreement or its implementation, including
2    but not limited to the following: (a) Mount & Stoelker's claim for
attorney's fees or costs under this agreement; or (b) any claim you may
3    make for unsatisfactory performance including the claim of legal
malpractice; you agree to submit the matter to binding arbitration
4    before the American Arbitration Association in Santa Clara County.

5    BE ADVISED THAT, BY AGREEING TO THIS PROVISION,
BOTH OF US ARE WAIVING ANY RIGHT ONE MAY HAVE TO
6    A TRIAL BY JURY. IF YOU CONSENT TO SUBMIT YOUR
CLAIMS TO BINDING ARBITRATION, PLEASE INDICATE BY
7    PLACING YOUR INITIALS IN THE SPACE PROVIDED
(Exhibits A & B to the First Amended Verified Complaint, hereinafter
8    "VC")

9    There is no dispute or question that Pretec did not place its initials in the space provided for

10    arbitration. Therefore, the arbitration clause by its term has been excluded from the Mount &

11    Stoelker/Pretec fee agreements. Simply put, there is no contractual agreement between Mount &

12    Stoelker, on the one hand, and C-One and Pretec to arbitrate these claims and therefore C-One and

13    Pretec have no right to initiate the arbitration.

14    In addition, AAA has designated the arbitration as an international arbitration to be governed

15    by international law and has assigned the matter to the International Center for Dispute Resolution

16    ("ICDR") in New York. This has taken place despite the fact that the arbitration clause in the Pretec

17    fee agreements, assuming it is included, states that the arbitration is to take place in Santa Clara

18    County. Further, the ICDR asserts that under international law, the arbitrator will decide its own

19    jurisdiction:

20    With respect to the jurisdiction of the matter, the Parties are hereby
reminded that pursuant to International Article 15 Sec. 1, the Tribunal
21    shall shave the power to rule on its own jurisdiction, including any
objections with respect to the existence, scope or validity of the
22    arbitration agreement. Additionally, pursuant to Article 15 Sec. 2, the
Tribunal shall have the power to determine the existence or validity of a
23    contract of which an arbitration clause forms a part.

24    Lastly, unless the ICDR has the agreement of the Parties, or receives a
Court Order issuing a Stay of the Arbitration, we must proceed with the
25    administration of the matter. (Letter from ICDR. Hauser Dec., Exhibit D)

26    California law is clear, only the court can determine whether a non-signatory to an arbitration

27    agreement can enforce the arbitration provisions even if the parties to the agreement give the arbitrator

28    the power to determine jurisdiction. California law is also clear that the court must enjoin the arbitration

1 | from going forward until it determines whether an arbitration clause exists and whether a non-signatory

2 | can enforce it.

## II.    FACTUAL BACKGROUND

4 |     On or about April 21, 2001, Lexar Media, Inc. ("Lexar") filed a patent infringement complaint

5 | in the United States District Court, Northern District of California, Case Number 00-4770 (MJJ)

6 | naming Pretec and Memtec Products, Inc. ("Memorex") as defendants. (VC, Exhibit C, ¶ 4) Lexar

7 | alleged that Pretec distributed and Memorex sold flash memory controller units manufactured by C-

8 | One that infringed upon five of Lexar's patents. C-One was not named as a defendant in the original

9 | complaint. *Id.* On or about July 30, 2001, C-One and Pretec entered into a written indemnification

10 | agreement with Memorex whereby C-One and Pretec agreed to fully defend, indemnify and hold

11 | Memorex harmless from all claims raised by Lexar as well as any other third party claims in

12 | connection with products sold by Memorex that it received from C-One and/or Pretec. (VC, Exhibit

13 | C, ¶ 5)

14 |     On or about October 20, 2001, SanDisk Corporation ("SanDisk") filed a patent infringement

15 | complaint in the United States District Court, Northern District of California, Case Number 01-4063

16 | (VRW) against Pretec and Memorex alleging that the flash memory technology products distributed

17 | by Pretec and Memorex infringed on SanDisk patents (the "SanDisk action"). (VC, Exhibit C, ¶ 6)

18 | On or about October 7, 2002, Mount & Stoelker and Pretec entered into attorney-client fee agreement

19 | wherein Mount & Stoelker agreed to represent Pretec in the Lexar action. Pretec did not initial the

20 | arbitration clause electing to have all disputes submitted to arbitration in the fee agreement. (VC,

21 | Exhibit A; Mount Dec., ¶ 2 & 4) On the same date, Mount & Stoelker and Pretec also entered into an

22 | attorney-client fee agreement with regard to the SanDisk action. (VC, Exhibit B, Mount Dec. ¶ 2 &

23 | 4) Again, Pretec did not initial the arbitration clause thereby excluding the right to arbitration from

24 | the fee agreement. Id. C-One was not a party in the SanDisk action. (Mount Dec., ¶ 2)

25 |     On or about May 8, 2003, C-One was served with a summons and amended complaint in the

26 | Lexar action in which C-One was named as a defendant. (VC, Exhibit C, ¶ 12) Mount & Stoelker

27 | agreed to appear as C-One's counsel in the Lexar action. (Mount Dec., ¶ 5) Mount & Stoelker did not

28 | execute a written fee agreement with C-One. *Id.*

00062

3

1      On or about September 26, 2003, Memorex filed a complaint for declaratory relief, breach of

2 contract, and injunctive relief against C-One and Pretec in the Superior Court of California, County

3 of Alameda, Action No. RG03118916 (the "Memorex Action"). (VC, Exhibit C, ¶ 8) Mount &

4 Stoelker agreed to represent both C-One and Pretec in the Memorex action, but did not enter into a

5 separate fee agreement for such services. (Mount Dec., ¶ 6) Mount & Stoelker continued to represent

6 C-One and Pretec in the Lexar and Memorex actions until May/June of 2006 when Mount &

7 Stoelker's motion to withdraw as counsel was granted in both proceedings. (Mount Dec., ¶ 7) Even

8 though the court denied Mount & Stoelker's motion to withdraw as counsel for Pretec in the SanDisk

9 Action, Pretec, by its actions Pretec terminated the attorney-client relationship with Mount &

10 Stoelker in May/June of 2006. (VC, ¶ 8) All invoices for legal services by Mount & Stoelker,

11 including services rendered to C-One, were sent to Pretec. (Mount Dec., ¶ 6)  The payments for all

12 such services were made by Pretec. (Mount Dec., ¶ 6)

13                 **III.    THE C-ONE ARBITRATION**

14      On or about January 11, 2008, C-One initiated the C-One Arbitration with the American

15 Arbitration Association. (Hauser Dec., Exhibit A) The exhibits containing the alleged arbitration

16 clause were not provided to Mount & Stoelker until January 31, 2008. (Hauser Dec., ¶ 2)  The

17 contracts that allegedly contained the arbitration clause were the fee agreements that Mount &

18 Stoelker entered into with Pretec with regard to the Lexar and SanDisk actions. *Id.*

19      In the original Statement of Claim, C-One identified itself as the parent of Pretec and asserts

20 that Pretec has dissolved. (VC, Exhibit C to the original complaint, ¶ 3) Yet, there were no

21 allegations that C-One is the successor in interest to Pretec, that the assets of Pretec were distributed

22 to the shareholders or that the corporate structure of Pretec should be disregarded. For that matter

23 Pretec is barred from transferring any of its assets to C-One. (Mount Dec., Exhibit B) C-One alleges

24 that "no retainer agreement was ever entered into by and between C-One and Mount & Stoelker

25 regarding this [Lexar] representation." (VC, Exhbibt C, ¶ 12) In the First Amended Statement of

26 Claim, C-One also made the following allegations:

                                                         00063

27         29.    The written fee agreements between Pretec and Mount &
            Stoelker dealt solely with the two federal actions (Lexar and SanDisk)

28             which involved federal issues and questions of law relating to

1    intellectual property and patent infringement.
     30.    While the fee agreement does refer to any other matters in
2    which we might represent you", it is C-One's position that (1) it was
     not a party to this agreement and (2) at the time this written
3    agreement was executed it was not contemplated by the parties that
     it would become embroiled in this civil action which, for reasons set
4    forth below, was a direct and proximate result of Mount &
     Stoelker's legal advice and its failure to communicate with
5    Memorex." (VC, Exhibit C, ¶ 29 & 30)

6        Mount & Stoelker objected to the C-One Arbitration from going forward, but C-One initially

7    refused to stay said proceeding to allow this court determine jurisdiction. (Hauser Dec., Exhibits B &

8    C) Further, ICDR maintained that: the arbitrator will determine its own jurisdiction; the arbitration

9    will go forward even if Mount & Stoelker does not participate; and the arbitration will be governed

10   by international law. ICDR also gave the parties until February 28, 2008, to select an arbitrator from

11   a list that includes arbitrators throughout California. (Hauser Dec., Exhibits B, C, & D)

12       After receipt of Mount & Stoelker's objections, C-One filed a First Amended Statement of Claim

13   in the C-One Arbitration and in the Amended Statement of Claim, named Pretec as a complainant.

14   (Hauser Dec., ¶ 9) The same attorney, Leodis Matthews, who is representing C-One in the arbitration is

15   also representing Pretec. (VC, Exhibit C) In the Amended Statement of Claim, C-One still maintains that

16   it is not a party to the Pretec fee agreements and is not bound by said agreements. In addition, C-One

17   asserts that Pretec is a complete, separate and distinct legal entity from C-One:

18       3.    Pretec was at all times herein relevant a California Corporation
     which had its principal place of business in the City of Fremont,
19   California and distributed by C-One's technological products in the
     United States, which included certain and specific flash memory
20   devices. Pretec is a wholly separate and distinct legal entity from C-
     One and have separate business operations as well as separate
21   personnel, separate business facilities and operations. (VC, Exhibit C, ¶
     3)

22

23       In the First Amended Statement of Claim in the C-One Arbitration, Pretec is only named as a

24   party to the first and third claims, which relate to the Memorex Action. (VC, Exhibit C) C-One is the

25   only party to the second claim with regard to billing practices in the Lexar and SanDisk litigation.

26   (VC, Exhibit C)

27       After the filing of the First Amended Claim, Mount & Stoelker, C-One and Pretec agreed to

28   stay the arbitration proceedings up and through April 1, 2008, in order to allow Mount & Stoelker to

1 │ file this motion for a preliminary injunction. (Hauser Dec., ¶ 11) If the court does not issue a

2 │ preliminary injunction, then this stay will be lifted and the C-One Arbitration will go forward.

3 │ (Hauser Dec., ¶ 11) In entering into the above stipulation, C-One reserved all defenses, inliding the

4 │ claim that this court does not have jurisdiction over it and has no right and power or authority to

5 │ enjoin it from moving forward with the C-One arbitration. (Hauser Dec., ¶ 11)

6 │ <center>IV.    LEGAL ARGUMENT</center>

7 │     **A.**    **The Arbitration Proceeding Must Be Enjoined Pending This Court's**

             **Determination of Jurisdiction**

8 │

9 │     Under *Code of Civil Procedure* § 527(a), the court has the power to grant a preliminary

10 │ injunction before judgment upon a verified complaint or affidavits that satisfactorily show sufficient

11 │ grounds exist. The grounds for an injunction are set forth in *Code of Civil Procedure* § 526(a). The

12 │ primary grounds are: (1) the plaintiff has shown a likelihood of success and it is entitled to relief

13 │ demanded; and (2) in balancing the equities the plaintiff would be irreparably harmed if the conduct

14 │ is not enjoined while on the other hand the prejudice of the defendant would be minimal. In applying

15 │ this criteria, the California courts have consistently held that an injunction is an appropriate procedure

16 │ to prevent an arbitration from going forward in order to allow the court to make a determination on

17 │ whether or not the controversy is subject to arbitration.

18 │     In *Pacific Indemnity Company v. Superior Court*, 246 Cal. App. 2d 63 (1966), the plaintiff

19 │ insurance company sought an injunction against the parties who initiated the arbitration and the

20 │ arbitrator, The American Arbitration Association ("AAA"), to prevent an arbitration from going

21 │ forward on the ground that the arbitration was not timely. The trial court denied the injunction but the

22 │ Court of Appeal overturned the trial court's order and remanded the matter requiring the issuance of a

23 │ preliminary injunction enjoining arbitration proceedings. In making such ruling the court held:

24 │         Under the undisputed facts of this case and the legal authorities
        discussed above, it appears that the real party's right to demand

25 │         arbitration was barred by Section 11580.2(h) in that it became the clear
        legal duty of the court to enjoin the arbitration proceedings. Since

26 │         under the circumstances the discretion of the trial court cannot be
        legally exercised in only one way, it was an abuse of discretion for the

27 │         court to deny a preliminary injunction and make the court order which
        it did. *Id.* at 72.

28 │

1       In this case, C-One, Pretec and AAA/ICDR are treating arbitration as self-executing, i.e. the

2  arbitration can go forward without a court order even if Mount & Stoelker refuses to appear.

3  Therefore, in order to prevent a default from being entered, Mount & Stoelker would have to

4  participate in the arbitration. Yet, if Mount & Stoelker participates in the arbitration it would waive

5  its right to have a court determine whether or not a contract exists for arbitration since such matters

6  challenging the arbitration itself must be raised in court before the arbitration. "(A) party who

7  questions the validity of the arbitration agreement may not proceed with the arbitration and preserve

8  the issue for later consideration by the court after being unsuccessful in the arbitration." *Bayscene*

9  *Residence Negotiators v. Bayscene Mobile Home Park*, 15 Cal. App. 4th 119, 129 (1993). See also

10  *Alternative Systems, Inc. v. Carey*, 67 Cal. App. 4th 1034, 1040-1041 (1998). If the arbitration is not

11  enjoined pending the court's resolution of C-One and Pretec's right to arbitrate, Mount & Stoelker

12  would be irreparably injured by being forced to arbitrate the claim and waiver of its right to have

13  these issues determined by the court.

14       It is settled law that who decides arbitrability, the court or the arbitrator, depends on what the

15  parties agreed in their contract. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 94 (1995);

16  *Freeman v. State Farm Mut. Auto. Ins. Co.*, 14 Cal.3d 473, 480 (1975). Yet, whether a non-signatory

17  to an arbitration agreement may enforce the arbitration provisions is one that must be decided by the

18  court on the basis of the facts found prior to any arbitration going forward regardless of what the

19  parties to the contract agreed to. *American Builders v. William Au-Yang*, 226 Cal.App. 3d 170, 178

20  (1990); *Valley Casework, Inc. v. Comfort Construction*, 76 Cal. App. 4th 1013, 1019 (1999). It is

21  possible that under certain circumstances a non-signatory to the contract can enforce an arbitration

22  clause based on the relationship of the parties, but only the court and not the arbitrator can make such

23  determination. *American Builder, supra*, 226 Cal. App. 3d at 179-180.

24      Therefore, notwithstanding an arbitrator's broad authority to resolve
questions presented by a controversy [including jurisdiction], an

25      arbitrator has no power to determine the rights and obligations of one
who is not a party to the arbitration agreement. ( *Unimart, supra, 1*

26      *Cal.App.3d at p. 1045.*) **The question of whether a nonsignatory is a
party to an arbitration agreement is one for the trial court in the**

27      **first instance.** *Id at 179.* Emphases added.

28

1    In *Valley Casework, Inc., supra,* 76 Cal. App. 4th 1013, the defendant contractor and its insurer

2    jointly sought arbitration with the plaintiff subcontractor under the arbitration clause contained in the

3    subcontract before the American Arbitration Association. The subcontractor then brought an action

4    against the contractor and its insurer for declaratory and injunctive relief seeking to enjoin defendants

5    from conducting the arbitration. The trial court denied the subcontractor's request for an injunction

6    and the arbitration proceeded uncontested, resulting in an award against the subcontractor. The Court

7    of Appeal reversed the judgment and held that the trial court erred in denying the subcontractor's

8    request to enjoin the general contractor and its insurer from jointly seeking arbitration with the

9    subcontractor under the arbitration clause because the insurer, as a nonparty to the arbitration

10   agreement, should not have been allowed to enforce it. *Id.* at 1016-1017.

11       **B.      No Arbitration Agreement Exists Between Mount & Stoelker and C-One and
             Pretec**

12

13       The existence of an agreement to arbitrate is a condition precedent to arbitration. Therefore,

14   the lack of agreement for arbitration is grounds to refuse to arbitrate. "(An) arbitration is a matter of

15   contract and a party cannot be required to submit to arbitration any dispute which he has not agreed

16   so to submit." *The United States Steelworkers of America v. Warrior and Gulf Navigation Company,*

17   363 US 574, 582 (1960); *Victoria v. Superior Court,* 40 Cal. 3d 734, 738-739 (1985)

18       In this case, C-One is seeking arbitration pursuant to the arbitration clause in the Mount &

19   Stoelker/Pretec fee agreements. Yet, as discussed previously, C-One is not a party to these fee

20   agreements. Incredibly, C-One claims that it is not bound by this fee agreement and that no contract

21   exists between Mount & Stoelker and C-One for the legal services at issue. C-One expressly states in

22   its Statement of Claim that the Pretec fee agreements are not applicable to it.

23       More importantly, there is no arbitration agreement between Mount & Stoelker and Pretec,

24   because Pretec specifically excluded the arbitration clause from the fee agreement. The fee agreement

25   was set up to provide client, in this case Pretec, with the right to chose to include an arbitration clause

26   in the fee agreement. The language of the document can not be clearer, plus it was in bold and a

27   larger font size as follows: "**IF YOU CONSENT TO SUBMIT YOUR CLAIMS TO BINDING**

28   **ARBITRATION, PLEASE INDICATE BY PLACING YOUR INITIALS IN THE SPACE**

1 | PROVIDED." Mount & Stoelker initialed this arbitration clause, but Pretec did not do so in both fee

2 | agreements. Therefore, as a matter of law, no arbitration clause exists in the Pretec Fee Agreements.

3 |       **C.**      **Mount & Stoelker Will Be Irreparably Injured If The Arbitration Is Not Enjoined And Have No Legal Remedy**

4 |

5 |       In *American Builders* and *Valley Casework* the court found that the plaintiff had no legal

6 | remedy and would be irreparably injured if the arbitrator makes the factual findings with regard to

7 | whether a non-signatory to the arbitration agreement can enforce it because the courts ability to

8 | review these factual findings are limited. "Thus, if Builder's were to bring a motion to vacate the

9 | award asserting the arbitrator had exceeded his powers in ordering joinder due to insufficient

10 | evidence to support a finding that Bonita was the Au-Yangs' principal, the trial court, constrained by

11 | the limited grounds set forth in *section 1286.2,* would decline to review the arbitrator's factual

12 | finding". *American Builders, supra,* 226 Cal. App. 3d 179-180. This same rationale should apply to

13 | the determination of whether arbitration exists between Mount & Stoelker and Pretec.

14 |       In addition, the arbitration clause in the Pretec fee agreements, assuming it was included in the

15 | contract, state that the Arbitration is to take place in Santa Clara County before the American

16 | Arbitration Association. Yet, the matter has been assigned to the ICDR in New York, who is treating

17 | this as an international arbitration governed by international law. The ICDR has also demanded that

18 | the parties select arbitrators outside of Santa Clara County.

19 |       **D.**      **Mount & Stoelker Has Established A Reasonable Possibility It Will Prevail**

20 |       "In deciding whether to issue a preliminary injunction, a [trial] court must weigh two

21 | 'interrelated' factors: (1) the likelihood that the moving party will ultimately prevail on the merits and

22 | (2) the relative interim harm to the parties from the issuance or nonissuance of the injunction.

23 | [Citation.]" *Butt v. State of California,* 4 Cal.4th 668, 677-678 (1992). "A trial court may not grant a

24 | preliminary injunction, regardless of the balance of interim harm, unless there is some possibility that

25 | the plaintiff would ultimately prevail on the merits of the claim. [Citation.]" *Id* at 678.

26 |       Only the court and not the arbitrator has jurisdiction to determine if a non-signatory to the

27 | contract can enforce the arbitration clause or if an agreement to arbitrate even exists. Therefore, a

28 | trial on this issue must take place. There is no dispute that C-One is not a party to the Pretec Fee

1   Agreements and C-One asserts that the Pretec Fee Agreements do not control its relationship with

2   Mount & Stoelker. These facts are sufficient in and of themselves to establish a reasonable possibility

3   that Mount & Stoelker will prevail. But there is more: Pretec excluded the arbitration clause from the

4   fee agreements so no arbitration agreement exists; all invoices for legal services were sent to Pretec

5   and it was Pretec and not C-One that paid said invoices, yet only C-One is seeking relief or damages

6   based on these invoices; and all claims of C-One and Pretec that they have asserted in the C-One

7   Arbitration are barred by the one year limitations period of *Code of Civil Procedure* § 340.6 since

8   Mount & Stoelker ceased representing C-One and Pretec in May/June of 2006. The harm to C-One

9   and Pretec is negligible, while the harm to Mount & Stoelker is substantial if the court does not issue

10   the injunction.

### V.    CONCLUSION

12      For the reasons set forth above, Mount & Stoelker respectfully requests that the court issue a

13   Preliminary injunction enjoining C-One, Pretec and the ICDR from going forward with the C-One

14   Arbitration until this action has been concluded.

15   DATE: February 26, 2008           PHILLIPS, GREENBERG & HAUSER, L.L.P.

17                          By:

18                             JERRY R. HAUSER

00069

10

1

## PROOF OF SERVICE

2

### *C-One v. Mount & Stoelker*

3

4

The undersigned declares:  I am a resident of the United States and am employed in the City and County of San Francisco, State of California; I am over the age of eighteen years and not a party to the within action; my business address is Phillips, Greenberg & Hauser, LLP, Four Embarcadero Center, 39th Floor, San Francisco, California 94111.  On the date indicated below, I served the following documents:

5

6

7

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION;**

8

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION;**

9

10

**DECLARATION OF DANIEL S. MOUNT IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION; and**

11

**DECLARATION OF JERRY R. HAUSER IN SUPPORT IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

12

13

by placing a true copy thereof enclosed in a sealed envelope and served in the manner described below to the interested parties herein and addressed to:

14

15

Leodis Matthews
Matthews & Partners
4322 Wilshire Blvd., Suite 200
Los Angeles, CA 95110
Leesq@aol.com

16

17

Andrea H. Bugbee
ICDR Senior Case Manager
International Centre for Dispute Resolution
1633 Broadway
New York NY 10019-6708

18

19

__X__   **FEDERAL EXPRESS – OVERNIGHT DELIVERY:**  I caused such envelope to be deposited with the Federal Express Office prior to the cut-off time for next day delivery with a shipping label properly filled out with delivery to be made to the addressee designated.

20

21

I declare under penalty of perjury under the laws of the State of California that the forgoing is true and correct.  Executed on February 27, 2008 at San Francisco, California.

22

23

24

_____
Valerie Vitullo

25

26

27

28

00070

# Exhibit F

00071

1  PHILLIPS, GREENBERG & HAUSER, L.L.P.
   JERRY R. HAUSER, SBN. 111568
2  ERIK C. VAN HESPEN, SBN. 214774
   Four Embarcadero Center, 39th Floor
3  San Francisco, California 94111
   Telephone:    (415) 981-7777
4  Facsimile:    (415) 398-5786

5  Attorneys for Plaintiff,
   MOUNT & STOELKER, A PROFESSIONAL CORPORATION

6

7

8              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  IN AND FOR THE COUNTY OF SANTA CLARA

10

11 MOUNT & STOELKER, A PROFESSIONAL        CASE NO.: 108 CV 105975
   CORPORATION,
12
                    Plaintiffs,            DECLARATION OF JERRY R.
13                                         HAUSER IN SUPPORT IN SUPPORT
         -v-                               OF MOTION FOR PRELIMINARY
14                                         INJUNCTION
   C-ONE TECHNOLOGY, A TAIWANESE
15 CORPORATION; PRETEC ELECTRONICS         Date:    March 25, 2008
   CORPORATION, A CALIFORNIA               Time:    9:00 am
16 CORPORATION; INTERNATIONAL              Dept.:   5
   CENTER FOR DISPUTE RESOLUTION, A
17 DIVISION OF THE AMERICAN
   ARBITRATION ASSOCIATION; AND
18 DOES 1 through 50 inclusive,

19                  Defendants.
                                        /
20
   I, Jerry R. Hauser, declare as follows:
21
         1.      I am an attorney at law duly licensed to practice before this court and a partner in the law
22
   firm of Phillips, Greenberg & Hauser, LLP, attorneys for Plaintiff Mount & Stoelker, A Professional
23
   Corporation.
24
         2.      On or about January 11, 2208, defendant C-One Technology, A Taiwanese
25
   Corporation, ("C-One") initiated an arbitration proceeding before the American Arbitration
26
   Association ("AAA") in Santa Clara California (the C-One Arbitration").  Attached hereto as Exhibit A
27
   is a true and correct copy of the AAA's claim confirmation. When this confirmation form was initially
28

00072

                                                                                     1

1  mailed to Plaintiff, it did not contain the attached contracts providing for arbitration in Santa Clara

2  County, California. The contracts containing the arbitration clause were not provided until January 31,

3  2008, and said contracts were the fee agreements between Mount & Stoelker and Pretec Electronics

4  Corporation, a California Corporation ("Pretec"). (These contracts are attached to the First Amended

5  Verified Complaint filed in this action as Exhibits A and B.) Pretec was not named as a party to the C-

6  One Arbitration.

7          3.     The AAA assigned this matter to the International Center for Dispute Resolution

8  ("ICDR") located in New York, New York. The ICDR is applying international rules to the C-One

9  Arbitration.

10         4.     On February 12, 2008, I filed and served an Objection to Jurisdiction of the Arbitrator

11  with the ICDR and served said objections on Defendant's counsel. A copy of the Objection is attached

12  hereto as Exhibit B.

13         5.     On February 13, 2008, I received a facsimile transmission from the ICDR Case Manager

14  acknowledging receipt of the Objections, a copy of which is attached hereto as Exhibit C, which further

15  states:

16              With respect to the jurisdiction of the matter, the Parties are hereby
                reminded that pursuant to International Article 15 Sec. 1, the Tribunal
17              shall shave the power to rule on its own jurisdiction, including any
                objections with respect to the existence, scope or validity of the
18              arbitration agreement. Additionally, pursuant to Article 15 Sec. 2, the
                Tribunal shall have the power to determine the existence or validity of a
19              contract of which an arbitration clause forms a part.

20              Lastly, unless the ICDR has the agreement of the Parties, or receives a
                Court Order issuing a Stay of the Arbitration, we must proceed with the
21              administration of the matter.

22         7.     On February 13, 2008, I received a fax from the ICDR with a list of potential arbitrators

23  with a requirement that the parties select the arbitrator by February 28, 2008. A copy of the fax is

24  attached hereto as Exhibit D. The list does not include any arbitrators from Santa Clara County and

25  includes arbitrators from Southern California. On February 13, 2008, I contacted C-One's attorney

26  Leodis C. Matthews and informed him that I will be filing a complaint to enjoin the C-One Arbitration

27  and that I will be appearing on February 20, 2008, on an *ex parte* application for a TRO and Order to

28  Show Cause.

2

DECLARATION OF JERRY R. HAUSER IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

8.    On February 15, 2008, I filed the complaint in this action to enjoin the C-One Arbitration. Attached to the original complaint as Exhibit C is the original Statement of Claim filed by C-One for the C-One Arbitration. In the original complaint I only named C-One as a defendant.

9.    On February 15, 2008, I sent to Mr. Matthews the Complaint and all of my moving papers in support of my *ex parte* application. On Monday February 18, 2008 (a court holiday) Mr. Matthews sent to me and the ICDR a First Amended Statement of Claim, which added Pretec as a party. The ICDR informed me that even with the amended statement of claim the C-One Arbitration will go forward and the parties need to select the arbitrator by February 28, 2008. In addition, Mr. Matthews informed me that C-One will contest this court's jurisdiction because it is a foreign corporation.

10.    As a result of the filing of the amended claim in the C-One Arbitration, I filed an amended complaint in this action naming Pretec and the ICDR as defendants.

11.    In order to avoid the costs of a TRO hearing Mr. Matthews, on behalf of C-One and Pretec, and I, on behalf of Plaintiff, agreed to stay the C-One Arbitration until April 1, 2008. If this court does not issue a preliminary injunction the C-One Arbitration will go forward after April 1, 2008, and the parties will have five business days to select an arbitrator. In entering this stipulation for a temporary stay, the parties did not waive any claim of or defense, including whether this court has jurisdiction over the defendants.

I declare under the penalty of perjury that the foregoing is true and correct. Executed this 27th day of February, 2008, at San Francisco, California.

JERRY R. HAUSER

00074

DECLARATION OF JERRY R. HAUSER IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

3

**ONLINE FILING DEMAND FOR ARBITRATION/MEDIATION FORM**

This concludes your filing.

Thank you for submitting your claim to the AAA.

Your claim confirmation number is: 002-IV3-Z75

To institute proceedings, please send a copy of this form and the Arbitration Agreement to the opposing party.

| | |
|---|---|
| Your dispute has been filed in accordance with: | Employment: Individual Contracts |
| This claim has been filed for: | Arbitration |
| Filing Fee: | $4,250.00 |

**Additional Claim Information**

| | |
|---|---|
| Claim Amount: | $500,000.00 |
| Claim Description: | Claims against Legal Counsel for Petitioner. Details set forth in the attached Statement of Claims. Initial claim amount is for $500,000, but will be based upon proof at a hearing and will be adjusted based upon proof. |
| Arbitration Clause: | See Attached exhibits (D-1 and D-2) providing for Arbitration in Santa Clara County, California. |
| Hearing Locale Requested: | San Francisco, CA |
| Contract Date: | 10/07/2002 |
| Number of Neutrals: | 1 |

**Claimant 1**
Type of Business: Manufacturer

| | |
|---|---|
| Name: | |
| Company Name: | C-One Technology (Pretec Electronic) |
| Address: | C/0 Matthews & Partners |
| | 4322 Wilshire Blvd., Ste 200 |
| | Los Angeles, Ca |
| Postal Code: | 90010 |
| Country: | Taiwan |
| Telephone: | 323-930-5690 |
| Fax: | null |
| Email: | null |
| Include in caption: | Company |

**Representatives**

| | |
|---|---|
| Name: | Leodis C. Matthews |
| Company Name: | Matthews & Partners |
| Address: | 4322 Wilshire Blvd., Ste 200 |
| | Los Angeles, CA 90010 |
| Telephone: | 323-930-5690 |
| Fax: | 323-930-5693 |
| Email: | Lmatthews@l.mattys.com |

**Respondent 1**

00075

EXHIBIT A

**Daniel S. Mount**
**Type of Business: Attorney**

| | |
|---|---|
| Name: | Daniel S. Mount |
| Company Name: | Mount & Stoelker |
| Address: | Riverpark Tower, Suite 1650 |
| | 333 West San Carlos |
| | San Jose, CA 95110 - 2711 |
| Telephone: | 408-279-7000 |
| Fax: | 408-998-1473 |
| Email: | dmount@Mount.com |
| Include in caption: | Both |

To institute proceedings, please send a copy of this form and the Arbitration Agreement to the opposing party.

Your demand/submission for arbitration/mediation has been received on 01/11/2008 01:01.

1 | PHILLIPS, GREENBERG & HAUSER, L.L.P.
JERRY R. HAUSER, SBN. 111568
2 | ERIK C. VAN HESPEN, SBN. 214774
Four Embarcadero Center, 39th Floor
3 | San Francisco, California 94111
Telephone:    (415) 981-7777
4 | Facsimile:    (415) 398-5786

5 | Attorneys for Respondent,
MOUNT & STOELKER, A PROFESSIONAL CORPORATION

6

7

8 |                    BEFORE THE AMERICAN ARBITRATION ASSOCIATION

9

10

11 | In the Arbitration Matter Between                AAA Claim Confirmation No.: 002-IV3-Z75

12 | C-ONE TECHNOLOGY, A Taiwanese              AAA File No.: 50 194 T 00006 08
Corporation,

13

14 |                    Claimant,                    **OBJECTION TO JURISDICTION OF**
                                                 **THE ARBITRATOR**

15 |        and

16 | MOUNT & STOELKER, A Professional
Corporation

17 |                    Respondent.

18 | _____/

19 |        Respondent Mount & Stoelker, A Professional Corporation ("M&S") hereby objects to the

20 | jurisdiction of the American Arbitration Association to arbitration this claim on the following grounds:

21 |        1.        Claimant did not properly serve the Notice of Arbitration on M&S based on its failure to

22 | attach the contract containing the alleged arbitration clause with its notice of arbitration. Said contracts

23 | were not provided to M&S until January 31, 2008.

24 |        2.        M&S objects to the jurisdiction of the American Arbitration Association on the grounds

25 | that there is no contractual agreement between M&S and the claimant for the arbitration of the claims set

26 | forth in the Statement of Claim, based on:

27 |                    a.        The contracts that allegedly contain the arbitration clause, Exhibits D-1 and D-2

28 | attached to the initiation claim form, are between M&S and Pretec Electronic Corporation ("Pretec"), a

00077

**EXHIBIT B**    1

1  |  California corporation, and not between M&S and the Claimant;

2  |        b.    In the Statement of Claim, C-One alleges, Paragraphs 12, 29, and 30 that is not a

3  |  party to Exhibits D-1 and D-2, that it is not bound by the terms of Exhibits D-1 and D-2 and that no

4  |  written agreement exists between it and M&S with regard to the subject matter of the Statement of

5  |  Claim; and

6  |        c.    The arbitration clause in the contracts, Exhibits D-1 and D-2, between M&S and

7  |  Pretec, explicitly excluded from said contracts the arbitration clause as a result of Pretec's decision not to

8  |  elect to include said arbitration clauses in the agreement.

9  |      3.    All claims set forth in the Statement of Claim are time-barred on the grounds that:

10 |        a.    All claims set forth in the Statement of Decision are controlled by California

11 |  Code of Civil Procedure § 340.6, which states as follows:

12 |  **§ 340.6.  Action against attorney for wrongful act or omission, other than fraud**

13 |

14 |  (a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist:

18 |

19 |  (1) The plaintiff has not sustained actual injury;

20 |  (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred;

21 |

22 |  (3) The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation; and

23 |

24 |  (4) The plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action.

25 |  (b) In an action based upon an instrument in writing, the effective date of which depends upon some act or event of the future, the period of limitations provided for by this section shall commence to run upon the occurrence of such act or event.

27 |

28 |              00078

       2

1          b.     In the Statement of Claim, Claimant admits that M&S ceased representing

2   Claimant in May of 2006 and it was damaged by the alleged negligence of M&S when invoices were

3   paid and when a judgment was entered against it in December of 2006 in an action entitled *Medtec*

4   *Products, Inc. v. C-One, et. al.*, Alameda Superior Court, Case Number RG03118916. Therefore, the

5   time period to file a claim against M&S terminated in May of 2007, and at the latest in December of

6   2007.

7          4.     For the foregoing reasons, M&S requests that this arbitration be terminated for lack of

8   jurisdiction.

9   DATE:  February 12, 2008                    PHILLIPS, GREENBERG & HAUSER, L.L.P.

10

11                                             By:  _____

12                                                  JERRY R. HAUSER

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                                                      00079

28

3

## PROOF OF SERVICE

### *C-One v. Mount & Stoekler*

The undersigned declares: I am a resident of the United States and am employed in the City and County of San Francisco, State of California; I am over the age of eighteen years and not a party to the within action; my business address is Phillips, Greenberg & Hauser, LLP, Four Embarcadero Center, 39th Floor, San Francisco, California 94111. On the date indicated below, I served the following documents:

### OBJECTION TO JURISDICTION OF THE ARBITRATOR

by placing a true copy thereof enclosed in a sealed envelope and served in the manner described below to the interested parties herein and addressed to:

> Leodis Matthews
> Matthews & Partners
> 4322 Wilshire Blvd., Suite 200
> Los Angeles, CA 95110
> Mkattys@aol.com

_X_    **BY FIRST CLASS MAIL:** By placing a true copy of each document listed above in (an) envelope(s) addressed as shown above, sealing the envelope(s) and placing them for collection and mailing, following ordinary business practices, at my employer's office on the date below written. to be deposited in the mail at my business address, I am readily familiar with this firm's business practice for collection and processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business such correspondence is deposited with the United States Postal Service at San Francisco, California, with first-class postage fully prepaid thereon, on the same day as I place it for collection and mailing.

_X_    **BY E-MAIL TRANSMISSION:** By sending the documents listed above via e-mail. Transmission to the e-mail address shown above on the date below written.

I declare under penalty of perjury under the laws of the State of California that the forgoing is true and correct. Executed on February 12, 2008 at San Francisco, California.

_Valerie Vitullo_
Valerie Vitullo

00080

4

FEB. 13. 2008 11:50AM                                              NO. 1534   P. 2/6



**International Centre
for Dispute Resolution**

Thomas Ventrone
Vice President

1633 Broadway, 10th Floor, New York, NY 10019
telephone: 212-484-4181 facsimile: 212-246-7274
Internet: http://www.adr.org/ICDR

February 13, 2008

**VIA FACSIMILE ONLY**

Leodis Matthews, Esq.
Matthews & Partners
4322 Wilshire Blvd., Ste 200
Los Angeles, CA 90010

Jerry R. Hauser, Esq.
Phillips, Greenberg & Hauser, LLP
Four Embarcadero Center, 39th Floor
San Francisco, CA 94111

Re: 50 194 T 00006 08
    C-One Technology (Pretec Electronic)
    vs
    Daniel Mount-Mount & Stoelker

Dear Counsel:

This will serve to acknowledge receipt of an *Objection to Jurisdiction of the Arbitrator* dated February 12, 2008 as issued by Mr. Hauser. A copy has been attached for the review and consideration of opposing counsel.

With respect to the jurisdiction of the matter, the Parties are hereby reminded that pursuant to International Article 15 Sec. 1, the Tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement. Additionally, pursuant to Article 15 Sec. 2, the Tribunal shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part.

Lastly, unless the ICDR has the agreement of the Parties, or receives a Court Order issuing a Stay of the Arbitration, we must proceed with the administration of the matter.

Please contact the undersigned, should you have any questions.

Very truly yours,

Andrea H. Bugbee
Senior International Case Manager
(212) 484-3299
BugbeeA@adr.org

00081

Encl.

EXHIBIT C

FEB. 13. 2008  5:23PM                                    NO. 1564   P. 2/26

 **International Centre for Dispute Resolution**

Thomas Ventrone
Vice President

1633 Broadway, 10th Floor, New York, NY 10019
telephone: 212-484-4181 facsimile: 212-246-7274
internet: http://www.adr.org/ICDR

February 13, 2008

**VIA FACSIMILE ONLY**

Leodis Matthews, Esq.
Matthews & Partners
4322 Wilshire Blvd.,Ste 200
Los Angeles, CA 90010

Jerry R. Hauser, Esq.
Phillips, Greenberg & Hauser, LLP
Four Embarcadero Center, 39th Floor
San Francisco, CA 94111

Re: 50 194 T 00006 08
    C-One Technology (Pretec Electronic)
    vs
    Daniel Mount-Mount & Stoelker

Dear Counsel:

Please find the attached list of ten (10) potential arbitrators for your review.  Please make your selections by February 28, 2008 and return them to the undersigned.  Failure to do so will be deemed as an acceptance of the entire list and the International Centre for Dispute Resolution may complete the appointment process without further consultation.  Please do not exchange these lists. The parties may strike and rank their preferences, which will be kept confidential.

Please feel free to contact the undersigned, should you have any questions.

Sincerely,

Andrea H. Bugbee
Senior International Case Manager
(212) 484-3299
BugbeeA@adr.org

Encl.

00082

**EXHIBIT D**

1

## PROOF OF SERVICE

2

### *C-One v. Mount & Stoelker*

3

The undersigned declares:  I am a resident of the United States and am employed in the City

4
and County of San Francisco, State of California; I am over the age of eighteen years and not a party
to the within action; my business address is Phillips, Greenberg & Hauser, LLP, Four Embarcadero

5
Center, 39th Floor, San Francisco, California 94111.  On the date indicated below, I served the

6
following documents:

7
**NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION;**

8
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION;**

9

10
**DECLARATION OF DANIEL S. MOUNT IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION; and**

11
**DECLARATION OF JERRY R. HAUSER IN SUPPORT IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION**

12

by placing a true copy thereof enclosed in a sealed envelope and served in the manner described

13
below to the interested parties herein and addressed to:

14
Leodis Matthews                              Andrea H. Bugbee

15
Matthews & Partners                          ICDR Senior Case Manager
4322 Wilshire Blvd., Suite 200               International Centre for Dispute Resolution

16
Los Angeles, CA 95110                        1633 Broadway
Leesq@aol.com                                New York NY 10019-6708

17

18
__X__    **FEDERAL EXPRESS – OVERNIGHT DELIVERY:**  I caused such envelope to be

19
deposited with the Federal Express Office prior to the cut-off time for next day delivery with a
shipping label properly filled out with delivery to be made to the addressee designated.

20

I declare under penalty of perjury under the laws of the State of California that the forgoing is

21
true and correct.  Executed on February 27, 2008 at San Francisco, California.

22

23
                                        _____

24
                                            Valerie Vitullo

25

26

27

28

**00083**

# Exhibit G

00084

1 | PHILLIPS, GREENBERG & HAUSER, L.L.P.
JERRY R. HAUSER, SBN. 111568
2 | ERIK C. VAN HESPEN, SBN. 214774
Four Embarcadero Center, 39th Floor
3 | San Francisco, California 94111
Telephone:    (415) 981-7777
4 | Facsimile:    (415) 398-5786

5 | Attorneys for Plaintiff,
MOUNT & STOELKER, A PROFESSIONAL CORPORATION
6 |

7 |

8 |                    IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
9 |
                            IN AND FOR THE COUNTY OF SANTA CLARA
10 |

11 | MOUNT & STOELKER, A PROFESSIONAL          CASE NO.: 108 CV 105975
     CORPORATION,
12 |
                      Plaintiffs,            DECLARATION OF DANIEL S.
13 |                                          MOUNT IN SUPPORT OF MOTION
            -v-                               FOR PRELIMINARY INJUNCTION
14 |
     C-ONE TECHNOLOGY, A TAIWANESE           Date:    March 25, 2008
15 | CORPORATION, et. al. AND DOES 1         Time:    9:00 am
     through 50 inclusive,                    Dept.:    5
16 |
                      Defendants.
17 | _____/

18 | I, Daniel S. Mount, declare as follows:

19 |        1.      I am an attorney at law duly licensed to practice before this court and a shareholder in

20 | Plaintiff Mount & Stoelker, A Professional Corporation ("Mount & Stoelker").

21 |        2.      On or about October 7, 2002, I executed two attorney-client fee agreements with

22 | Pretec Electronics Corporation ("Pretec") concerning two actions filed in the United States District

23 | Court, Northern District of California, for patent infringement claims. The first action was filed by

24 | Lexar Media, Inc. ("Lexar") Case Number 00-4770 (MJJ), hereinafter referred to as the "Lexar

25 | Action". At the time, Pretec and one of its clients, Memtec Products, Inc. ("Memorex") were named

26 | as the defendants. The other federal action was filed by SanDisk Corporation ("SanDisk"), Case

27 | Number 01-4063 (VRW), in which both Pretec and Memorex were named as defendants, hereinafter

28 | referred to as the "SanDisk Action". At the time I was retained defendant C-One Technology ("C-

00085

1    One) was not a party in either the Lexar or SanDisk Actions.

2       3.     The fee agreements I entered into with Pretec are attached to the verified complaint as

3    Exhibits A and B, together referred to as the "Pretec Fee Agreements".

4       4.     It was the practice of the firm at that time to give the client an option of whether or not

5    to include an arbitration provision in the fee agreement. The arbitration provision itself is set forth in

6    Paragraph 10 of the Pretec Fee Agreements and states that the matter would be submitted to binding

7    arbitration before the American Arbitration Association in Santa Clara County if the client makes the

8    election. If the client does not make the election then the arbitration provision is deemed excluded. A

9    client makes the election by placing its initials in the appropriate place below the arbitration clause.

10   In both fee agreements, Pretec did not make such election and therefore the arbitration clause was not

11   included in the fee agreement.

12      5.     After entering into the Pretec Fee Agreements, C-One was named as a defendant in the

13   Lexar Action. C-One was the manufacturer of the products at issue and the parent of Pretec, which

14   was the distributor in the United States. The defenses of C-One and Pretec were exactly the same and

15   therefore Mount & Stoelker appeared as the attorney of record for C-One in the Lexar Action.

16      6.     In addition to representing C-One in the Lexar action, Mount & Stoelker also

17   represented C-One and Pretec in a state court breach of contract action filed by Memorex with regard

18   to C-One and Pretec's obligation to defend and indemnify Memorex in the SanDisk and Lexar

19   Actions, herein after referred to as the "Memorex Action".  All bills for services rendered on all of

20   the above matters were sent to Pretec. Based on Mount & Stoelker's accounting records all payments

21   for services rendered were made by Pretec.

22      7.     On May 30, 2006, the court granted Mount & Stoelker's request to be relieved as

23   counsel in the Lexar Action. On June 26, 2006, the court granted Mount & Stoelker's request to be

24   relieved as counsel in the Memorex Action. Mount & Stoelker has not performed any further legal

25   services for C-One after being relieved of counsel in the Lexar and Memorex Actions. On December

26   15, 2006, judgment was entered against C-One and Pretec in the Memorex Action, a copy of which is

27   attached hereto as Exhibit A.

28      8.     Attached hereto as Exhibit B is a true and correct copy of an Order in *Acticon*

1 | *Technologies LLC v. Pretec Electronics Corporation*, wherein Judge Fogel made certain findings and

2 | enjoined Pretec from transferring corporate assets to C-One.

3 |     I declare under the penalty of perjury that the foregoing is true and correct. Executed this *15*

4 | day of February, 2008, at San Jose, California.

<br>

                       DANIEL S. MOUNT

00087



FILED
ALAMEDA COUNTY

DEC 1 5 2006

CLERK OF THE SUPERIOR COURT
By _____
                              Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| MEMOREX PRODUCTS, INC., fka<br>MEMTEK PRODUCTS, INC.,<br><br>                    Plaintiff,<br><br>v.<br><br>C-ONE TECHNOLOGY CORPORATION,<br>PRETEC ELECTRONICS, INC; and DOES<br>1 through 10, inclusive,<br><br>                    Defendants. | Case No. RG 03 118916<br><br>[PROPOSED] ORDER AND JUDGMENT  |

This matter came on for the second phase of a bifurcated bench trial on December 11, 2006. Plaintiff Memorex Products, Inc., formerly known as Memtek Products ("Memorex") appeared through its counsel, Jon B. Streeter, G. Whitney Leigh and Enrique Peace. Defendants C-One Technology Corporation ("C-One") and Pretec Electronics Inc. ("Pretec") did not appear. The Court previously granted, on June 26, 2006, the request of Pretec's previous counsel, Daniel Mount and Ron Finley, to withdraw as Pretec's counsel in this matter. On that date, the Court directed Pretec to obtain new counsel. Since that date, the Court has not received any notification of new counsel for Pretec in this matter.

During the first phase of the trial Memorex presented evidence of three categories of damages resulting from Pretec', which took place between October 31, 2005 and November 15, 2005, the Court determined that Pretec had breached its indemnity agreement with Memorex (the

1

EXHIBIT A

00088

1  "Indemnity Agreement") by failing to provide adequate counsel to represent Memorex in two

2  patent infringement lawsuits: *Lexar Media, Inc. v. Pretec Electronics, et al.,* (N. D. Cal. Case

3  No. CV-01-1770 MJJ)) ("the *Lexar* case"), and (*SanDisk Corp. v. Memorex Prods. Inc. et al.,*

4  No. CV 01-4063 VRW (N.D. Cal.)) (the "*SanDisk* case"). The Court's findings of fact and

5  conclusions of law following the first phase of the trial are set forth in the Court's Proposed

6  Phase One Trial Statement of Decision ("Statement of Decision"), issued on April 10, 2006, By

7  operation of its terms, the Statement of Decision became final fifteen days after its issuance

8  (April 25,2006).

9      In the second phase of the trial, Memorex presented ~~Memorex presented~~ evidence of

10  three categories of damages resulting from Defendants' breach of the indemnity agreement: (1)

11  attorneys' fees and costs incurred in defending the federal lawsuits; (2) attorneys fees and costs

12  incurred in bringing this suit to enforce the indemnity agreement, and (3) the amounts paid by

13  Memorex to settle the *Lexar* case. The Court heard testimony from Mr. Streeter and Mr. Leigh

14  regarding the attorney's *fees and costs* Memorex incurred in defending the patent infringement lawsuits, in

15  litigating this matter and the amount Memorex paid to settle the *Lexar* case ($185,000). The

16  Court also accepted documentary exhibits into evidence, including billing statements and billing

17  statement summaries reflecting the attorneys' fees Memorex incurred, and the settlement

18  agreement between Memorex and Lexar Media, Inc., in the *Lexar* case.

19      Based on the evidence presented, the Court finds that Memorex may recover damages for

20  each of these categories of damages under the Indemnity Agreement. The Court also finds that

21  the amount of attorneys' fees Memorex incurred in defending patent infringement lawsuits and

22  in prosecuting this case is reasonable. The Court also finds that Memorex was entitled, pursuant

23  to Section 2 of the Indemnity Agreement, to settle the *Lexar* case and to recover the amount of

24  the settlement from Defendants. The Court finds that the settlement agreement between

25  Memorex and Lexar Media, Inc., satisfied the terms provided for settlements in the Indemnity

26  Agreement.

27      Based on the foregoing, the Court ENTERS JUDGMENT AS FOLLOWS:

28      1.    JUDGMENT is entered in favor of Memorex, and against Defendants, for

2

[PROPOSED] ORDER AND JUDGMENT

*Memorex v. C-One, et al.*
Case No. RG 03 118916

00089

1    Memorex's claims of breach of contract and declaratory relief;

2    2.    Memorex is awarded damages in the following amounts:

3        a.    374,956.52, for attorneys' fees incurred in the *Lexar* and *SanDisk* cases; *and costs* 800

4        b.    486,939.50, for attorneys fees incurred in litigating this matter; and *and costs* 802

5        c.    $185, 000, for the amount Memorex paid in settlement with Lexar Media, Inc.

6            of the *Lexar* case.

7    3.    The total amount of the damages Memorex is awarded is 1,046,896.02.

8    4.    Defendants' obligations under the Indemnity Agreement, including their

9        obligation to defend Memorex in the pending *SanDisk* case, continue.

10

11    PURSUANT TO THE ABOVE, THE COURT HEREBY ORDERS THAT JUDGMENT

12    IS ENTERED.

13

14    DATED:    12/15/06

15

16            JUDGE OF THE SUPERIOR COURT

17            The Honorable Patrick F. Zika

18

19

20

21

22

23

24

25

26

27

28                                    00090

[PROPOSED] ORDER AND JUDGMENT                    Memorex v. C-One, et al.
                                        Case No. RG 03 118916

1                                              \*\*11/13/07\*\*

2

3

4

5

6

7                            NOT FOR CITATION

8               IN THE UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11

12 ACTICON TECHNOLOGIES LLC,         | Case Number C 07-4507 JF

13              Plaintiff,         | ORDER[1] GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY

14           v.                 | INJUNCTION

15 PRETEC ELECTRONICS CORPORATION, et al.,  | [docket no. 7]

16             Defendants.

17

18       Plaintiff Acticon Technologies, LLC ("Acticon") moves for a preliminary injunction

19 enjoining Defendants Pretec Electronics Corporation ("Pretec"), et al., (collectively

20 "Defendants") from transferring, selling or otherwise moving or removing any corporate assets of

21 Defendant PTI Global, Inc. ("PTI Global") to any business entity or individual, including

22 Defendants Chiu Feng Chen, Tommy Ho, Kuei Lu, Grace Yu, Gordon Yu and Robert Wu

23 (collectively "individual Defendants"), except in the normal course of business. Defendant PTI

24 Global opposes the motion.[2] For the reasons set forth below, the motion will be granted.

25 ————————————

26     [1] This disposition is not designated for publication and may not be cited.

27     [2] Although an attorney filed initial written opposition on behalf of PTI Global, PTI Global

28 currently is not represented by counsel and thus lacks capacity to defend the instant action. PTI
Global has requested at least two extensions of time but it has not explained why it presently is

                                         00091

EXHIBIT B

# I. BACKGROUND

On August 1, 2007, Acticon filed a complaint for patent infringement in this Court against Pretec and other defendants. *See Acticon Technologies LLC v. Pretec Electronics Corp., et al.*, Case No. C 06-4679 JF (HRL) (the "first complaint"). On September 19, 2006, this Court entered a default judgment in favor of Acticon because the Defendants named in the first complaint failed to respond. Subsequently, the parties agreed to continue a scheduled case management conference, and Acticon agreed not to enforce the default judgment, based on alleged representations made by a Pretec employee that Pretec would provide Acticon with sales information concerning the accused products. On October 27, 2006, a company called Pretec Technology Inc. ("Pretec Technology") filed a Certificate of Amendment of Articles of Incorporation with the California Secretary of State, for the purpose of changing its corporate name to PTI Global, Inc. On November 28, 2006, Pretec filed a Certificate of Dissolution. Pretec failed to appear at the rescheduled case management conference on February 2, 2007.

On August 20, 2007, Acticon filed a second complaint (the "second complaint") alleging that prior to Pretec's corporate dissolution on November 28, 2006, Pretec made, used, imported, distributed, offered for sale or sold certain products in the United States that infringe upon Acticon's patents. The second complaint alleges that Defendants fraudulently transferred or conspired fraudulently to transfer Pretec's assets to PTI Global for the purpose of avoiding liability on the first complaint and to continue conducting business as PTI Global. *See Acticon Technologies LLC v. Pretec Electronics Corp., et al.*, Case No. C 07-4507 JF (HRL).

On October 4, 2007, Acticon filed the instant motion for a preliminary injunction. Acticon seeks to enjoin PTI Global from transferring, selling, hypothecating or otherwise moving or removing assets or accused products of PTI Global to Defendants or any of Defendants' parent companies, subsidiaries, officers, directors, attorneys, agents, or affiliates, or to anyone acting in concert with any Defendant or to any business entity or individual , except in the normal course of business. The Court heard oral argument on November 9, 2007.

---

unrepresented.

2

## II. DISCUSSION

A party seeking a preliminary injunction must show either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in the movant's favor. *Roe v. Anderson*, 134 F.3d 1400, 1401-02 (9th Cir. 1998); *Apple Computer, Inc. v. Formula Int'l, Inc.*, 725 F.2d 521, 523 (9th Cir. 1984). These formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. *Roe*, 134 F.3d at 1402.

Acticon asserts three claims for relief based upon patent infringement, improper corporate dissolution, and fraudulent transfer. Acticon asserts that it is likely to succeed on the merits on all of these claims. Acticon also asserts that unless the status quo is preserved, it will suffer irreparable injury because PTI Global may engage in further fraudulent asset transfers, dissolution activities, or delay tactics, such as filing motions for extensions of time or for further continuances.

PTI Global contends that Acticon's motion for a preliminary injunction should be denied for several reasons. First, PTI Global argues that Acticon failed to serve all of the parties properly. Acticon admits that it has not been able to serve any Defendants other than PTI Global. However, Acticon claims that Defendants purposely have been evading service. Acticon faxed a notice to PTI Global on October 4, 2007, a day before it filed the instant motion, and it attempted to serve all Defendants in the case. PTI Global received the motion and filed an opposition. Acticon's motion seeks to enjoin PTI Global. Under the circumstances, the Court concludes that Acticon has complied substantially with the Court's local rules and will address the motion on the merits.

### A. Likelihood of Success on the Merits

#### 1. Claims for patent infringement

Acticon's complaint and motion allege that the patents-in-suit, entitled "Connector Interface" U.S. Patent No. 4,630,320 ("'320 Patent"), "Integrated Connector and Modem" U.S. Patent No. 4,543,450 ("'450 Patent"), "Programmable Connector" U.S. Patent No. 4,972,470

1   ("'470 Patent") and "Multiple Connector Interface" U.S. Patent No. 4,686,506 ("'506 Patent"),

2   involve various electronic connectors that convert signals between a computer and certain

3   external devises, and that prior to or on about November 28, 2007, Pretec made, used, imported,

4   distributed, offered for sale and/or sold certain products in the United States that infringe upon

5   these patents.  Supp. Brief ISO Motion, p.2.  Acticon alleges that "many of the products available

6   on Pretec's and PTI Global's web sites, as well as PTI Global's online storefront in

7   Amazon.com's marketplace represent Accused Products . . . which are products involving

8   electronic connectors . . . ."  Brief ISO Motion, p. 2-3.

9           PTI Global's liability turns on whether it manufactures, distributes, offers to see or sells

10  infringing products.  In its opposition, PTI Global focuses exclusively on the manufacturing

11  element of the alleged infringement, without addressing the issue of whether it distributes, offers

12  to sell, or sells infringing products.  PTI Global admittedly sells Pretec electronic connector

13  products.  PTI Global does not challenge the validity of the patents.  Acticon has entered into

14  several licenses with other companies involving at least one of the patents in suit, and the '470

15  and '320 patents were successfully re-examined before the United States Patent and Trademark

16  Office.  Accordingly, Acticon has demonstrated a likelihood of success with regards to the patent

17  infringement claims.

18          2.      Improper Dissolution Claim

19          Acticon alleges that Pretec filed its corporate dissolution to avoid the default judgment

20  against it in the first litigation, and that Pretec has continued to do business as PTI Global.  PTI

21  Global claims that Acticon's allegations are based on speculation.  However, PTI Global does

22  not dispute the fact that Pretec was dissolved during litigation, or that PTI Global is doing

23  business in the same location, under the same brand name and from the same web site.

24  Accordingly, Acticon has demonstrated a likelihood of success on this claim.

25          3.      Fraudulent Transfer Claim

26          Acticon alleges that Pretec transferred assets to PTI Global in a effort to avoid liability in

27  the first litigation.  Acticon argues that PTI Global and the individual Defendants cannot escape

28  liability merely because PTI Global and Pretec have different names.  It asserts that it under

                                                        4

1   California law, PTI Global should be held responsible for the patent infringement liability of

2   Pretec. The evidence supporting this claim includes the following: PTI Global was listed on

3   Pretec's website as Pretec's United States headquaters; PTI Global is the registrant of

4   www.pretec.com; PTI Global occupies the same physical space that Pretec previously occupied;

5   and PTI Global and Pretec largely have the same officers and directors. Based on this evidence,

6   Acticon asserts that it likely will prove that Pretec transferred substantially all of its assets to PTI

7   Global, that PTI Global did not assume Pretec debts or liabilities and that PTI Global carries on

8   the same business that Pretec conducted prior to Pretec's dissolution.

9        PTI Global argues that PTI Global was established years before of the dissolution of

10  Pretec and that Pretec did not provide any funding of PTI Global. However, Acticon does not

11  claim that Pretec funded PTI Global. Rather, Acticon asserts that Pretec has continued to

12  function as PTI Global in order to avoid liability. Indeed, Pretec's opposition papers admit that

13  PTI Global continues to sell Pretec's products. Accordingly, Acticon has demonstrated a

14  likelihood of success regarding this claim.

15       **B. Possibility of Irreparable Injury**

16       Acticon asserts that it will suffer irreparable injury if this motion is denied. PTI Global

17  argues that Acticon collects royalties from many corporations and thus that money damages will

18  be adequate. However, based on the circumstances of the Pretec dissolution and PTI Global's

19  conduct in the present litigation there appears to be a significant likelihood that Acticon may not

20  be able to recover any damages from PTI Global. Acticon thus has made a showing of the

21  possibility of irreparable injury.

22       **C.    Bond**

23       Acticon argues that a bond of $5,000 is appropriate in this case. Defendants assert that

24  the bond should be set at $500,000. The purpose of the preliminary injunction in the instant case

25  is to prohibit the transfer of PTI Global's assets to any third parties, including the individual

26  Defendants in this case, during the course of the litigation. An injunction will not prohibit PTI

27  Global from operating as a business. Accordingly, the Court concludes that a nominal bond is

28  appropriate.

Case No. C 07-4507 JF
ORDER GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION
(JFLC3)

### IV. ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that the instant motion is GRANTED; and it is further ORDERED that PTI Global is enjoined from:

   (1) Transferring, selling, hypothecating or otherwise moving or removing any assets (including cash and any other monetary sums) of PTI Global to the Defendants or any Defendant's parent companies, subsidiaries, officers, directors, attorneys, agents, affiliates or anyone acting in concert with any Defendant;

   (2) Transferring, selling, hypothecating or otherwise moving or removing any of the Accused Products to the Defendants or any of Defendant's parent companies, subsidiaries, officers, directors, attorneys, agents affiliates or anyone acting in concert with any Defendant; and

   (3) Transferring, selling, hypothecating or otherwise moving or removing any assets (including case and any other monetary sums) of PTI Global to any business entity or individual, except in the normal course of business.

The issuance of this injunction shall be conditioned upon the posting of a bond in the amount of $5,000.

DATED: November 13, 2007.

JEREMY FOGEL
United States District Judge

6

1    This Order has been served upon the following persons:

2
3    Christine S. Watson
     cwatson@carrferrell.com
4
5    Linda Yi Tai Shao
     shaoyitai@yahoo.com
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

1

## PROOF OF SERVICE

2

### *C-One v. Mount & Stoelker*

3

    The undersigned declares:  I am a resident of the United States and am employed in the City

4

and County of San Francisco, State of California; I am over the age of eighteen years and not a party

to the within action; my business address is Phillips, Greenberg & Hauser, LLP, Four Embarcadero

5

Center, 39th Floor, San Francisco, California 94111.  On the date indicated below, I served the

following documents:

6

7

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION;**

8

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION;**

9

**DECLARATION OF DANIEL S. MOUNT IN SUPPORT OF MOTION FOR**

10

**PRELIMINARY INJUNCTION; and**

11

**DECLARATION OF JERRY R. HAUSER IN SUPPORT IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION**

12

by placing a true copy thereof enclosed in a sealed envelope and served in the manner described

13

below to the interested parties herein and addressed to:

14

Leodis Matthews                         Andrea H. Bugbee

15

Matthews & Partners                 ICDR Senior Case Manager

4322 Wilshire Blvd., Suite 200       International Centre for Dispute Resolution

16

Los Angeles, CA 95110               1633 Broadway

Leesq@aol.com                      New York NY 10019-6708

17

18

 X    **FEDERAL EXPRESS -- OVERNIGHT DELIVERY:**  I caused such envelope to be

19

deposited with the Federal Express Office prior to the cut-off time for next day delivery with a

shipping label properly filled out with delivery to be made to the addressee designated.

20

    I declare under penalty of perjury under the laws of the State of California that the forgoing is

21

true and correct.  Executed on February 27, 2008 at San Francisco, California.

22

23

                           _____

24

                              Valerie Vitullo

25

26

27

28

# Exhibit H

00099

1  PHILLIPS, GREENBERG & HAUSER, L.L.P.
   JERRY R. HAUSER, SBN. 111568
2  ERIK C. VAN HESPEN, SBN. 214774
   Four Embarcadero Center, 39th Floor
3  San Francisco, California 94111
   Telephone:    (415) 981-7777
4  Facsimile:    (415) 398-5786

5  Attorneys for Plaintiff,
   MOUNT & STOELKER, A PROFESSIONAL CORPORATION

6

7

8              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  IN AND FOR THE COUNTY OF SANTA CLARA

10

11  MOUNT & STOELKER, A PROFESSIONAL          CASE NO.: 108 CV 105975
    CORPORATION,
12
                  Plaintiffs,               DECLARATION OF JERRY R.
13                                          HAUSER IN SUPPORT IN SUPPORT
         -v-                                OF REPLY TO DEFENDANTS'
14                                          OPPOSITION TO MOUNT &
    C-ONE TECHNOLOGY, A TAIWANESE           STOELKER'S MOTION FOR
15  CORPORATION; PRETEC ELECTRONICS         PRELIMINARY INJUNCTION
    CORPORATION, A CALIFORNIA
16  CORPORATION; INTERNATIONAL
    CENTER FOR DISPUTE RESOLUTION, A        Date:      March 25, 2008
17  DIVISION OF THE AMERICAN                Time:      9:00 am
    ARBITRATION ASSOCIATION; AND            Dept.:     5
18  DOES 1 through 50 inclusive,

19                Defendants.
                                      /
20

21  I, Jerry R. Hauser, declare as follows:

22       1.      I am an attorney at law duly licensed to practice before this court and a partner in the law

23  firm of Phillips, Greenberg & Hauser, LLP, attorneys for Plaintiff Mount & Stoelker, A Professional

24  Corporation.

25       2.      On February 25, 2008, my firm mailed to Leodis Matthews, attorneys for C-One

26  Technology and Pretec Electronics, the First Amended Complaint, Amended Summons and ADR Notice

27  along with a Notice and Acknowledgement of Receipt on behalf of C-One Technology, a copy of which

28  is attached hereto as Exhibit A.                                    00100              1

Declaration Of Jerry R. Hauser In Support Of Reply To Defendants' Opposition To Mount & Stoelker's Motion For
Preliminary Injuction

3.      On February 25, 2008, my firm mailed to Leodis Matthews, attorneys for C-One Technology and Pretec Electronics, the First Amended Complaint, Amended Summons and ADR Notice along with a Notice and Acknowledgement of Receipt on behalf of Pretec Electronics, a copy of which is attached hereto as Exhibit B.

4.      In a number of phone conversations Mr. Matthews informed me that he is seeking permission from both C-One and Pretec to accept service and he anticipates that he will get such authorization. Even so, Mr. Matthews has not been able to confirm with me that he has received authorization to accept service from his clients.

5.      On March 7, 2008, Victor M. Munoz attempted to serve Pretec Electronics Corporation at 46791 Fremont Blvd., Fremont, California. A true and correct copy of the Declaration of Reasonable Diligence is attached hereto as Exhibit C.

6.      On March 10, 2008, Victor M. Munoz attempted to serve Pretec Electronics Corporation at 40979 Encyclopedia Circle Blvd., Fremont, California. A true and correct copy of the Declaration of Reasonable Diligence is attached hereto as Exhibit D.

7.      On March 10, 2008, Victor M. Munoz attempted to serve C-One Technology at 40979 Encyclopedia Circle Blvd., Fremont, California. A true and correct copy of the Declaration of Reasonable Diligence is attached hereto as Exhibit E.

8.      On March 11, 2008, Victor M. Munoz attempted to serve C-One Technology at 231 Whitney Place, Fremont, California. A true and correct copy of the Declaration of Reasonable Diligence is attached hereto as Exhibit F.

9.      On March 11, 2008, Victor M. Munoz attempted to serve Pretec Electronics Corporation at 231 Whitney Place, Fremont, California. A true and correct copy of the Declaration of Reasonable Diligence is attached hereto as Exhibit G.

10.     On March 12, 2008, my firm sent via United States Postal Service International Registered Mail and Return Receipt the First Amended Complaint, Amended Summons and ADR Notice to Gordon Yu at C-One Technology Corporation, B1, No. 57, Dong Guang Rd., Hsin-Chu City, Taiwan. A true and correct copy of the Receipt for Registered Mail is attached hereto as Exhibit H.

11.     On March 12, 2008, my firm sent via United States Postal Service International

Declaration Of Jerry R. Hauser In Support Of Reply To Defendants' Opposition To Mount & Stoelker's Motion For Preliminary Injunction

2

1    3.    On February 25, 2008, my firm mailed to Leodis Matthews, attorneys for C-One

2  Technology and Pretec Electronics, the First Amended Complaint, Amended Summons and ADR Notice

3  along with a Notice and Acknowledgement of Receipt on behalf of Pretec Electronics, a copy of which

4  is attached hereto as Exhibit B.

5    4.    In a number of phone conversations Mr. Matthews informed me that he is seeking

6  permission from both C-One and Pretec to accept service and he anticipates that he will get such

7  authorization. Even so, Mr. Matthews has not been able to confirm with me that he has received

8  authorization to accept service from his clients.

9    5.    On March 7, 2008, Victor M. Munoz attempted to serve Pretec Electronics Corporation

10  at 46791 Fremont Blvd., Fremont, California. A true and correct copy of the Declaration of Reasonable

11  Diligence is attached hereto as Exhibit C.

12    6.    On March 10, 2008, Victor M. Munoz attempted to serve Pretec Electronics Corporation

13  at 40979 Encyclopedia Circle Blvd., Fremont, California. A true and correct copy of the Declaration of

14  Reasonable Diligence is attached hereto as Exhibit D.

15    7.    On March 10, 2008, Victor M. Munoz attempted to serve C-One Technology at 40979

16  Encyclopedia Circle Blvd., Fremont, California. A true and correct copy of the Declaration of

17  Reasonable Diligence is attached hereto as Exhibit E.

18    8.    On March 11, 2008, Victor M. Munoz attempted to serve C-One Technology at 231

19  Whitney Place, Fremont, California. A true and correct copy of the Declaration of Reasonable Diligence

20  is attached hereto as Exhibit F.

21    9.    On March 110, 2008, Victor M. Munoz attempted to serve Pretec Electronics

22  Corporation at 231 Whitney Place, Fremont, California. A true and correct copy of the Declaration of

23  Reasonable Diligence is attached hereto as Exhibit G.

24    10.    On March 12, 2008, my firm sent via United States Postal Service International

25  Registered Mail and Return Receipt the First Amended Complaint, Amended Summons and ADR

26  Notice to Gordon Yu at C-One Technology Corporation, B1, No. 57, Dong Guang Rd., Hsin-Chu City,

27  Taiwan. A true and correct copy of the Receipt for Registered Mail is attached hereto as Exhibit H.

28    11.    On March 12, 2008, my firm sent via United States Postal Service International

2

Declaration Of Jerry R. Hauser In Support Of Reply To Defendants' Opposition To Mount & Stoelker's Motion For
Preliminary Injuction

1  Registered Mail and Return Receipt the First Amended Complaint, Amended Summons and ADR

2  Notice to Gordon Yu for Pretec Corporation at C-One Technology Corporation, B1, No. 57, Dong Guang

3  Rd., Hsin-Chu City, Taiwan. A true and correct copy of the Receipt for Registered Mail is attached

4  hereto as Exhibit I.

5       I declare under the penalty of perjury that the foregoing is true and correct. Executed this 17th day

6  of March, 2008, at San Francisco, California.

7

8                     JERRY R. HAUSER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                    00103

27

28                    3

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| — Jerry R. Hauser                                          111568<br>Phillips, Greenberg & Hauser, LLP<br>4 Embarcadero Center, 39th Floor<br>San Francisco, CA 94111<br>TELEPHONE NO.: (415) 981-7777    FAX NO. *(Optional):* (415) 398-5786<br>E-MAIL ADDRESS *(Optional):*  jhauser@pghllp.com<br>ATTORNEY FOR *(Name):* Plaintiffs Mount & Stoelker | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Santa Clara |
|---|
| STREET ADDRESS: 191 N. First Street |
| MAILING ADDRESS: |
| CITY AND ZIP CODE: San Jose, CA 95113 |
| BRANCH NAME: Santa Clara |

| PLAINTIFF/PETITIONER: Mount & Stoelker, A Professional<br>                                      Corporation<br>DEFENDANT/RESPONDENT:C-One Technology, et. al | |
|---|---|

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT - CIVIL | CASE NUMBER:<br>108 CV 105975 |
|---|---|

TO *(insert name of party being served):* <u>C-One Technology, A Taiwanese Corporation</u>

---

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing: **February 25, 2008**

<u>Jerry R. Hauser</u>
(TYPE OR PRINT NAME)                                    (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing)*:
1.  ☐ A copy of the summons and of the complaint.
2.  ☒ Other *(specify):*
      Amended Summons; First Amended Complaint for Declaratory Relief,
      Temporary Restraining Order and Preliminary and Permanent
      Injunction

*(To be completed by recipient)*:

Date this form is signed:

                                                              00104

---

(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,        (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                        ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

                                                                                      Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005]<br>Matin Dean's Essential Forms ™ | NOTICE AND ACKNOWLEDGMENT OF RECEIPT - CIVIL | Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |
|---|---|---|

                              EXHIBIT A          Mount & Stoelker

POS-015

| | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):

Jerry R. Hauser                                    111568
Phillips, Greenberg & Hauser, LLP
4 Embarcadero Center, 39th Floor
San Francisco, CA 94111
TELEPHONE NO: **(415) 981-7777**   FAX NO.(Optional): **(415) 398-5786**
E-MAIL ADDRESS (Optional): **jhauser@pghllp.com**
ATTORNEY FOR (Name): **Plaintiffs Mount & Stoelker**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **Santa Clara**
STREET ADDRESS: **191 N. First Street**
MAILING ADDRESS:
CITY AND ZIP CODE: **San Jose, CA 95113**
BRANCH NAME: **Santa Clara**

PLAINTIFF/PETITIONER: **Mount & Stoelker, A Professional Corporation**
DEFENDANT/RESPONDENT: **C-One Technology, et. al**.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT - CIVIL | CASE NUMBER: |
|---|---|
| | 108 CV 105975 |

TO (Insert name of party being served): Pretec Electronics, A California Corporation

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: **February 25, 2008**

Jerry R. Hauser
(TYPE OR PRINT NAME)                            ▶ _____ (SIGNATURE OF SENDER-MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of (to be completed by sender before mailing):
1. ☐ A copy of the summons and of the complaint.
2. ☒ Other (specify):
   Amended Summons; First Amended Complaint for Declaratory Relief, Temporary Restraining Order and Preliminary and Permanent Injunction

(To be completed by recipient):

Date this form is signed:

00105

_____ ▶ _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,      (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                     ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]
Martin Dean's Essential Forms ™

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT - CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

Page 1 of 1

**EXHIBIT B**                     Mount & Stoelker

Attorney: PHILLIPS, GREENBERG &
HAUSER, LLP - ATTORNEYS AT LAW
4 EMBARCADERO CENTER
39TH FLOOR
SAN FRANCISCO, CA 94111
JERRY R HAUSER, ESQ.

For Court Use Only

SJM800881

| Plaintiff(s): | MOUNT & STOELKER | CASE NO. | 108CV105975 |
|---|---|---|---|
| Defendant(s): | C-ONE TECHOLOGY, et al. | DECLARATION RE DILIGENCE TO EFFECT PERSONAL SERVICE | |

I, the undersigned, under penalty of perjury, hereby declare that I am a registered process server and was, on the dates herein mentioned, over the age of eighteen years and not a party to the action. I further declare that I received the within process AMENDED SUMMONS, FIRST AMENDED COMPLAINT, ADR NOTICE , and that after due search and diligent inquiry have been unable to effect service on the within named:
at:        PRETEC ELECTRONICS CORP.
           48791 FREMONT BLVD.
           FREMONT, CA 94538

Friday  03/07/08  08:20 AM, I attempted to serve the defendant at the home/business  address shown above, but could not serve the above named personally because
        BUILDING OFFICE IS EMPTY.

Fees $ _____
Executed on  03/14/08_____, at San Jose_____.
I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

_____          VICTOR M. MUNOZ / 1158_____
            Signature                                              Name & Title

00106

# DECLARATION OF REASONABLE DILIGENCE

EXHIBIT C

SJM800889

| | For Court Use Only |
|---|---|
| Attorney: PHILLIPS, GREENBERG & ·HAUSER, LLP · ATTORNEYS AT LAW 4 EMBARCADERO CENTER 39TH FLOOR SAN FRANCISCO, CA 94111 JERRY R HAUSER, ESQ. | |

| | | |
|---|---|---|
| Plaintiff(s): | MOUNT & STOELKER | CASE NO.   108CV105975 |
| Defendant(s): | C-ONE TECHOLOGY, et al. | DECLARATION RE DILIGENCE TO EFFECT PERSONAL SERVICE |

I, the undersigned, under penalty of perjury, hereby declare that I am a registered process server  and was, on the dates herein mentioned, over the age of eighteen years and not  a party to the action.  I further declare that I received the within process AMENDED SUMMONS, FIRST AMENDED COMPLAINT AND ADR NOTICE , and that after due search and diligent inquiry have been unable to effect  service on the within named:
at:    **PRETEC ELECTRONICS CORPORATION**
       **40979 ENCLYCLOPEDIA CIRCLE**
       **FREMONT, CA 94538**

Monday  03/10/08   08:45 AM, I attempted to serve the defendant at the home/business  address shown above, but could not serve the above named personally because
       AT THIS LOCATION, THERE IS A COMPANY BY THE NAME OF SALUTRON, WHO MOVED
       IN ABOUT 2 YEARS AGO.

Fees $ _____
Executed on _03/14/08_____ , at _San Jose_____ .
I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

_____                    · **VICTOR M. MUNOZ / 1158**
            Signature                                          Name & Title

00107

# DECLARATION OF REASONABLE DILIGENCE

## EXHIBIT D

SJM800690

| Attorney: PHILLIPS, GREENBERG & HAUSER, LLP - ATTORNEYS AT LAW<br>4 EMBARCADERO CENTER<br>39TH FLOOR<br>SAN FRANCISCO, CA 94111<br>JERRY R HAUSER, ESQ. | For Court Use Only |
|---|---|

| Plaintiff(s): MOUNT & STOELKER | CASE NO. 108CV105975 |
|---|---|
| Defendant(s): C-ONE TECHOLOGY, et al. | DECLARATION RE DILIGENCE<br>TO EFFECT PERSONAL SERVICE |

I, the undersigned, under penalty of perjury, hereby declare that I am a registered process server and was, on the dates herein mentioned, over the age of eighteen years and not a party to the action. I further declare that I received the within process AMENDED SUMMONS, FIRST AMENDED COMPLAINT AND ADR NOTICE , and that after due search and diligent inquiry have been unable to effect service on the within named:

at:        C-ONE TECHNOLOGY
        40979 ENCYCLOPEDIA CIRCLE
        FREMONT, CA 94538

Monday 03/10/08  08:45 AM, I attempted to serve the defendant at the home/business  address shown above, but could not serve the above named personally because
        AT THIS LOCATION, THERE IS A COMPANY BY THE NAME OF SALUTRON, WHO MOVED
        IN ABOUT 2 YEARS AGO.

Fees $ _____
Executed on 03/14/08 , at San Jose .
I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

_____        VICTOR M. MUNOZ / 1168
      Signature                               Name & Title

00108

# DECLARATION OF REASONABLE DILIGENCE

epe59 / DECLARE

## EXHIBIT E

SJM800690

| Attorney: | PHILLIPS, GREENBERG & HAUSER, LLP – ATTORNEYS AT LAW 4 EMBARCADERO CENTER 39TH FLOOR SAN FRANCISCO, CA 94111 JERRY R HAUSER, ESQ. | For Court Use Only |

| Plaintiff(s): | MOUNT & STOELKER | CASE NO. | 108CV105975 |
| Defendant(s): | C-ONE TECHOLOGY, et al. | DECLARATION RE DILIGENCE TO EFFECT PERSONAL SERVICE |

I, the undersigned, under penalty of perjury, hereby declare that I am a registered process server and was, on the dates herein mentioned, over the age of eighteen years and not a party to the action. I further declare that I received the within process AMENDED SUMMONS, FIRST AMENDED COMPLAINT AND ADR NOTICE , and that after due search and diligent inquiry have been unable to effect service on the within named:

at:         C-ONE TECHNOLOGY
            231 WHITNEY PLACE
            FREMONT, CA

Tuesday 03/11/08  10:34 AM, I attempted to serve the defendant at the home/business  address shown above, but could not serve the above named personally because
        PER MAN AT THIS LOCATION, HE SAID KUEI LU, IS NOT HERE. HE LIVES OUT
        OF THE COUNTRY.

Fees $ _____
Executed on  03/14/08 _____, at  San Jose _____.
I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

_____                    VICTOR M. MUNOZ / 1158
            Signature                                    Name & Title

00109

# DECLARATION OF REASONABLE DILIGENCE

C0438 / DECLARE

## EXHIBIT F

Attorney: PHILLIPS, GREENBERG &
HAUSER, LLP - ATTORNEYS AT LAW
4 EMBARCADERO CENTER
39TH FLOOR
SAN FRANCISCO, CA 94111
JERRY R HAUSER, ESQ.

For Court Use Only

SJM800689

| Plaintiff(s): | MOUNT & STOELKER | CASE NO. | 108CV105975 |
|---|---|---|---|
| Defendant(s): | C-ONE TECHOLOGY, et al. | | DECLARATION RE DILIGENCE TO EFFECT PERSONAL SERVICE |

I, the undersigned, under penalty of perjury, hereby declare that I am a registered process server and was, on the dates herein mentioned, over the age of eighteen years and not a party to the action. I further declare that I received the within process AMENDED SUMMONS, FIRST AMENDED COMPLAINT, AND ADR NOTICE , and that after due search and diligent inquiry have been unable to effect service on the within named:
at:            PRETEC ELECTRONICS CORPORATION
               231 WHITNEY PLACE
               FREMONT, CA

Tuesday 03/11/08  10:34 AM, I attempted to serve the defendant at the home/business  address shown above, but could not serve the above named personally because
          PER MAN AT THIS LOCATION, HE SAID KUEI LU, IS NOT THERE. HE LIVES OUT
          OF THE COUNTRY.


Fees $ _____
Executed on __03/14/08_____, at __San Jose_____.
I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

_____          VICTOR M. MUNOZ / 1168
          Signature                                Name & Title

00110

# DECLARATION OF REASONABLE DILIGENCE

opusa / DECLARE

## EXHIBIT G





Gordon Yu
C-One Technology Corporation
B1, No. 57, Dong Guang Rd.
Hsin-Chu City, Taiwan

Registered No.    RA465338513US

| Reg. Fee | $10.1 | | |
|---|---|---|---|
| Handling Charge | $0.00 | Return Receipt | $2.15 |
| Postage | $8.65 | Restricted Delivery | $0.00 |

Received by

Date Stamp

%26
22
03/12/08

Domestic Insurance up to $25,000 is included in the fee. International Indemnity is limited. (See Reverse).

Customer Must Declare
Full Value $   $0.00

☐ With Postal Insurance
☐ Without Postal Insurance

## OFFICIAL USE

FROM
Phillips Erenberg + Hauser LLP
4 Embarcadero, 30th Floor
San Francisco CA 94111

TO
Gordon Yu
C-One Technology Corp.
B1, No. 57, Dong Guang Rd.
Hsin-Chu City, Taiwan

PS Form 3806,   Receipt for Registered Mail   Copy 1 - Customer

00111

**EXHIBIT H**

EXHIBIT I

00112

PS Form 3806, May 2004 (7530-02-000-9051)
Receipt for Registered Mail (Copy 1 - Customer)
(See Information on Reverse)
For domestic delivery information, visit our website at www.usps.com

TO
Gordon Yu
C-One Technology Corp
B1, No. 53, Dong Guang
Hsin-Chu City, Taiwan

FROM
Phillips Greenberg + Haiser L
4 Embarcadero, 3gth Fl
San Francisco Ca 94

OFFICIAL USE

Customer Must Declare
Full Value $ _____

With Postal Insurance
Without Postal Insurance

To Be Completed
By Post Office

Received by

Reg. Fee
Handling Charge
Postage
Received
Return Receipt
Restricted Delivery

Registered No. _____

---

Phillips, Greenber...
Four Embarcadero,
San Francisco, |

---

Gordon Yu
C-One Technology Corporation
B1, No. 57, Dong Guang Rd.
Hsin-Chu City, Taiwan

---

PS Form 3806, May 2004 (7530-02-000-9051)
Receipt for Registered Mail (Copy 1 - Customer)
(See Information on Reverse)
For domestic delivery information, visit our website at www.usps.com

TO
Gordon Yu
C-One Technology Corp
B1, No. 53, Dong Guang Rd.
Hsin-Chu City, Taiwan
(Date:)

FROM
Phillips Greenberg + Haiser LLP
4 Embarcadero, 3gth Floor
San Francisco Ca 94111

OFFICIAL USE

Customer Must Declare
Full Value $ 0.00

With Postal Insurance
Without Postal Insurance

To Be Completed
By Post Office

Received by

| | |
|---|---|
| Reg. Fee | $10.15 |
| Handling Charge | $0.00 |
| Postage | $0.82 |
| Return Receipt | $2.15 |
| Restricted Delivery | $0.00 |

03/12/08
0026
11

1

## PROOF OF SERVICE

2

### *C-One v. Mount & Stoelker*

3

The undersigned declares:  I am a resident of the United States and am employed in the City

4
and County of San Francisco, State of California; I am over the age of eighteen years and not a party
to the within action; my business address is Phillips, Greenberg & Hauser, LLP, Four Embarcadero

5
Center, 39th Floor, San Francisco, California 94111.  On the date indicated below, I served the
following documents:

6

7
**REPLY TO DEFENDANTS' OPPOSITION TO MOUNT & STOELKER'S MOTION**
**FOR PRELIMINARY INJUNCTION**

8
**DECLARATION OF JERRY R. HAUSER IN SUPPORT IN SUPPORT OF REPLY TO**

9
**DEFENDANTS' OPPOSITION TO MOUNT & STOELKER'S MOTION FOR**
**PRELIMINARY INJUNCTION**

10
by placing a true copy thereof enclosed in a sealed envelope and served in the manner described

11
below to the interested parties herein and addressed to:

12
Leodis Matthews

13
Matthews & Partners
4322 Wilshire Blvd., Suite 200

14
Los Angeles, CA 95110

15

16
X    **BY FIRST CLASS MAIL:**  By placing a true copy of each document listed above in

17
(an) envelope(s) addressed as shown above, sealing the envelope(s) and placing them for
collection and mailing, following ordinary business practices, at my employer's office on the

18
date below written. to be deposited in the mail at my business address, I am readily familiar
with this firm's business practice for collection and processing of correspondence for mailing

19
with the United States Postal Service.  In the ordinary course of business such correspondence

20
is deposited with the United States Postal Service at San Francisco, California, with first-class
postage fully prepaid thereon, on the same day as I place it for collection and mailing.

21
I declare under penalty of perjury under the laws of the State of California that the forgoing is

22
true and correct.  Executed on March 17, 2008 at San Francisco, California.

23

24
_____

25
Valerie Vitullo

26

27

28

00113

# Exhibit I

00114

From:Matthews & Partners          323 930 5693          03/11/2008 12:25    #720 P.071/077

1    D. P. Sindicich [SBN 78162]
     OF COUNSEL
2    MATTHEWS & PARTNERS
     SUITE 200
3    4322 WILSHIRE BOULEVARD
     LOS ANGELES, CALIFORNIA 90010-3792
4    TELEPHONE: 323.930.5690
     FACSIMILE: 323.930.5693
5
   Attorneys For:  Named Defendant
6      C-ONE TECHNOLOGY CORP.

7

8        IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9        IN AND FOR THE COUNTY OF SANTA CLARA

10        DOWNTOWN (SAN JOSE) DIVISION

11

12 MOUNT & STOELKER, a Professional    CASE NUMBER: 108 CV 105975
   Corporation,
13          Special Appearance By
        Defendant C-One Technologies
14         For The Limited Purpose Of
           Challenging
      Plaintiff     The Court's Jurisdiction To
15       Hear Plaintiff Mount & Stoelker's
      - Vs -        Motion For
16        Preliminary Injunction
          Due To Lack Of
17       In Personam Jurisdiction
   C-ONE TECHNOLOGY, a Taiwanese    Over Named Defendant
18 Corporation, PRETEC ELECTRONICS     C-One Technology
   CORPORATION; a California
19 Corporation; INTERNATIONAL CENTRE        * * * *
   FOR DISPUTE RESOLUTION, a Division
20 of the American Arbitration       Supporting Declaration
   Association (*erroneously sued as*
21 *"International Center for Dispute*
   *Resolution"*); and DOES 1 through 50,    Date:  March 25, 2008
22 inclusive.             Time:  9:00 AM
                    Dept: 5
23         Defendants

24

25

26

27

28 SPECIAL, LIMITED APPEARANCE CHALLENGING COURT'S JURISDICTION OVER DEFENDANT C-ONE
MOUNT & STOELKER -v- C-ONE TECHNOLOGIES
Case No. 108 CV 105975

# BY FAX

00115

1    Comes Now, C-ONE TECHNOLOGY ["C-ONE"], in its own name and solely on its

2    own behalf, and, Specially Appears For the Limited Purpose of Challenging The Court's

3    Jurisdiction To Hear and Rule on MOUNT & STOELKER's ["M&S"] motion for a Preliminary

4    Injunction against C-ONE due to the lack of In Personam Jurisdiction.

### Introductory Facts

5

6    In its moving papers, M&S is seeking a Preliminary Injunction against C-ONE. In

7    these papers M&S freely admits that C-ONE is a Taiwanese Corporation. M&S also avers

8    in its supporting papers that there neither is now, nor has there ever been, a written

9    contractual relationship by and between itself and C-ONE.

### Facts Supporting Lack Of In Personam Jurisdiction Over C-ONE

10

11   As evidenced by the attached declaration, C-ONE it has never maintained a place of

12   business within the State of California, owns no property within this State and never has,

13   and, aside from having been named as a defendant in a federal patent infringement case in

14   the Northern District of California, and a superior court action in Alameda County wherein

15   personal jurisdiction was conferred as the sole result and limited purpose of an

16   indemnification agreement entered into with Memorex, the only other "contact" C-ONE has

17   had with this State was limited solely to the shipment of technological products,

18   manufactured in Taiwan, to Pretec Electronics Corporation (a California Corporation) for

19   their distribution in the United States.

### Argument

20

21   It is well-settled in law that although service of a summons may be made on a foreign

22   corporation, the action cannot be maintained absent minimum contacts with California [*Grey*

23   *Line Tours of Southern Nevada v. Reynolds Electric & Engineering Co., Inc.* (1987) 193

24   Cal.App.3d 190, 193]. Here, no such "minimal contacts" exist.

25   Even if it were argued that C-ONE held an interest in Pretec Electronics [*Calder v.*

26   *Jones* (1984) 465 U.S. 783, 790] since its own "contacts" with California do not in any way

27

28   SPECIAL, LIMITED APPEARANCE CHALLENGING COURT'S JURISDICTION OVER DEFENDANT C-ONE
     MOUNT & STOELKER -v- C-ONE TECHNOLOGIES
     Case No. 108 CV 105975                                                    Page -2-

00116

From:Matthews & Partners          323 930 5693          03/11/2008 12:25          #720 P.073/077

1  constitute the level required to support local jurisdiction and, to hold otherwise, would be

2  contrary to the implicit requirement of "fair play and substantial justice" [*Fisher Governor*

3  *Co. v. Superior Court* (Prestwich) (1959) 53 Cal.2d. 222, 224].

4          C-ONE has not yet been served with a summons and complaint in this action.

5  Accordingly, its limited remedy of filing a motion to quash service of summons as a means

6  for attacking the court's in personam jurisdiction over it [C.C.P. §418.10(a)(1)] has not yet

7  matured.

8          This being the case, C-ONE has not viable alternative other than to specially appear

9  at this hearing for the limited and express purpose of challenging this court's jurisdiction

10  over it. If C-ONE were to do otherwise then, perforce, a Preliminary Injunction would issue

11  against it by way of default and thereafter would remain in place pending service of the

12  underlying compliant and an *in futuro* hearing on its motion to quash for lack of personal

13  jurisdiction. In the alternative, once properly served with the summons and complaint, C-

14  ONE would also have the option of filing a Notice of Removal on the basis of diversity of

15  citizenship in the local federal court pursuant to 28 U.S.C. 1441(b).

16                                  **Conclusion**

17          For the reasons and arguments set forth above this Court should refuse to grant M&S

18  request for the issuance of a Preliminary Injunction against C-ONE on the ground that it

19  lacks personal jurisdiction over C-ONE and is therefore unable to do so.

20  ////

21  Dated:      March 8, 2008

22                                  MATTHEWS & PARTNERS

23

24                          By:

25                                  D. P. Sindicich, Of Counsel
                                    Attorneys for Defendant
26                                  C-One Technology
                                    a Taiwan Corporation

27

28  SPECIAL, LIMITED APPEARANCE CHALLENGING COURT'S JURISDICTION OVER DEFENDANT C-ONE
    MOUNT & STOELKER -v- C-ONE TECHNOLOGIES
    Case No. 108 CV 105975                                                      Page -3-

00117

## SUPPORTING DECLARATION

I, the undersigned, declare as follows:

1.     I am an officer and director of C-One Technology the named Defendant in the above-entitled cause and have personal knowledge of each fact stated herein.

2.     C-One Technology is a Taiwanese Corporation which has its principal place of business in Hsin Chu, Taiwan.  Its address is B1, No. 57, Dong Guang Road.  C-One Technology is not registered as a Foreign Corporation with the California Secretary of State and it does not have a designated agent for service of process in the State of California.

3.     As of the date of this declaration, C-One Technology has not been served with copies of any summons and complaint in which it has been named as a Defendant.  However, C-One Technology is informed and believes, based on the representations of its attorneys of record, that notice of hearing on an application for the issuance of a Preliminary Injunction has been set for Tuesday, March 25, 2008, in Santa Clara County Superior Court which is situated in the San Francisco Bay area of Northern California.

4.     C-One maintains no place of business within the State of California now or at any other time.  C-One's only contacts or relationship with, or activities within, the State of California prior to receipt of this notice of motion were:

a.     Defending against a federal patent infringement claim in the Northern District of the State of California;

b.     Defending against a breach of an indemnification agreement entered into with Memorex which, by express terms, required that C-One consent to jurisdiction of Alameda Superior Court for the limited purpose of its enforcement; and

c.     The shipment of technological products, manufactured in Taiwan, to Pretec Electronics Corporation (a California Corporation) for distribution in the United States. Pretec Electronic's corporate status has since been dissolved.

SPECIAL, LIMITED APPEARANCE CHALLENGING COURT'S JURISDICTION OVER DEFENDANT C-ONE
MOUNT & STOELKER -v- C-ONE TECHNOLOGIES
Case No. 108 CV 105975                                      Page -4-

00118

5.    C-One Technologies has never had a written contractual relationship with Plaintiff.

6.    C-One Technologies has not consented to the exercise of jurisdiction over it by the courts of the State of California other than for the limited and express purpose set forth in the indemnification agreement with Memorex referenced above and specifically does not consent to this courts exercise jurisdiction over it in this instant matter.

7.    C-One makes this declaration only as a special appearance in support of its objection to the court hearing Plaintiff's ex parte application for a temporary restraining order.

8.    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct except those matters stated on information and belief and to those specific matters I believe them to be true.

9.    I further declare that I am authorized to make this declaration under penalty of perjury on behalf of C-One Technology and that I am making this declaration for that purpose.

Executed on March _11_, 2008 in Hsin Chu, Taiwan.

SPECIAL, LIMITED APPEARANCE CHALLENGING COURT'S JURISDICTION OVER DEFENDANT C-ONE
MOUNT & STOELKER -V- C-ONE TECHNOLOGIES
Case No. 108 CV 105975                                                    Page -5-

00119



1

2

Certificate of Service
[California Code of Civil Procedure §§ 1013a & 2015.5]

3      I am employed in the County of Los Angeles, State of California. I am over the age of 18
and not a party within the action. My address is 4322 Wilshire Boulevard, Suite 200, Los Angeles, CA

4  90010.  On March 11, 2008 served the foregoing document(s), described as follows, on all interested
parties in this action by placing a true copy thereof

5   Title of Document:    **SPECIAL APPEARANCE BY DEFENDANT C-ONE**

6                          **TECHNOLOGIES FOR THE LIMITED PURPOSE OF**
                           **CHALLENGING THE COURT'S JURISDICTION TO HEAR**

7                          **PLAINTIFF MOUNT & STOELKER'S MOTION FOR**

8                          **PRELIMINARY INJUNCTION DUE TO LACK OF IN PERSONAM**
                           **JURISDICTION OVER NAMED DEFENDANT C-ONE**

9                          **TECHNOLOGY**

10   Case Number:   BC359710

11   SEE ATTACHED SERVICE LIST

12   ☐   PERSONAL DELIVERY: On the above date I caused the above described document(s) to be
          personally hand delivered to the addressees(s)

13

       ☐   FACSIMILE: On the above date, I caused the above-described document(s) to be sent to the
14         addressee(s) via the facsimile number on the attached service list.

15   ☐   FEDERAL EXPRESS: On the above date I caused the above-described document(s) to be
          sent to the addressee(s) via Federal Express with the shipping charges fully prepaid, for ☐

16        Overnight ☐ Priority Overnight Delivery

17   ☒   REGULAR MAIL:

18      ☐    I deposited such envelope(s) in the United States Mail at Los Angeles, California with
             the postage thereon fully prepaid.

19

       ☒    I caused such envelope(s) to be deposited in the mail at Los Angeles, California with
20          postage thereon fully prepaid. I am "readily familiar" with the firm's practice of
            collection and processing correspondence for mailing.  It is deposited with the U.S.

21          Postal Service on the same day in the ordinary course of business.  I am aware that
            on motion of the party served, service is presumed invalid of postal cancellation date

22          or postage meter date is more than one day after the date of deposit for mailing in this
            affidavit.

23      I declare under penalty of perjury under the laws of the State of California that the foregoing is

24   true and correct. Executed on March 11, 2008 at Los Angeles, California.

25

26                                          Melanie Ocubillo

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Service List

Counsel for Plaintiffs

Jerry Hauser
Phillips, Greenberg & Hauser, L.L.P.
Four Embarcadero Center, 39th Floor
San Francisco, CA 94111
Facsimile: (415) 398-5786

00121

# Exhibit J

00122

1    Leodis C. Matthews [SBN 109064]
     MATTHEWS & PARTNERS
2        SUITE 200
         4322 WILSHIRE BOULEVARD
3    LOS ANGELES, CALIFORNIA 90010-3792
         TELEPHONE 323.930.5690
4        FACSIMILE 323.930.5693

5    Attorneys For:  Defendant
            PRETEC ELECTRICS CORP.

6

7

8            IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              IN AND FOR THE COUNTY OF SANTA CLARA

10                 DOWNTOWN (SAN JOSE) DIVISION

11

12   MOUNT & STOELKER, a Professional          CASE NUMBER: 108 CV 105975
     Corporation,
13                                             Pretec Electronics Corp.'s
                                               Opposition To
14                        Plaintiff            Mount & Stoelker's
                                               Motion For
15                                             Preliminary Injunction
          - Vs -
16                                             *********
                                               Supporting Declaration
17                                             *******
18   C-ONE TECHNOLOGY, a Taiwanese             Request For Judicial Notice
     Corporation, PRETEC ELECTRONICS           [Filed Concurrently Herewith]
19   CORPORATION; a California
     Corporation; INTERNATIONAL CENTRE         ******* *******
20   FOR DISPUTE RESOLUTION, a Division
     of the American Arbitration
21   Association (erroneously sued as
     "International Center for Dispute
22   Resolution"); and DOES 1 through 50,      Date: March 25, 2000
     inclusive.                                Time:        9:00 AM
23                                             Dept: 5

24                        Defendants

25
26
27
28   PRETEC ELECTRONIC'S OPPOSITION TO M&S'S MOTION FOR PRELIMINARY INJUNCTION
     MOUNT & STOELKER -v- C-ONE TECHNOLOGIES
     Case No 108 CV 105975

**BY FAX**

From:Matthews & Partners          323 930 6693          03/11/2008 12:04    #720 P.003/077

1    Comes Now, PRETEC ELECTRONICS CORP.["PRETEC"], in its own name and solely

2    on its own behalf, and submits the following Opposition To The Motion For Preliminary

3    Injunction.

4                              INTRODUCTORY FACTS

5          On October 7, 2002 MOUNT & STOELKER, a Professional Law Corporation ["M&S"],

6    prepared two (2) retention letters setting forth the terms and conditions under which it would

7    agree to undertake the defense of PRETEC in two separate patent infringement cases in

8    federal district court  [Lexar Media (N. D. of California Case No 00-4770 MJJ)] and

9    SanDisk Media [(N. D. of California Case No 01-4063 VRW)]. Both of these offers

10   contained the following express terms relating to the "Arbitration of Disputes":

11          "If a dispute arises between Mount and Stoelker and you regarding any aspect of
         this agreement or its implementation, including but not limited to the following: (a)
12       Mount and Stoelker's claim for attorney fees and costs under this agreement; or (b)
         any claim you may make for unsatisfactory performance, including a claim for legal
13       malpractice; you agree to submit the matter to binding arbitration before the
         American Arbitration Association [Ref Exhibits D-1 & D-2 (Para. 10:4-5)]"

14

15   Daniel S. Mount, by affixing his initials to this document, agreed to Arbitration and by this

16   act also agreed on behalf of M&S to arbitrate the dispute.  On October 10, 2002, after

17   changing the hourly rate for senior attorneys from the requested "$450 per hour" to "$400",

18   Gordon Yu dated and signed this document on behalf of PRETEC. Directly below the

19   sentence which reads: "The foregoing accurately reflects our agreement [Pg. 5]". Mr. Yu did

20   not place his initials either on the line provided there for under the line provided for his

21   signature [Ref. Page 5] or on the line provided for his initials above the line containing Mr.

22   Mount's initials [Ref. Pg. 4].

23          In is undisputed that M&S provided legal services to PRETEC in both the Lexar

24   Media and ScanDisk Media federal patent infringement cases. It is equally true that M&S

25   also provided legal services to Memorex pursuant to the express terms of an indemnification

26   agreement, by and between, *inter alia*, PRETEC and Memorex, in the ScanDisk Media

27

28

1  litigation (Membrex declined M&S's services in the Lexar Media case electing instead to

2  retain the firm of Keker & VanNest, LLP).

3       And, while it is also undisputed that M&S represented PRETEC in the action filed in

4  Alameda Superior Court by Memorex (for breach of the indemnification agreement) without

5  entering into a separate fee arrangement for such services, what M&S did not mention in its

6  moving papers is the fact that the Phase 1 judgment in this case was entered against, *inter*

7  *alia*, PRETEC based on the actions and inactions of M&S during the course of its

8  representation of Memorex pursuant to the aforementioned Indemnification agreement [Ref.

9  Exhibit D-3].

10       THE FACTUAL BASIS OF M&S MOTION AS IT RELATES TO PRETEC

11       It appears that M&S's contention with respect to PRETEC is that PRETEC does "not

12  have the right to arbitrate the existing dispute with Mount & Stoelker because there is no

13  contractual agreement between the parties for arbitration". It predicates this argument on the

14  basis that although PRETEC executed the agreement with the understanding that "The

15  foregoing accurately reflects our agreement" it did not also initial the agreement on the

16  appropriate line.

17       THE FACTUAL BASIS OF PRETEC'S OPPOSITION THEREO

18       In its moving papers, M&S makes reference only to the underlying arbitration demand

19  filed with the AAA on January 11, 2008 (and for which a filing fee of $4,250.00 was

20  tendered in good faith) [M&S Exhibit A to JRH Dec.; LCM Dec.]. What M&S conveniently

21  fails to mention its moving papers is that, prior to this January 11, 2008 filing, a prior demand

22  had been previously filed with the AAA on June 28, 2007 [Case No. 50-194-T-00227] styled

23  "*C-One Technology Corp. vs. Mount & Stoelker*" [Ref. Exhibit D-4] to which M&S did not

24  lodge any objection thereto on any ground whatsoever[1].

25  _____

26      [1] The filing fee for this first claim was $8,000 - $4,000 of which was refunded due to the stipulated
    withdrawal [Ref. Exhibit D-4]. Accordingly, a total of $8,250 has been paid to the AAA by Claimant based on

27  M&S's agreement to arbitrate any disputes arising out of its retainer agreements with PRETEC [Ref. Exhibits

28  PRETEC ELECTRONIC'S OPPOSITION TO M&S'S MOTION FOR PRELIMINARY INJUNCTION
    MOUNT & STOELKER -V- C-ONE TECHNOLOGIES                                   Page -3-
    Case No 108 CV 105975

00125

1      In point of fact, Mr. Mount personally participated in an administrative conference

2  call directly relating to this first AAA claim on behalf of M&S on July 6, 2007 during which

3  the parties, in private caucus, agreed to withdraw the matter [Ref. Exhibit D- 5] without

4  prejudice for the purpose of pursing potential settlement of all issues. Moreover, in

5  connection with this withdrawal of the AAA claim, Mr. Mount executed a stipulation on

6  behalf of M&S, which was also "binding upon their agents and assigns", whereby it waived

7  "any defenses or bar to this action based upon the period within which this matter is

8  dismissed without prejudice [Ref. Exhibit D-6].

9      The bottom line of PRETEC's factual opposition to this motion is that M&S drafted

10  the retainer agreements and agreed to arbitrate any and all disputes arising thereunder before

11  the AAA. PRETEC accepted the terms of this agreement upon its execution of it on October

12  10, 2002 and further evidenced its assent to the arbitration clause by dutifully filing its claims

13  against M&S under said agreement with the AAA.

14                          ARGUMENT

15  A.    The Retainer Agreements

16      "Arbitration is a matter of contract law" [*A.T.& T Tech. v. Comm. Workers of*

17  *America* (1986) 475 US 643, 648] and it is well-settled in contract law that particular clauses

18  of a contract are subordinate to its general intent [Civil Code § 1650], that the contract must

19  be interpreted as will make it lawful, operative, definite, reasonable, and capable of being

20  carried into effect, if it can be done so without violating the intention of the parties [Civil

21  Code § 1643], and if there are any uncertainties that cannot otherwise be resolved the

22  language of the contract should be interpreted most strongly against the party who caused the

23  uncertainty to exist [Civil Code § 1654].

24      Here, M&S drafted a retainer agreement which set forth the terms and conditions

25  under which it was willing to accept and represent PRETEC as a client in two patent

26

27  D-1 & D-2].

28  PRETEC ELECTRONIC's OPPOSITION TO M&S's MOTION FOR PRELIMINARY INJUNCTION
MOUNT & STOELKER -V- C-ONE TECHNOLOGIES
Case No 108 CV 105975                                Page -4-

1   infringement cases pending in the Northern District of California [Federal Court]. Pursuant

2   to the express terms of these two retainer agreements, it was M&S intent that any and all

3   claims that arose as a result of its performance under this agreement, including those of

4   "malpractice", "unsatisfactory performance", and fee disputes be presented for binding

5   arbitration before the American Arbitration Association. M&S also expressly consented to

6   the arbitration of these claims prior to submitting the agreements to PRETEC for its

7   acceptance.

8          M&S contends that PRETEC did not agree to arbitrate its claims because it did not

9   initial the proper line even though it executed the agreement, signifying its acceptance of its

10  terms, and and subsequently submitted its claims to arbitration before the AAA as provided

11  for by the express terms of the agreement.

12         M&S cites several pages of authorities for this court's consideration in support of its

13  argument that it, rather than the AAA, should resolve this issue of whether or not a contract

14  exists for arbitration between itself and PRETEC. As to PRETEC, none of the cited

15  authorities in M&S's moving papers are dispositive of this ultimate issue.

16  **B.    This Ultimate Issue of The Validity And/Or Existence Of The Arbitration**

17         **Agreement By and Between M&S and PRETEC Is Already Properly**

18         **Before The AAA[2]**

19         As noted above on more than one occasion M&S's retainer agreement expressly

20  provides for arbitration of all disputes arising thereunder with the AAA. AAA Rule R-1(a)

21  provides that the "parties shall have deemed to have made these rules a part of the arbitration

22  agreement whenever they have provided for arbitration by the . . . AAA . . . . without

23

24

25

26  _____
    [2] Ref. Exhibit B (Objections to Jurisdiction of the Arbitration) & Exhibit C (acknowledgment of receipt
27  of objections by AAA) to Declaration of Jerry R. Hauser

28

From:Matthews & Partners          323 930 5593          03/11/2008 12:08          #720 P.007/077

1   specifying particular rules".

2          AAA-Rule R-7(a) further provides that the "Arbitrator shall have the power to rule

3   on his or her own jurisdiction including objections with respect to the existence, scope, and

4          validity of the arbitration agreement" and Rule R-7(b) further provides that the

5   arbitrator "shall (also) have the power to determine the existence or validity of the contract

6   of which the arbitration clause forms a part".

7          With peculiar reference to these AAA rules it is noted with acute particularity that

8   M&S's retainer agreement, although the arbitration clause identifies Santa Clara County as

9   the site of any AAA arbitration, DOES NOT contain provision relating to the choice-of-law

10  which is to be applied. This being the case, the AAA Rules, in particular Rules R-1(a), R-

11  7(a) and R-7(b) apply here.

12         In the recent (February 20, 2008) decision of the United States Supreme Court in the

13  case *Preston v. Ferrer* [128 S. Ct. 978; 2008 U.S. LEXIS 2011, 1*, 30*[4]] held (following

14  its earlier decision in *Mastrobuono v. Shearson Lehman, Hutton, Inc.* (1995) 514 U.S. 52,

15  63-64) that "Following the guide *Mastrobuono* provides, the "best way to harmonize" the

16  parties' adoption of the AAA rules and their selection of California law is to read the latter

17  to encompass prescriptions governing the substantive rights and obligations of the parties,

18  but not the State's "special rules limiting the authority of arbitrators". Here, since M&S's

19  retainer agreement with PRETEC contained no choice-of-law provision the Court's holding

20  in *Preston* is all the more compelling.

21         Succinctly stated, the ultimate issue as to whether or not the arbitration clause is either

22  extant and/or valid and enforceable between the parties is an issue which is already properly

23  before the AAA arbitral forum.

24  _____

25  [3] All references to AAA Rules were retrieved online at http://www.adr.org/sp.asp?id=22440 (as visited
    March 6, 2008)

26

27  [4] The pagination of this case is subject to change pending release of the final published version

28  **PRETEC ELECTRONIC'S OPPOSITION TO M&S'S MOTION FOR PRELIMINARY INJUNCTION**
    **MOUNT & STOELKER -v- C-ONE TECHNOLOGIES**
    **Case No 108 CV 105975**                                                        Page -6-

                                                                                   00128

**Conclusion**

As pointed out in M&S's moving papers, it is entitled to the requested injunctive relief if and only if it is shown that M&S a "likelihood of success and is entitled to the relief demanded' [Code of Civil Procedure §526(a)]. As for this answering Defendant, particularly given the above-referenced holding of the Supreme Court in *Preston*, the likelihood of M&S prevailing against PRETEC on the issues presented is remote and therefore M&S's request that a Preliminary Injunction should issue should be denied.

////

////

Respectfully Submitted,

Date:  March _11_, 2008

Matthews & Partners

By: _____

Leodis C. Matthews
Attorney For Defendant
PRETEC

PRETEC ELECTRONIC'S OPPOSITION TO M&S's MOTION FOR PRELIMINARY INJUNCTION
MOUNT & STOELKER -v- C-ONE TECHNOLOGIES
Case No 108 CV 105975

Page -7-

00129

## Supporting Declaration

I, Leodic C. Matthews, declare as follows:

1.    I am an attorney at law duly licensed to practice before all courts within the State of California and my firm, Matthews and Partners, is the attorneys of record for named defendant Pretec Electronics Corporation.

2.    On January 11, 2008 I filed a claim with the AAA "C-One Technology (Pretec Electronics) 002-IV3-275" on behalf of our client. A filing fee of $4,250.00 was tendered in good faith [M&S Exhibit A to JRH Dec]. This was not the first AAA claim that was filed in this matter.

3.    Prior thereto, I had filed an earlier claim with the AAA on June 28, 2007 [Case No. 50-194-T-00227] styled "C-One Technology Corp. vs. Mount & Stoelker" [Ref. Exhibit D-4]. The filing fee for this claim was $8,000.00. However, $4,000.00 of this sum was refunded as a result of its dismissal on the grounds set forth below.

4.    With respect to the first claim of June 28, 2007, Daniel S. Mount, Esq. personally appeared and participated in an administrative conference call directly relating to this first AAA claim on behalf of M&S on July 6, 2007. During this conference Mr. Mount and I met in private caucus and mutually agreed to withdraw the claim [Ref. Exhibit D- 5] without prejudice for the purpose of pursing potential settlement of all issues.

5.    Moreover, in connection with this withdrawal of the AAA claim, Mr. Mount executed a stipulation on behalf of M&S, which was also "binding upon their agents and assigns", whereby it waived "any defenses or bar to this action based upon the period within which this matter is dismissed without prejudice [Ref. Exhibit D-6].

6.    I was not put on official notice that M&S was objecting to the arbitration of this claim until I received its written "Objection To Jurisdiction Of The Arbitrator" dated February 12, 2008; a date approximately six months after the date that the first claim had been filed.

PRETEC ELECTRONIC'S OPPOSITION TO M&S's MOTION FOR PRELIMINARY INJUNCTION
MOUNT & STOELKER -v- C-ONE TECHNOLOGIES
Case No 108 CV 109975                                                      Page -8-

00130

7.    In both of the retainer agreements [Ref. Exhibit D-1 & D-2] dated October 7, 2002, attorney Mount expressly agreed to the submission of all claims arising out of these agreements to the AAA for binding arbitration.

8.    In direct reliance on the agreement to arbitrate all claims arising out of its retainer agreement with M&S, Defendant has clearly been prejudiced by the fact that it has already paid a total of $8,250.00 to the AAA as well as incurred in addition thereto attorneys fees and costs expended in connection with the prosecution of this arbitral matter.

////

I have read the foregoing declaration and know of its contents. I declare under penalty of perjury that the foregoing is true and correct.

Executed this __11__ day of March 2008 at Los Angeles, California.

_____
Leodis C. Matthews

PRETEC ELECTRONIC'S OPPOSITION TO M&S's MOTION FOR PRELIMINARY INJUNCTION
MOUNT & STOELKER -v- C-ONE TECHNOLOGIES
Case No 108 CV 105975                                              Page -9-

00131

From:Matthews & Partners          323 930 5593          03/11/2008 12:07     #720 P.011/077

# Exhibit D-1

00132

EXHIBIT D-1

# MOUNT & STOELKER
### ATTORNEYS

RITTENHOUSE TOWER, SUITE 1640
333 WEST SAN CARLOS
SAN JOSE, CALIFORNIA 95110-2711
(408) 298-7000
FAX (408) 298-1473

October 7, 2002

Pretec Electronics Corp.
Attn: Charles Lin
40979 Encyclopedia Cr.
Fremont, CA 94538

Re:   Lexar Media v. Pretec Electronics, et al. – Our File No. Prete001

Dear Mr. Lin:

This letter sets forth the basis upon which this office will represent Pretec Electronics Corp. with regard to the above matter in terms of both the scope of our legal representation of Pretec Electronics, as well as Pretec Electronics' obligations to us as a client. This letter further sets out the agreement by which attorneys' fees and costs will be paid to this firm. For purposes of this agreement all parties are referred to collectively as "you."

I.   **Legal Services to be Provided.**

We will represent you regarding the above matters. We will provide those legal services reasonably necessary to represent you in this matter. We will take reasonable steps to keep you informed of the progress of this case and to respond to your inquiries.

We will represent you through a trial or arbitration of these matters, if any, and through any post-trial or arbitration motions or execution proceedings. After final judgment is entered, we will not represent you in any appellate court proceedings, unless a separate fee agreement is entered into between you and this firm. Unless we make a different agreement in writing, this agreement will govern all future services we may perform in these matters, or in any other matters in which we might represent you.

00133

EXHIBIT D-1

Preue Electronics Corp.
Attn: Charles Lin.
October 7, 2002
Page 2

**2.    Responsibilities of Attorney and Client**

We will perform the legal services called for under this agreement, keep you and Preue informed of progress and developments in the case, and respond promptly to your inquiries and communications. You agree to respond promptly to our inquiries, be truthful with the firm at all times, cooperate fully with us, keep us informed of any developments in this matter, abide by this agreement, and keep us advised of your current address(es) and telephone number(s).

**3.    Attorneys Fees and Costs.**

**3.1    Rates and Charges**                           $44 ... ↑↓↑↓

You hereby agree to pay the hourly rate at our prevailing rates for time spent on this matter by our legal personnel. Our current hourly rates range from $170.00 per hour for senior attorneys down to $190.00 per hour for youngest attorneys. The rate schedule may increase from time to time.

We will charge you for time spent on telephone calls relating to this matter, including calls to you, opposing counsel, or court personnel. The legal personnel assigned to this matter will confer among themselves about the matter as required. When they do confer, each person will charge for time expended. Likewise, if more than one of our legal personnel attends a meeting, court hearing or other proceeding, each will charge for time spent. You will be charged for waiting time in court and elsewhere, and for travel time, both local and out-of-town.

You agree to pay all "Costs" in connection with our representation of you under this agreement. We may request you to pay Costs directly or in advance to this office. In the event that we advance Costs on your account, we will then bill such Costs to you on a monthly basis.

Costs include, but are not limited to, court filing fees, deposition costs, expert fees and expenses, investigation costs, long-distance telephone charges, messenger service fees, in-house photocopying charges, photocopying expenses, mileage and process server fees. Items that are not to be considered Costs, and that must be paid by you without being either advanced or contributed to by Mount & Stoelker, include, but are not limited to, other parties' costs, if any, that you are ultimately ordered or required to pay.

00134

From:Matthews & Partners                 323 930 6693          03/11/2008 12:08      #720 P.014/077

EXHIBIT D-1

Pretec Electronics Corp.
Attn: Charles Lin.
October 7, 2002
Page 3

### 3.b.   Statement and Payments.

We will send you monthly statements indicating attorneys' fees and costs incurred and their basis, any amounts applied, and any current balance owed. You agree to pay the balance due, in full, within 30 days after the statement is mailed. All parties are jointly and severally liable for payment of attorneys' fees and costs. At the end of our representation of you, any unused portion of the retainer will be returned to the party(ies) who deposited the retainer.

### 3.c.   Trial Deposit.

You will be required, 45 days prior to any scheduled trial, to post a deposit on account of fees. The deposit will be held in a trust account and withdrawn by Mount & Stoelker upon presentation of invoices for services. Any unused portion of the trial deposit will be available for return to you or credit for other services. The amount of the required trial deposit will be fixed as an estimate of the expected fees and costs to be earned through the conclusion of the trial. Absent unusual circumstances, the trial deposit will be $12,000.00 for each day the trial is estimated to last.

### 3.d.   Replenishing Retainer.

You agree to pay $50,000.00 as a deposit against legal fees and costs for the Lexar Media v. Pretec matter. This sum is fully earned in consideration for our promise to represent you. However, we will apply that deposit to our bill for legal services and costs and the application will be reflected in the bill for services that you receive. You agree to keep the balance of the retainer at $50,000.00.

### 4.   Settlement.

Mount & Stoelker will not settle the claims against you without your approval. You have the right to accept or reject any proposed settlement. You agree to act reasonably in deciding whether to accept or reject any settlement proposal. If you refuse to accept any reasonable settlement proposal which this firm has recommended that you accept, this firm may then withdraw from further representation of you in this matter upon such ground. We will notify you promptly of the terms of any settlement offer received by Mount & Stoelker.

### 5.   Attorney's Lien.

You hereby grant us a lien on any and all claims or causes of action that are the subject of our representation of you. Our lien will be for any amounts owing to us. The lien

00135

From:Matthews & Partners          323 930 6893          03/11/2008 12:08          #720 P.015/077

EXHIBIT D-1

Preter Electronics Corp.
Attn: Charles Lin.
October 7, 2002
Page 4

will attach to any recovery you may obtain, whether by settlement, arbitration award, court
judgment or otherwise.

6.    **Termination of Relationship.**

You may discharge Mount & Stoelker at any time. If, at the time of discharge,
Mount & Stoelker is your attorney of record in any proceeding, you will execute and return
a substitution-of-attorney form immediately on its receipt from Mount & Stoelker.
Notwithstanding any such discharge, the signatory to this agreement agree to pay Mount &
Stoelker its fees and Costs through the date of discharge.

Mount & Stoelker may withdraw at any time as permitted under the Rules of
Professional Conduct of the State Bar of California.

7.    **Release of Client's Papers and Property.**

After our services have concluded, we will, upon your request, deliver your files to
you, along with any of your funds or property then in our possession. If no written
instructions are received from you regarding disposition of the file materials, they will be
destroyed 24 months after our services conclude.

8.    **Disclaimer of Warranty.**

Nothing in this agreement and nothing in our statements to you will be construed as
a promise or a guarantee of the outcome of this matter. We make no such promises or
guarantees. Our comments about the outcome of this matter are expressions of opinion
only.

9.    **Entire Agreement.**

This writing contains our entire agreement regarding this firm's representation of
you and regarding payment of fees. No other agreement, statement, or promise, whether
written or oral, that was made on or before the effective date of this agreement will be
binding on the parties.

10.   **Arbitration of Dispute.**

If a dispute arises between Mount & Stoelker and you regarding any aspect of this
agreement or its implementation, including but not limited to the following: (a) Mount &
Stoelker's claim for attorney's fees or costs under this agreement or (b) any claim you may
make for unsatisfactory performance, including a claim of legal malpractice, you agree to

00136

From:Matthews & Partners          323 930 5693          03/11/2008 12:09     #720 P.016/077

EXHIBIT D-1

Pretec Electronics Corp.
Attn: Charles Lin.
October 7, 2003
Page 3

submit the matter to binding arbitration before the American Arbitration Association in
Santa Clara County.

BE ADVISED THAT, BY AGREEING TO THIS PROVISION, BOTH OF US
ARE WAIVING ANY RIGHT ONE MAY HAVE TO A TRIAL BY JURY. IF YOU
CONSENT TO SUBMIT YOUR CLAIMS TO BINDING ARBITRATION, PLEASE
INDICATE BY PLACING YOUR INITIALS IN THE SPACE PROVIDED:

PRETEC ELECTRONICS CORP.

Its _____

Mount & Stoelker _____

This agreement will take effect immediately upon receipt of the total retainer of
$50,000.00.  Please do not hesitate to contact me if you have any questions regarding this
letter.

Sincerely,

Daniel S. Mount

The foregoing accurately reflects our agreement.

Dated: Oct. 10, 2002

PRETEC ELECTRONICS CORP.

By _____  Its _____

00137

From:Matthews & Partners          323 930 6893          03/11/2008 12:08     8720 P.017/077

# Exhibit D-2

00138

EXHIBIT D-2

# MOUNT & STOELKER
### ATTORNEYS

**DANIEL A. MOUNT**
**JAMES L. STOELKER**
**RICHARD J. LA PLANTE**
**SCOTT A. LOGE'**
**KENNETH M. TERMAN**
**ALFREDO A. BISMONTE**

**WILLIAM D. EADERS**
**OF COUNSEL**

*'CERTIFIED SPECIALIST IN*
*ESTATE PLANNING, TRUST & PROBATE LAW;*
*THE STATE BAR OF CALIFORNIA*
*BOARD OF LEGAL SPECIALIZATION*

RIVERPARK TOWER, SUITE 1050
333 WEST SAN CARLOS
SAN JOSE, CALIFORNIA 95110-2721
(408) 279-1600
FAX (408) 292-1172

**LESLIE J. NORIEGA**
**BON S. FORLEY**
**LARA J. BROSSORD**
**KAREN R. TAGDI**
**MARK A. SCHMUCK**
**ASHLEY B. JIANG¡**
**NANA T. CALLAGHAN**
**PEGGY K. CHEN¡**

*¡LICENSED ONLY IN THE*
*PEOPLE'S REPUBLIC OF CHINA*

October 7, 2002

Pretec Electronics Corp.
Attn: Charles Lin
40979 Encyclopedia Cr.
Fremont, CA 94538

Re:   Sandisk Media v. Pretec Electronics, et al. – Our File No. Pretc002

Dear Mr. Lin:

This letter sets forth the basis upon which this office will represent Pretec Electronics Corp. with regard to the above matter in terms of both the scope of our legal representation of Pretec Electronics, as well as Pretec Electronics' obligations to us as a client. This letter further sets out the agreement by which attorneys' fees and costs will be paid to this firm. For purposes of this agreement all parties are referred to collectively as "you."

1.    <u>Legal Services to be Provided.</u>

We will represent you regarding the above matters. We will provide those legal services reasonably necessary to represent you in this matter. We will take reasonable steps to keep you informed of the progress of this case and to respond to your inquiries.

We will represent you through a trial or arbitration of these matters, if any, and through any post-trial or arbitration motions or execution proceedings. After final judgment is entered, we will not represent you in any appellate court proceedings, unless a separate fee agreement is entered into between you and this firm. Unless we make a different agreement in writing, this agreement will govern all future services we may perform in these matters, or in any other matters in which we might represent you.

00139

From:Matthews & Partners          323 930 5683          03/11/2008 12:09          #720 P.019/077

EXHIBIT D-2

Pretec Electronics Corp.
Attn: Charles Lin.
October 7, 2002
Page 2

**2.    Responsibilities of Attorney and Client.**

We will perform the legal services called for under this agreement, keep you and Pretec informed of progress and developments in the case, and respond promptly to your inquiries and communications. You agree to respond promptly to our inquiries, be truthful with the firm at all times, cooperate fully with us, keep us informed of any developments in this matter, abide by this agreement, and keep us advised of your current address(es) and telephone number(s).

**3.    Attorneys Fees and Costs.**

**3.a.    Rates and Charges**

$400.00 *[handwritten initials]*

You hereby agree to pay the hourly rate at our prevailing rates for time spent on this matter by our legal personnel. Our current hourly rates range from $360.00 per hour for senior attorneys down to $190.00 per hour for youngest attorneys. The rate schedule may increase from time to time.

We will charge you for time spent on telephone calls relating to this matter, including calls to you, opposing counsel, or court personnel. The legal personnel assigned to this matter will confer among themselves about the matter as required. When they do confer, each person will charge for time expended. Likewise, if more than one of our legal personnel attends a meeting, court hearing or other proceeding, each will charge for time spent. You will be charged for waiting time in court and elsewhere, and for travel time, both local and out-of-town.

You agree to pay all "Costs" in connection with our representation of you under this agreement. We may request you to pay Costs directly or in advance to this office. In the event that we advance Costs on your account, we will then bill such Costs to you on a monthly basis.

Costs include, but are not limited to, court filing fees, deposition costs, expert fees and expenses, investigation costs, long-distance telephone charges, messenger service fees, in-house photocopying charges, photocopying expenses, mileage and process server fees. Items that are not to be considered Costs, and that must be paid by you without being either advanced or contributed to by Mount & Stoelker, include, but are not limited to, other parties' costs, if any, that you are ultimately ordered or required to pay.

00140

From:Matthews & Partners          323 930 5893          03/11/2008 12:09     1720 P.020/077

EXHIBIT D-2

Protec Electronics Corp.
Attn: Charles Lin.
October 7, 2002
Page 3

### 3.b.   Statements and Payments.

We will send you monthly statements indicating attorneys' fees and costs incurred, and their basis any amounts applied, and any current balance owed. You agree to pay the balance due, in full, within 20 days after the statement is mailed. All parties are jointly and severally liable for payment of attorneys' fees and costs. At the end of our representation of you, any unused portion of the retainer will be returned to the party(ies) who deposited the retainer.

### 3.c.   Trial Deposit.

You will be required, 45 days prior to any scheduled trial, to post a deposit on account of fees. The deposit will be held in a trust account and withdrawn by Mount & Stoelker upon presentation of invoices for services. Any unused portion of the trial deposit will be available for return to you or credit for other services. The amount of the required trial deposit will be fixed as an estimate of the expected fees and Costs to be earned through the conclusion of the trial. Absent unusual circumstances, the trial deposit will be $12,000.00 for each day the trial is estimated to last.

### 3.d.   Replenishing Retainer.

You agree to pay $50,000.00 as a deposit against legal fees and costs for the Sandisk Corporation v. Protec matter. This sum is fully earned in consideration for our promise to represent you. However, we will apply that deposit to our bill for legal services and costs and the application will be reflected in the bill for services that you receive. You agree to keep the balance of the retainer at $50,000.00.

### 4.   Settlement.

Mount & Stoelker will not settle the claims against you without your approval. You have the right to accept or reject any proposed settlement. You agree to act reasonably in deciding whether to accept or reject any settlement proposal. If you refuse to accept any reasonable settlement proposal which this firm has recommended that you accept, this firm may then withdraw from further representation of you in this matter upon such ground. We will notify you promptly of the terms of any settlement offer received by Mount & Stoelker.

### 5.   Attorney's Lien.

You hereby grant us a lien on any and all claims or causes of action that are the subject of our representation of you. Our lien will be for any amounts owing to us. The lien

00141

EXHIBIT D-2

Preico Electronics Corp.
Attn: Charles Lin.
October 7, 2002
Page 4

will attach to any recovery you may obtain, whether by settlement, arbitration award, court judgment or otherwise.

6.    **Termination of Relationship.**

You may discharge Mount & Stoelker at any time. If, at the time of discharge, Mount & Stoelker is your attorney of record in any proceeding, you will execute and return a substitution-of-attorney form immediately on its receipt from Mount & Stoelker. Notwithstanding any such discharge, the signators to this agreement agree to pay Mount & Stoelker its fees and Costs through the date of discharge.

Mount & Stoelker may withdraw at any time as permitted under the Rules of Professional Conduct of the State Bar of California.

7.    **Release of Client's Papers and Property.**

After our services have concluded, we will, upon your request, deliver your files to you, along with any of your funds or property then in our possession. If no written instructions are received from you regarding disposition of the file materials, they will be destroyed 24 months after our services conclude.

8.    **Disclaimer of Warranty.**

Nothing in this agreement and nothing in our statements to you will be construed as a promise or a guarantee of the outcome of this matter. We make no such promises or guarantees. Our comments about the outcome of this matter are expressions of opinion only.

9.    **Entire Agreement.**

This writing contains our entire agreement regarding this firm's representation of you and regarding payment of fees. No other agreement, statement, or promise, whether written or oral, that was made on or before the effective date of this agreement will be binding on the parties.

10.   **Arbitration of Dispute.**

If a dispute arises between Mount & Stoelker and you regarding any aspect of this agreement or its implementation, including but not limited to the following: (a) Mount & Stoelker's claim for attorney's fees or costs under this agreement; or (b) any claim you may make for unsatisfactory performance, including a claim of legal malpractice; you agree to

00142

From:Matthews & Partners    323 930 5599    03/11/2008 12:10    #720 P.022/077

EXHIBIT D-2

Pretec Electronics Corp.
Attn: Charles Lin.
October 7, 2002
Page 5

submit the matter to binding arbitration before the American Arbitration Association in Santa Clara County.

BE ADVISED THAT, BY AGREEING TO THIS PROVISION, BOTH OF US ARE WAIVING ANY RIGHT ONE MAY HAVE TO A TRIAL BY JURY. IF YOU CONSENT TO SUBMIT YOUR CLAIMS TO BINDING ARBITRATION, PLEASE INDICATE BY PLACING YOUR INITIALS IN THE SPACE PROVIDED:

PRETEC ELECTRONICS CORP.

Its _____

Mount & Stoelker

This agreement will take effect immediately upon receipt of the total retainer of $50,000.00. Please do not hesitate to contact me if you have any questions regarding this letter.

Sincerely,

Daniel S. Mount

The foregoing accurately reflects our agreement.

Dated: Oct 10, 2002

PRETEC ELECTRONICS CORP.

By _____ Its _____

zd\Pretec2002_002.002\Fee Agreement Letter

00143

From:Matthews & Partners          323 930 6693          03/11/2008 12:10     8720 P.023/077

# Exhibit D-3

00144

From:Matthews & Partners          323 930 6893          03/11/2008 12:10    8720 P.024/077

Additional Addressees:

G. Whitney Leigh
Gonzalez & Leigh LLP
332 Pine St., Suite 200
San Francisco, Ca. 94104

Ron Finley
Mount & Stoeker
333 West San Carlos Street
Suite 1650
San Jose, Ca. 95110

00145

From: Matthews & Partners          323 930 5693          03/11/2008 12:10          #720 P.025/077



SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

FILED
ALAMEDA COUNTY
APR 10 2006
CLERK OF THE SUPERIOR COURT
By _____ Dept.

1

2

3  MEMOREX PRODUCTS, INC., fka
4  MEMTEK PRODUCTS, INC.,

                    Plaintiff,
5

6        v.

7  C-ONE TECHNOLOGY CORPORATION,
   PRETEC ELECTRONICS, INC; and DOES
8  1 through 10, inclusive,

                    Defendants.
9

Case No. RG03-118916

PROPOSED

PHASE ONE TRIAL

STATEMENT OF DECISION

10

11       This matter came on for the first phase of a bifurcated bench trial on October 31, 2005.

12  Plaintiff Memorex Products, Inc., formerly known as Memtek Products ("Memorex") appeared

13  through its counsel, Jon B. Streeter and G. Whitney Leigh. Defendants C-One Technology

14  Corporation ("C-One") and Pretec Electronics, Inc. ("Pretec") appeared through their counsel,

15  Daniel Mount and Ron Finley. The Court heard testimony from witnesses and accepted

16  documentary exhibits into evidence over the course of the first three weeks of November,

17  concluding on the afternoon of November 17, 2005. The parties then submitted Post-Trial

18  Memoranda, and, on December 12, 2005, the Court heard Phase One closing arguments and

19  announced its tentative decision. The Court assigned Plaintiff's counsel the task of preparing a

20  proposed memorandum of decision based on the Court's tentative decision. Plaintiff's counsel

21  submitted a proposed statement of decision on January 9, 2006. Having carefully reviewed the

22  trial record, observed the credibility and demeanor of the witnesses, and considered the

23  arguments presented by the parties, the Court now issues the following Findings of Fact and

24  Conclusions of Law, resolving all matters in dispute in the Phase One trial.

25

26                          I.    Findings of Fact

27                 The Parties and the Applicable Contract Language

28                                          1

Proposed Phase One Trial Statement of Decision          Memorex v. C-One, et al.
                                                                Case No. RG03-118916

                                                                            00146

1   2, 2002. *See* Trial Exhibit 46. The scheduling order established a series of discovery, pleading,

2   and appearance deadlines for the parties beginning on May 24, 2002 and culminating in a patent

3   claim construction hearing scheduled for October 4, 2002. *Id.* Mr. Jeing, representing Memorex

4   and Defendants, failed to meet any of the discovery and pleading deadlines. *Id.* He also failed to

5   appear at a patent tutorial hearing scheduled for September 20, 2002. *Id.* After Mr. Jeing failed

6   to appear at the tutorial hearing, Judge Jenkins issued an order to show cause why sanctions

7   should not be imposed against Memorex and Defendants. *Id.* Judge Jenkins observed that mail

8   sent to Mr. Jeing's address of record had been returned undelivered and that Mr. Jeing apparently

9   had changed addresses without notifying the court as required by the local rules. *Id.* Judge

10  Jenkins scheduled the hearing on the order to show cause for October 4, 2002. *Id.*

11          7.      On April 12, 2002, District Judge Vaughn Walker issued a case management

12  order in the *SanDisk* case that, like the *Lexar* case scheduling order, established a series of

13  discovery and pleading deadlines for the parties. *See* Trial Exhibit 102, p.2. As in the *Lexar*

14  case, Mr. Jeing failed to meet any of these deadlines. *Id.*, pp. 2-4. Mr. Jeing also defaulted on

15  the statutory disclosure obligations in that case and failed to provide required written responses

16  to SanDisk's requests interrogatories and document requests. *Id.* Mr. Jeing produced documents

17  to SanDisk on behalf of Pretec, but did not produce any documents on behalf of Memorex. *See*

18  Trial Exhibits 41, at 5:1-3 and 102, at 3:8-16. On August 26, 2002, SanDisk filed a motion

19  seeking preclusion of evidence, an order striking Memorex and Pretec's affirmative defenses,

20  and recovery of reasonable attorney's fees and costs. Trial Exhibit 41. In its sanctions motion,

21  SanDisk singled out Memorex in particular for having "not produced a single document to date."

22  *Id.*, at 2:6-9. On September 30, 2002, SanDisk filed an amended notice of motion for sanctions

23  against Memorex, scheduling the hearing for the motion on October 17, 2002. *See* Trial Exhibit

24  50.

25          8.      Memorex was not aware of Mr. Jeing's failure to perform or appear during the

26  times those failures occurred. Mr. Golecinski repeatedly complained to Gordon Yu, defendants'

27  president, about Mr. Jeing's failure adequately to communicate or to provide Memorex with

28

4

00147

1    updates regarding the patent proceedings.  11/8/05 AM TX at 24:24-25:16; 26:10-27:17; 28:22-

2    29:27.  In response, Yu assured Mr. Golacinski not to worry and that Mr. Jeing had all matters

3    under control. *Id.* at 29:28-30:14.  By early August 2002, however, Mr. Yu determined he

4    needed to find an alternative to Mr. Jeing, but did not notify Memorex of his decision to do so.

5    11/8/05 AM TX at 36:17-37:14, 11/15/05 AM TX at 41:2-14.

6                    The *Lexar* and *SanDisk* Sanctions Proceedings

7        9.       During the fourth quarter of 2002, the *Lexar* and *SanDisk* courts held proceedings

8    addressing whether sanctions — at least monetary sanctions, and potentially issue sanctions or

9    even terminating sanctions — should be imposed against Memorex and Defendants for failing to

10   comply with statutory and court-ordered discovery, pleading and other pretrial requirements.

11       10.      Memorex first learned of sanctions proceedings in the *Lexar* case in late

12   September 2002, when it was notified by its former counsel, Coudert Brothers, of an Order to

13   Show Cause Re Sanctions issued by Judge Martin Jenkins on September 23, 2002.  *See* Trial

14   Exhibit 46, 11/9/05 AM TX at 59:9-60:14.  After learning of the *Lexar* sanctions proceedings,

15   Memorex retained the law firm of Keker & Van Nest, LLP ("Keker & Van Nest"), to replace Mr.

16   Jeing as its counsel in the *Lexar* case.  *See* Trial Exhibit 51, 11/9/05 AM TX at 60:15-26.  By

17   letter dated October 2, 2002, Memorex formally notified Defendants of its decision to replace

18   Mr. Jeing with Keker & Van Nest as its counsel in the *Lexar* Action.  *See* Trial Exhibit 51.

19   Defendants also retained a new law firm, Mount & Stoelker, LLP ("Mount & Stoelker"), to

20   assume their defense in the *Lexar* case in Mr. Jeing's stead.  *See* Trial Exhibit 52.

21       11.      Memorex first learned of the October 17, 2002, sanctions proceeding in the

22   *SanDisk* case on October 15, 2002, two days before the hearing was scheduled to occur.  *See*

23   Trial Exhibit 61, 11/15/05 PM TX at 65:10-66:4.  Defendants learned of SanDisk's sanctions

24   motion on October 2, 2002.  *See* Trial Exhibits 82, ¶13, p.3 and 83, ¶8, p.2.  Defendants and

25   their counsel failed to inform Memorex of the sanctions hearing in the *SanDisk* case for almost

26   two weeks.  Defendants' declarations in the *SanDisk* matter executed by Ron Finley, a Mount &

27   Stoelker attorney, and by Charles Lin, a Pretec employee, show that the Defendants and Mount

28

                                         5

1  & Stoelker knew about the specific allegations of Mr. Jeing's failures in the *SanDisk* case as of

2  October 2, 2002. *See* Exhibits 82 and 83. On October 15, 2002, Mr. Finley informed Memorex

3  that SanDisk had opposed Defendants' request to continue the sanctions hearing because no one

4  representing Memorex had not joined in Defendants' request, urged Memorex to immediately

5  join in Defendants' request, and said Mount & Stoelker could specially appear at the sanctions

6  hearing for Memorex. *See* Trial Exhibits 59 and 61. Faced with exigent circumstances,

7  Memorex agreed to allow Mount & Stoelker to appear for Memorex at the October 17, 2002

8  hearing. *See* Trial Exhibits 62.

9       12.    Over the next three weeks, Defendants, through Mr. Finley, made multiple

10  requests that Memorex agree to allow Mount & Stoelker to represent Memorex in both the

11  *SanDisk* and *Lexar* cases. *See* Trial Exhibits 62 and 87. Memorex decided to allow Mount &

12  Stoelker to represent Memorex in the *SanDisk* case on a trial basis and defer its decision whether

13  to accept Mount & Stoelker in the *Lexar* case until after the trial period. 11/9/05 AM TX at

14  80:24-81:24; 86:22-87:17. Mount & Stoelker represented Memorex in the *SanDisk* case through

15  the hearing on SanDisk's sanctions motion on November 14, 2002. *See* Trial Exhibit 89. During

16  this period of time, Keker & Van Nest continued to represent Memorex in the *Lexar* case.

17       13.    Between October 15 and November 14, 2002, Mount & Stoelker communicated

18  with Memorex on two or three occasions. 11/9/05 AM TX at 77:3-11. In these communications,

19  Mount & Stoelker failed to inform Memorex of several procedural and substantive matters

20  relating to the *SanDisk* case sanctions proceedings. 11/9/05 AM TX at 77:13-20.

21       14.    It is undisputed that Mount & Stoelker did not inform Memorex that SanDisk had

22  singled out Memorex for its failure to produce any documents in discovery in its motion for

23  sanctions and its opposition to Pretec's request to continue the sanctions hearing. *See* Trial

24  Exhibits 41, at 2:8-9, 5:1-3 and 68, at 2:21-22. 11/9/05 AM TX at 76:22-77:2; 11/17/05 AM TX

25  at 51:10-52:11.

26       15.    On October 28, 2003, Mr. Finley sent an e-mail to Defendants reporting the status

27  of the *Lexar* and *SanDisk* proceedings. *See* Trial Exhibit 79. In this report, Mr. Finley informed

28

6

Proposed Phase One Trial Statement of Decision          Memorex v. C-One, et al.    Case No. RG03-118916

00149

monetary sanctions against Mr. Jeing, but declining to sanction Memorex or C-One. Trial

2    Exhibit 107.

3                                   II.  Conclusions of Law

4                    Contractual Duties Owed by Defendants to Memorex

5         1.    The Court finds that under the Indemnity Agreement, Defendants assumed three

6    related but separable duties relevant to the instant dispute:  (1) a duty to indemnify, (2) a duty to

7    defend and (3) a duty to communicate. Only the duty to defend and the duty to communicate are

8    at issue in this Phase One trial.

9         2.    The scope of Defendants' duty to indemnify Memorex is set forth in Section 1 of

10   the Indemnification Agreement.  See Trial Exhibit 20.  Section 1 requires Defendants, without

11   limitation, to pay on behalf of Memorex all "losses, costs, damages (compensatory and punitive),

12   expenses, judgments, settlements, awards of costs or attorneys' fees, royalties or any other

13   amounts" that [Memorex] paid or is required to pay arising out of any claims brought against

14   Memorex based on products Memorex purchased from Defendants.  Id., Section 1(i), p.2. The

15   Court finds that under a narrow, but reasonable, reading of Section 1 of the Indemnification

16   Agreement, Defendants' duty to indemnify Memorex for any losses "arising out of" claims based

17   on Memorex's sale of Defendants' products would not necessarily include a duty to pay

18   monetary sanctions imposed individually on Memorex for litigation misconduct in the

19   underlying patent actions.  Thus, if ordered to pay monetary sanctions for litigation misconduct

20   caused by Defendants' assigned counsel, Memorex could reasonably be concerned whether

21   Memorex would be reimbursed by the Defendants for sanctions individually imposed on

22   Memorex for what the Court determined was assigned counsel's failure to perform, respond, or

23   comply with an order or rule.

24        3.    The Indemnification Agreement also obligated Defendants to fully defend

25   Memorex in the Lexar case and in any other lawsuits brought against Memorex by third parties

26   based on Memorex's sale of Defendants' products.  See Trial Exhibit 20, Section 1, pp.2-3.

27

28                                             8                      Memorex v. C-One, et al.
                                                                      Case No. RG03-118916

1    Thus, the Indemnification Agreement obligated Defendants to defend Memorex in the *SanDisk*

2    case. *See* Trial Exhibit 31.

3          4.    The Indemnification Agreement authorized Defendants to assign counsel of their

4    choice to undertake the professional responsibility of defending Memorex, but also provided that

5    such counsel had to be acceptable to Memtek. *See* Trial Exhibit 20, Section 1, p.2. The Court

6    finds that this acceptability provision is one that must be measured by a standard of objective

7    reasonableness. *See Storek & Storek Inc. v. Citicorp Real Estate Inc.*, 100 Cal. App. 4th 44, 55-

8    65, 122 Cal. Rptr. 2d 267, 275-285 (2002). The Indemnification Agreement further provided

9    that in the event that Defendants either (1) breached their obligation to defend or (2) failed to

10   provide counsel acceptable to Memorex, then Memorex was entitled to hire separate counsel to

11   defend it. *See* Trial Exhibit 20, Section 2, p.2.

12         5.    The other duty that Defendants assumed under the Indemnification Agreement

13   was the duty to communicate. Although this obligation might be characterized as a subpart of

14   the duty to defend, for purposes of clarity of analysis the Court treats it distinctly. Under Section

15   2, page 3, of the Indemnification Agreement, Defendants expressly agreed to instruct counsel to

16   communicate with individuals designated by Memorex and to keep them regularly informed of

17   the progress of the action. Memorex designated two individuals for this purpose: Michael

18   Golacinski, Memorex's president and CEO, and Dorothy Law, an attorney who performed

19   services for Memorex akin to that of an inside or general counsel. 11/17/05 AM TX at 46:18-

20   48:25.

21                          Breach of Duty To Defend

22         6.    The Court finds Defendants breached their duty to defend Memorex by the

23   actions and inactions of their first assigned counsel, Mr. Jeing. As set forth in the sanction order

24   of Judge Jenkins, Mr. Jeing failed to follow local court rules regarding disclosures, exchanges,

25   statements, briefs, and evidence. *See* Trial Exhibit 46. Similar allegations were made in the

26   *SanDisk* case. *See* Trial Exhibit 102. I find that Mr. Jeing abandoned over a long period of time

27   the defense of Memorex in both cases. During the trial, Defendants did not meaningfully contest

28

9

1    the charge that Mr. Jeing failed to carry out his duty to defend Plaintiff. Because Mr. Jeing

2    failed to represent Memorex adequately in both the *Lexar* and *SanDisk* cases, his behavior

3    caused Defendants to breach the Indemnification Agreement.

4        7.    The court finds the services of the second assigned counsel, Mount & Stoelker,

5    did not breach the basic duty to defend, but were properly rejected by Memorex, using an

6    objectively reasonable standard of acceptability, under the terms of the contract. Keker & Van

7    Nest directly succeeded Mr. Jeing as defense counsel for Memorex in the *Lexar* case. Since

8    Mount & Stoelker never represented Memorex in that case, they could not breach any basic duty

9    to defend in that case. In the *SanDisk* case, Memorex contended Mount & Stoelker failed to fully

10    defend Memorex's interests in opposing the motion for sanctions. Memorex presented evidence

11    that showed Mount & Stoelker (1) failed to submit declarations on Memorex behalf similar to

12    those that the firm submitted on behalf of Defendants, (2) made representations to the Court that

13    did not state Memorex's position with regard to the facts presented, (3) failed to state Memorex's

14    individual efforts and diligence in attempting to ensure Mr. Jeing's compliance with the court

15    orders, litigation rules, and discovery schedule, and (4) omitted any reference to Memorex's

16    reliance on Mr. Yu that everything was okay and proceeding properly. Memorex also contends

17    that Mount & Stoelker failed to argue against an interpretation of the Supreme Court's decision

18    in *Link v. Wabash* that would not impose strictly liable on a party for the conduct of their

19    counsel. The Court concludes these actions do not constitute a breach of the basic duty to

20    defend. The Court does find, however, that Memorex was justified, using an objectively

21    reasonable standard of acceptability, in finding the second assigned counsel and their actions

22    unacceptable under the terms of the Indemnification Agreement.

                        Breach of Duty to Communicate

24        8.    The Indemnification Agreement requires that Defendants instruct any counsel

25    appointed to defend Memorex to communicate regularly about the status of the case with

26    individuals designated by Memorex. Memorex designated Michael Golaciuski and inside

27    counsel Dorothy Law. Neither Mr. Jeing nor Mount & Stoelker communicated with these

28                                10

*Memorex v. C-One, et al*
Case No. RG03-118916

00153

representatives in a meaningful or regular way.

9.  Defendants do not dispute that Mr. Jeing failed to communicate with Memorex about the status of both cases. Furthermore, the facts show that Defendants failed to meet their own duty to communicate, separate and apart from Mr. Jeing's obligation, by providing updates to Memorex and reasonably responding to inquiries from the designated representatives of plaintiff.

10.  Mr. Golacinski repeatedly complained to Gordon Yu, the president of Defendants, about Mr. Jeing's failure to communicate. He was assured by Mr. Yu, without any apparent basis in fact, that things were proceeding acceptably in the cases until the end of August 2002, at which point Mr. Yu himself became sufficiently concerned about the failure of communication with Mr. Jeing that he began looking for alternative counsel.

11.  The Court finds that Mount & Stoelker did not communicate regularly to Memorex the status or important events of the *SanDisk* case during the time Mount & Stoelker represented Memorex in that proceeding. The communication failures include:

a.) Memorex was not made aware of the failures involving Mr. Jeing in a timely fashion. The Court concludes that Mount & Stoelker and Preteo both had knowledge by October 2, 2002, of Mr. Jeing's failures and the pending sanctions motions in both the *Lexar* and *SanDisk* matters. *See* Trial Exhibits 82 and 83. However, they did not notify Memorex about these problems until October 15, 2002, in an email sent to Ms. Grace Lu that was forwarded to Ms. Law. Trial Exhibit 61. Given the significance of this information, the failure to communicate this information to Memorex is a breach of the Indemnification Agreement's communication requirement.

b.) Mount & Stoelker failed to provide Memorex with copies of pleadings in the *SanDisk* case. Standing alone, this is insufficient to find a breach of the communication requirement of the Indemnification Agreement. In reviewing Mr. Finley's two or three communications with Memorex in the critical time period of October 15 through November 15, 2002, the Court finds that Mount & Stoelker did not clearly state the

11

*Memorex v. C-One, et al.*
Case No. RG03-118916

00154

positions it was taking in the *SanDisk* sanctions regarding Memorex and Pretec's respective conduct and culpability.

c.) Mount & Stoelker failed to provide Memorex with a copy of the October 28th, 2002, status report sent to Defendants. *See* Trial Exhibit 79. Standing alone, this failure would be sufficient to find a breach of the Indemnification Agreement's communication requirement. This document was intended to convey the progress of the *SanDisk* case. At trial, Mr. Finley failed to explain why it was not forwarded to Ms. Law at Memorex and provided no justification for his failure to do so.

d.) Mount & Stoelker failed to forward information contained in Mr. Lin's declarations opposing sanctions. These declarations purported to make representations concerning Memorex's knowledge of the underlying events leading up to the motion for sanctions. *See* Trial Exhibits 60 and 82. They are relevant to understand the overall lack of communication, but, standing alone, are not sufficient to constitute a breach of the duty to communicate.

e.) Mount & Stoelker failed to inform Memorex that SanDisk was attempting to obtain sanctions individually against Memorex because of counsel's failure to present evidence that Memorex had no knowledge of Mr. Jeing's actions. The Court finds the failure to communicate that information sufficient to constitute a breach of the duty to communicate.

12.    Mount & Stoelker's failures to communicate, especially following the failures of Mr. Jeing, gave Memorex a proper basis, using an objectively reasonable standard of acceptability, to reject Mount & Stoelker as its defense counsel.

13.    Breach of the duty to communicate provides a separate and independent basis for the Court's finding of breach of contract.

#### Prerequisites to Invoking Section 2 of The Agreement Satisfied

14.    Under Section 2 of the Indemnification Agreement, Memorex was entitled to serve written notice and "resume" working with its own designated counsel in the event of

*Memorex v. C-One, et al.*
Case No. RG03-118916

Proposed Phase One Trial Statement of Decision

00155

1    Defendants' breach.[2]

2    15.    Memorex provided written notice of breach to Defendants in the *Lexar* matter on

3    October 2, 2002, in a letter from Mr. Golacinski to Mr. Yu.   Trial Exhibit 51.   That letter notified

4    Pretec that Memorex had retained the law firm of Keker & Van Nest to represent it in that

5    matter, based on Mr. Jeing's failure to meet numerous court deadlines and Memorex's doubts as

6    to Mr. Jeing's professional ability.

7    16.    For the *SanDisk* matter, Mount & Stoelker admitted at trial that their

8    representation of Memorex in that case was on a trial basis, or, as Mr. Law stated, a "wait and

9    see" basis.   When Memorex concluded that Mount & Stoelker had not performed to its

10    satisfaction in the *SanDisk* matter, it decided to replace Mount & Stoelker with Keker & Van

11    Nest on November 15, 2002.   Written notification was sent on November 19, 2002, citing Mount

12    & Stoelker's failure to keep Memorex informed about material events in the case, failure to

13    obtain Memorex's consent and approval of pleadings before filing, failure to inquire about the

14    extent of Memorex's knowledge concerning Mr. Jeing, and failure to consult with Memorex

15    about the litigation.   *See* Trial Exhibit. 91.

16    17.    The Court finds that it was objectively reasonable for Memorex to be dissatisfied

17    with the defense counsel Defendants offered and that Memorex was within its rights to replace

18    assigned defense counsel in both the *Lexar* and *SanDisk* cases as set forth in Section 2 of the

19    Indemnification Agreement.

                         **Cure And Waiver Defenses**

20

21    18.    Defendants argue that any breach they committed was cured and any right that

22    Memorex may have had to replace defense counsel was waived by Memorex's refusal of

23    Defendants' multiple offers to cure the breach between October 15 and November 15, 2002, by

24    tendering Mount & Stoelker as counsel to replace Mr. Jeing.   Defendants contend that, once

25    Memorex hired Keker & Van Nest in early October 2002, it categorically refused to consider any

26    attorney suggested by Defendants.   Defendants argue that their first attempt to cure was made on

27    [2] The Court reads this to mean that Memorex has the right to "resume" being separately represented, not
     that it necessarily had to resume being represented by its previous counsel, Coudert Brothers.

28                                                     13

1  October 15, 2002, when Mount & Stoelker informed Ms. Law that it would represent Memorex,

2  in the *SanDisk* matter on a special appearance basis. Defendants claim a second offer of cure in

3  the October 28, 2002, status report and separate communications made between Mr. Finley and

4  Ms. Law. Defendants claim a final offer of cure in Gordon Yu's letter of November 20, 2002,

5  responding to Memorex's oral and written notices of breach and its announced intention to retain

6  Keker & Van Nest as counsel in both the *Lexar* and *SanDisk* matters. *See* Trial Exhibit 95.

7      19.  The Court finds that Memorex acted reasonably in October, 2002, by allowing

8  Mount & Stoelker to represent it on a trial basis in *SanDisk* while also continuing to have Keker

9  & Van Nest represent it in the *Lexar* matter. Mount & Stoelker only made its offer to represent

10  Memorex in the *Lexar* case after Memorex retained Keker & Van Nest. Memorex's decision to

11  defer acceptance of Mount & Stoelker in the *Lexar* case during the period it was evaluating the

12  law firm's representation of Memorex in the *SanDisk* case was reasonable given the history and

13  existing circumstances. The Court believes that Memorex acted reasonably in accepting Mount

14  & Stoelker's representation in *SanDisk* only on a tentative basis, while retaining the option to

15  review the arrangement later.

16      20.  Memorex fairly considered allowing Mount & Stoelker to represent it, but

17  ultimately had objectively reasonable grounds for rejecting Defendants' tenders of joint

18  representation by that firm. Mr. Finley's November 15, 2002, letter illustrates Memorex's

19  concerns about potential conflicts with Mount & Stoelker's representation. *See* Trial Exhibit 90.

20  The letter begins by stating that it sets forth Pretec's position. The letter then refers to Pretec as

21  "our [Mount & Stoelker's] client." The letter takes positions adverse to Memorex in outlining

22  why Pretec did not believe it was responsible for Memorex's legal fees. The letter then states

23  that the failures of previous counsel have been cured. The tone of the letter, failure to

24  specifically state that Mr. Finley was neutral in any disputes between the parties, and advocacy

25  on behalf of Defendants' position against Memorex, would give the recipient Memorex

26  reasonable doubt about the loyalties of Mr. Finley. Since that letter, Defendants have not offered

27  any counsel other than Mount & Stoelker to represent Memorex.

28

Proposed Phase One Trial Statement of Decision

*Memorex v. C-One, et al.*
Case No. R003-118916

00157

From:Matthews & Partners          923 930 6693          03/11/2008 12:15    N720 P.037/077

1

21. The Court finds there has been no cure by Defendants or waiver by Plaintiff.

2

### III. CONCLUSION

3

4      Based on the Findings of Fact and Conclusions of Law set forth above, the Court finds

5  and declares (1) that Defendants breached the terms of the Indemnification Agreement, (2) that

6  Memorex was entitled as a result of the breach to retain separate counsel in both the *Lexar* and

7  *SanDisk* cases, and (3) that Memorex may recover damages as provided for in Section 2 of the

8  Agreement, subject to any remaining defenses Defendants may have. The Court further finds

9  and declares that Memorex did not waive its rights under Section 2 of the Agreement, or in any

10 other respect, nor did Defendants cure their breach.

11     This Proposed Phase One Trial Statement of Decision will become the Phase One Trial

12 Statement of Decision unless a party serves and files objections to this statement of decision

13 within 15 days from the notice of entry of this statement of decision. Rule 232(d), California

14 Rules of Court. Any party filing objections to this statement must also serve a courtesy copy of

15 all such objections on the Court Clerk of Department 135. Plaintiff must prepare and submit

16 within 15 days from the notice of entry of this statement a proposed judgment in conformance

17 with this statement. Rule 232 (c), California Rules of Court.

18     This case has been bifurcated into two phases. The Phase Two trial, to determine all

19 remaining issues, shall occur on a date to be determined at a case management conference to be

20 scheduled and noticed by the Court. The Court does not reach the issue of whether Memorex

21 failed to mitigate its damages or whether the $135,000 settlement amount alleged to have been

22 paid by Memorex in the *Lexar* matter is properly recoverable as damages.

23     IT IS SO ORDERED.

24

25  DATED: _____April 8, 2006_____

26                                              JUDGE OF THE SUPERIOR COURT

27

28                                     15

Proposed Phase One Trial Statement of Decision                    *Memorex v. C-One, et al.*
                                                                  Case No. RG03-118916

00158

From:Matthews & Partners    323 930 6693    03/11/2008 12:16    #720 P.038/077

# Exhibit D-4



International Centre for Dispute Resolution

### FAX

*Thomas M. Ventrone, Esq.*
*Vice President*
*International Centre for Dispute Resolution*
*1633 Broadway, New York, NY 10019-6708*
*telephone 212 484 3299, facsimile 212 246 7274*

DATE    July 12, 2007

TO     Leodis Clyde Matthews, Esq.                    FAX NUMBER   1-323-930-5693
        Daniel S. Mount, Esq.                                      1-408-998-1473

        Andrea H. Hughes
        ICDR Senior Case Manager

NUMBER OF PAGES    4    Mr. Matthews w/Respective Financial History
                   3    Mr. Mount w/Respective Financial History

RE     50 194 T 00227 07
        C-One Technology Corp.
        vs
        Mount & Stoelker

CC

MESSAGE    Dear Counsel:

            Please see the attached. Thank you.

            Kind Regards,

            Andrea

THIS FAX TRANSMISSION IS INTENDED ONLY FOR THE USE OF THE PERSON TO WHOM IT IS ADDRESSED. IT MAY CONTAIN INFORMATION THAT IS CONFIDENTIAL, PRIVILEGED OR OTHERWISE EXEMPT FROM DISCLOSURE. IF YOU ARE NOT THE INTENDED RECIPIENT OR THE PERSON AUTHORIZED TO DELIVER THIS FAX TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OF THIS FAX IS PROHIBITED. IF YOU HAVE RECEIVED THIS FAX IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE (COLLECT) AND RETURN THE ORIGINAL FAX TO US BY FIRST CLASS MAIL AT THE ABOVE ADDRESS.

00160

From:Matthews & Partners          323 930 5693          03/11/2008 12:18     #720 P.040/077



**I C D R**   International Centre
for Dispute Resolution

Thomas Ventura
Vice President

1633 Broadway, 10th Floor, New York, NY 10019
telephone 212-484-4181 facsimile 212-246-7274
internet: http://www.adr.org/ICDR

July 12, 2007

<u>VIA FACSIMILE ONLY</u>

Leodis C. Matthews, Esq.
Matthews & Partners
4322 Wilshire Blvd Suite 200
Los Angeles, CA 90010

Daniel S. Mount, Esq.
Mount & Stoelker
Riverpark Tower, Suite 1650
333 West San Carlos
San Jose, CA 95110

Re: 50 194 T 00227 07
C-One Technology, Corp.
vs
Mount & Stoelker

Dear Counsel:

This will serve to acknowledge receipt of a letter dated July 11, 2007 from Claimant wherein it has been stipulated by both Parties that the matter is to be withdrawn. Therefore, we are closing our file as of July 6, 2007. Copies of your respective Financial Histories have been attached.

Please contact the undersigned, should you have any questions.

Very truly yours,

Andrea H. Bughee
Senior International Case Manager
(212) 484-3299
BugheeA@adr.org

Encl.

00161

From:Matthews & Partners         323 930 5593         03/11/2008 12:16    8720 P.041/077

59-194-T-00227-07
C-One Technology, Corp.

Administrative Fees and Expenses:

| | | |
|---|---|---|
| Filing Fees | $8,000.00 | |
| Case Services Fee | $0.00 | |
| Hearing Fees | $0.00 | |
| AAA Room Rental Fee | $0.00 | |
| Abeyance/Misc. AAA Fees | $0.00 | |
| Non-AAA Conference Room Expense | $0.00 | |
| Misc Expenses | $0.00 | |
| Your Share of Administrative Fees and Expenses: | | $8,000.00 |
| Amount Paid for Administrative Fees and Expenses: | | $8,000.00 |
| Balance Administrative Fees and Expenses: | | $0.00 |

Neutral Compensation and Expenses:

| | |
|---|---|
| Your Share of Neutral Compensation and Expenses: | $0.00 |
| Amount Paid for Neutral Compensation and Expenses: | $0.00 |
| Balance Neutral Compensation and Expenses: | $0.00 |

| | |
|---|---|
| Party Balance: | $0.00 |

00162

From:Matthews & Partners        323 930 5593        03/11/2008 12:15    8720 P.042/077

C-One Technology, Corp. vs Mount & Stoelker

Case Manager: Andrea Bugbee

Case Number: 50-194-T-00227-07

Case Status: Withdrawn

Received Date: 06/28/2007

Notification Date: 07/06/2007

Days Elapsed: 8

Refund %: 50%

| Party# Name | | Filing Fees (a) | Reduction Per Refund Schedule (b) | Paid ( |
|---|---|---|---|---|
| 1 C-One Technology, Corp. | | $8,000.00 | $4,000.00 | $8,000.( |
| 2 Mount & Stoelker | | $0.00 | $0.00 | $0.( |
| | Total | $8,000.00 | $4,000.00 | $8,000.( |

00163

# Exhibit D-5

00164

From:Matthews & Partners          323 930 5693          03/11/2008 12:16          #720 P.044/077



# International Centre for Dispute Resolution

**FAX**

*Thomas M. Ventrone, Esq.*
*Vice President*
*International Centre for Dispute Resolution*
1633 Broadway, New York, NY 10019-6708
telephone 212 484 3299, facsimile 212 246 7274

| | | | |
|---|---|---|---|
| **DATE** | July 9, 2007 | | |
| **TO** | Leonis Clyde Matthews, Esq. | **FAX NUMBER** | 1-323-930-5693 |
| | Daniel S. Mount, Esq. | | 1-408-998-1473 |
| | | | |
| | Andrea H. Bughes | | |
| | ICDR Senior Case Manager | | |
| **NUMBER OF PAGES** | 2    (Including Fax Cover Sheet) | | |
| **RE** | 50 1P4 T 00227 07 | | |
| | C-One Technology Corp. | | |
| | vd | | |
| | Mount & Stoelker | | |
| **CC** | | | |
| **MESSAGE** | Dear Counsel: | | |

Please see the attached. Thank you.

Kind Regards,

Andrea

THIS FAX TRANSMISSION IS INTENDED ONLY FOR THE USE OF THE PERSON TO WHOM IT IS ADDRESSED. IT MAY CONTAIN INFORMATION THAT IS CONFIDENTIAL, PRIVILEGED OR OTHERWISE EXEMPT FROM DISCLOSURE. IF YOU ARE NOT THE INTENDED RECIPIENT OR THE PERSON AUTHORIZED TO DELIVER THIS FAX TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OF THIS FAX IS PROHIBITED. IF YOU HAVE RECEIVED THIS FAX IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE (COLLECT) AND RETURN THE ORIGINAL FAX TO US BY FIRST CLASS MAIL AT THE ABOVE ADDRESS.

00165

From:Matthews & Partners          323 930 6993          03/11/2008 12:17    #720 P.045/077



**I C**
**D R**    International Centre
for Dispute Resolution

Thomas Ventres
Vice President

1633 Broadway, 10th Floor, New York, NY 10019
telephone: 212-484-4181 facsimile 212-246-7294
internet: http://www.adr.org/ICDR

July 9, 2007

**VIA FACSIMILE ONLY**

Leadie C. Matthews, Esq.
Matthews & Partners
4322 Wilshire Blvd Suite 200
Los Angeles, CA 90010

Daniel S. Mount, Esq.
Mount & Stoelker
Riverpark Tower, Suite 1650
333 West San Carlos
San Jose, CA 95110

Re: 50 194 T 00227 07
     C-One Technology, Corp.
     vs
     Mount & Stoelker

Dear Counsel:

This will serve to confirm that an administrative conference call took place on July 6, 2007. We note that
during the call, the Parties reached an agreement to withdraw the matter.

We hereby kindly request the Parties to please confirm their agreement to withdraw the case in writing.
Upon receipt of said notice, we will close the file as of July 6, 2007.

Please contact the undersigned, should you have any questions.

Very truly yours,

Andrea H. Bughey
Senior International Case Manager
(212) 484-3299
BugheeA@adr.org

A Division of the American Arbitration Association

00166

From:Matthews & Partners          323 930 5893          03/11/2008 12:17     #720 P.048/077

# Exhibit D-6

00167

From:Matthews & Partners            323 930 5693            03/11/2008 12:17     #720 P.047/077

# MOUNT & STOELKER, P.C.
### ATTORNEYS

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: Leodis Matthews | FROM: Dan Mount |
| COMPANY: Matthews & Partners | DATE: JULY 10, 2007 |
| FAX NUMBER: (323) 930-5693 | TOTAL NO. OF PAGES INCLUDING COVER: 2 |
| PHONE NUMBER: | SENDER'S REFERENCE NUMBER: MOUNT011 |
| RE: International Centre of Dispute Resolution C-One Tech. V. M&S | YOUR REFERENCE NUMBER: ADR Case No. 50-194T00227-07 |

☐ URGENT    ☐ FOR REVIEW    ☐ ORIGINAL TO FOLLOW    ☐ PLEASE REPLY

THE INFORMATION CONTAINED IN THIS FAX IS CONFIDENTIAL AND/OR PRIVILEGED. THIS FAX IS INTENDED TO BE REVIEWED INITIALLY BY ONLY THE NAMED ADDRESSEE. REVIEW, DISSEMINATION OR COPYING OF THIS FAX BY ANYONE OTHER THAN THE INTENDED RECIPIENT OR HIS OR HER REPRESENTATIVE IS PROHIBITED. IF YOU HAVE RECEIVED THIS FAX IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER BY TELEPHONE AND RETURN THIS FAX TO THE SENDER AT THE ADDRESS LISTED BELOW.

NOTES/COMMENTS:

RIVERPARK TOWER, STE. 1650; 333 WEST SAN CARLOS
SAN JOSE, CA 95110-2711
(408) 279-3000; FAX (408) 998-1473

00168

From:Matthews & Partners          323 930 5693          03/11/2008 12:17    #720 P.048/077

                                                          323-930-5693               P.2

Jul 08 07 04:42p      Leodis C. Matthews

## MATTHEWS & PARTNERS

                                                          July 9, 2007

Dan Mount, Esq.
Mount & Stoelker
Riverpark Tower, Suite 1650
333 West San Carlos
San Jose, CA 95110                        Fax: (408) 998-1473

Re: INTERNATIONAL CENTRE OF DISPUTE RESOLUTION
C-ONE TECHNOLOGY V. MOUNT & STOELKER
ADR Case No. 50-194T00227-07

Dear Mr. Mount:

        This letter will serve as a confirmation of our agreement that with respect to those
issues asserted in the above matter, we have agreed that the Arbitration will be
withdrawal without prejudice for a period of 60 days but not to exceed 90 days.

        Mount & Stoelker agrees to waive any running of any statute of limitations or
other time limitation that might expire or be affected by this agreed upon time period.
Before or at the conclusion of the 60 — 90 day period described above, C-One
Technology may elect to refile the request for arbitration without objections by Mount &
Stoelker as to any defenses or bar to this action based upon the period within which this
matter is dismissed without prejudice.

        The parties agree that they the authority to sign on behalf of the named parties in
this case and that this agreement is binding upon their agents and assigns.

        If this summary is correct, please countersign this letter to indicate your consent
to the above agreement reach between us on July 6, 2007.

                                                  Sincerely yours,

                                                  Leodis C. Matthews

LCM/wla

        The parties have agreed as stated above:

        Dan Mount:                                  Date: July 9, 2007

00169

From: Matthews & Partners          323 930 5699          03/11/2008 12:17          #720 P.049/077

1

2          **Certificate of Service**
           [California Code of Civil Procedure §§ 1013a & 2015.5]

3          I am employed in the County of Los Angeles, State of California. I am over the age of 18
           and not a party within the action. My address is 4322 Wilshire Boulevard, Suite 200, Los Angeles, CA
4          90010.  On March 11, 2008 served the foregoing document(s), described as follows, on all interested
           parties in this action by placing a true copy thereof

5          Title of Document:    **PRETEC ELECTRONICS CORP.'S OPPOSITION TO MOUNT &**
6          **STOELKER'S MOTION FOR PRELIMINARY INJUNCTION**

7          Case Number:    BC359710

8          **SEE ATTACHED SERVICE LIST**

9    ☐     PERSONAL DELIVERY: On the above date I caused the above described document(s) to be
           personally hand delivered to the addressee(s)

10   ☐     FACSIMILE: On the above date, I caused the above-described document(s) to be sent to the
11         addressee(s) via the facsimile number on the attached service list.

12   ☐     FEDERAL EXPRESS: On the above date I caused the above-described document(s) to be
           sent to the addressee(s) via Federal Express with the shipping charges fully prepaid, for ☐
13         Overnight ☐ Priority Overnight Delivery

14   ☒     REGULAR MAIL:

15   ☐         I deposited such envelope(s) in the United States Mail at Los Angeles, California with
               the postage thereon fully prepaid.

16   ☒         I caused such envelope(s) to be deposited in the mail at Los Angeles, California with
17             postage thereon fully prepaid. I am "readily familiar" with the firm's practice of
               collection and processing correspondence for mailing.  It is deposited with the U.S.
18             Postal Service on the same day in the ordinary course of business.  I am aware that
               on motion of the party served, service is presumed invalid of postal cancellation date
19             or postage meter date is more than one day after the date of deposit for mailing in this
               affidavit.

20         I declare under penalty of perjury under the laws of the State of California that the foregoing is
21         true and correct. Executed on March 11, 2008 at Los Angeles, California.

22                                              Melanie Ocubillo

23

24

25

26

27

28

                                                                                        00170

From:Matthess & Partners                323 890 6893                03/11/2008 12:18        #720 P.060/077

Service List

Counsel for Plaintiffs

1

2

3    Jerry Hauser
     Phillips, Greenberg & Hauser, L.L.P.
     Four Embarcadero Center, 39th Floor
4    San Francisco, CA 94111
     Facsimile: (415) 398-5786
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00171

# Exhibit K

00172

From:Matthews & Partners          323 930 5693          03/11/2008 12:18          #720 P.051/077

1   Leodis C. Matthews [SBN 109064]
    MATTHEWS & PARTNERS
2   SUITE 200
    4322 WILSHIRE BOULEVARD
3   LOS ANGELES, CALIFORNIA 90010-3792
    TELEPHONE: 323.930.5690
4   FACSIMILE: 323.930.5693

5   Attorneys For:  Defendant
    PRETEC ELECTRICS CORP.

6

7

8           IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              IN AND FOR THE COUNTY OF SANTA CLARA

10                  DOWNTOWN (SAN JOSE) DIVISION

11

12  MOUNT & STOELKER, a Professional          CASE NUMBER: 108 CV 105975
    Corporation,
13                                            Request For Judicial Notice
                            Plaintiff
14                                            [Filed Concurrently with
                                              Pretec Electronics Corp.'s
15                                            Opposition To
            - Vs -                            Mount & Stoelker's
16                                            Motion For
                                              Preliminary Injunction]
17                                            ~~~~~~~~

18  C-ONE TECHNOLOGY, a Taiwanese
    Corporation, PRETEC ELECTRONICS
19  CORPORATION; a California
    Corporation; INTERNATIONAL CENTRE
20  FOR DISPUTE RESOLUTION, a Division
    of the American Arbitration
21  Association (erroneously sued as
    "International Center for Dispute        Date: March 25, 2008
22  Resolution"); and DOES 1 through 50,     Time:        9:00 AM
    inclusive.                               Dept: 5
23
                            Defendants
24

25

26

27  PRETEC ELECTRONIC'S REQUEST FOR JUDICIAL NOTICE
    (OPPOSITION TO M&S'S MOTION FOR PRELIMINARY INJUNCTION)
28  MOUNT & STOELKER -V- C-ONE TECHNOLOGIES
    Case No 108 CV 105975                                        00173

                                                    BY FAX

1    To all Parties and To Their Respective Attorneys Of Record:

2    Pursuant to sections 452, and 453 of the *California Evidence Code*, Defendant PRETEC

3    ELECTRONICS CORPORATION requests the Court to take judicial notice of the following, a true copy

4    of which is attached hereto::

5        1.    Notice of Entry of Proposed Phase One Trial Statement of Decision (filed April 10,

6    2006) and Phase One Trial Statement of Decision (filed April 10, 2006) of the Alameda Superior

7    Court in the case styled "Memorex Products, Inc., fka Memtek Products Inc., v. S-One Technology

8    Corporation, Pretec Electronics Corporation, and Does 1 through 10, Inclusive", Case No. RG03-

9    118916 [See also. Exhibit D-3 (collectively) of Defendant's Opposition Papers]

                        POINTS AND AUTHORITIES

10

11        Judicial Notice may be taken of "the records of any federal or state court [Evid. Code, §

12    452(d)]. While the language of *Evidence Code §452* is permissive, this is because the court may

13    take notice of the matters listed therein even when not requested to do so [*Evidence Code §450*

14    Law Revision Commission Comments 1965]. However, the taking of judicial notice of the

15    matters listed in *Evidence Code §452* is mandatory if properly requested by a party that the court

16    do so [Evidence Code § 453]. Here, the request for judicial notice is properly being made.

17

18        Specifically, a court may properly judicially notice both the existence and truth of the

19    matters asserted in court orders, conclusions of law and judgments [*Sosinsky v. Grant* (1992) 6

20    Cal.App.4th 1548, 1564].

21        The court may also judicially notice the existence of findings of fact made in an other

22    action and, of the doctrines of res judicata and collateral estoppel have already attached,

23    rendering that decision final and binding on all parties, the court may also accept those findings

24    of fact as being true as well [[*Sosinsky v. Grant* (Supra) 6 Cal.App.4th @ 1568]. Such is also

25

26

27    PRETEC ELECTRONIC'S REQUEST FOR JUDICIAL NOTICE
      (OPPOSITION To M&S's Motion For Preliminary Injunction)

28    MOUNT & STOELKER -V- C-ONE TECHNOLOGIES                                    Page -2-
      Case No 108 CV 105975

1 | the case here.

2 | ////

3 |                                    Respectfully Submitted,

4 |

5 |

6 | Date:  March 11, 2008

7 |

8 |                                    Matthews & Partners

9 |

10 |

11 |

12 |                    By:

13 |                                    Leodis C. Matthews
                                       Attorney For Defendant
14 |                                   PRETEC

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 | PRETEC ELECTRONIC'S REQUEST FOR JUDICIAL NOTICE

28 | (OPPOSITION TO M&S'S MOTION FOR PRELIMINARY INJUNCTION)
   | MOUNT & STOELKER -v- C-ONE TECHNOLOGIES                        Page -3-
   | Case No 108 CV 105976

                                                                   00175

From:Matthews & Partners　　　　323 930 5633　　　03/11/2008 12:19　　#720 P.054/077

# Exhibit 1

00176

From:Matthews & Partners          323 930 5893          03/11/2008 12:19     8720 P.055/077

Additional Addressees:

G. Whitney Leigh
Gonzalez & Leigh LLP
332 Pine St., Suite 200
San Francisco, Ca. 94104

Ron Finley
Mount & Stoelker
333 West San Carlos Street
Suite 1650
San Jose, Ca. 95110

00177

From: Matthews & Partners

323 930 6893    03/11/2008 12:19    #720 P.058/077

FILED
ALAMEDA COUNTY

APR 10 2006

CLERK OF THE SUPERIOR COURT
By _____ Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

1
2
3    MEMOREX PRODUCTS, INC., fka    Case No. RG03-118916
4    MEMTEK PRODUCTS, INC.,
                    Plaintiff,    PROPOSED
5                                PHASE ONE TRIAL
        v.                       STATEMENT OF DECISION
6
7    C-ONE TECHNOLOGY CORPORATION,
     PRETEC ELECTRONICS, INC; and DOES
8    1 through 10, inclusive,
                    Defendants.
9
10
11    This matter came on for the first phase of a bifurcated bench trial on October 31, 2005.
12    Plaintiff Memorex Products, Inc., formerly known as Memtek Products ("Memorex") appeared
13    through its counsel, Jon B. Streeter and G. Whitney Leigh. Defendants C-One Technology
14    Corporation ("C-One") and Pretec Electronics, Inc. ("Pretec") appeared through their counsel,
15    Daniel Mount and Ron Finley. The Court heard testimony from witnesses and accepted
16    documentary exhibits into evidence over the course of the first three weeks of November,
17    concluding on the afternoon of November 17, 2005. The parties then submitted Post-Trial
18    Memoranda, and, on December 12, 2005, the Court heard Phase One closing arguments and
19    announced its tentative decision. The Court assigned Plaintiff's counsel the task of preparing a
20    proposed memorandum of decision based on the Court's tentative decision. Plaintiff's counsel
21    submitted a proposed statement of decision on January 9, 2006. Having carefully reviewed the
22    trial record, observed the credibility and demeanor of the witnesses, and considered the
23    arguments presented by the parties, the Court now issues the following Findings of Fact and
24    Conclusions of Law, resolving all matters in dispute in the Phase One trial.
25                            I.  Findings of Fact
26              The Parties and the Applicable Contract Language
27
28                                    1    Memorex v. C-One, et al.
                                           Case No. RG03-118916
Proposed Phase One Trial Statement of Decision

00178

ff

From:Matthews & Partners          323 930 5693          03/11/2008 12:19    #720 P.058/077

1  updates regarding the patent proceedings. 11/8/05 AM TX at 24:24-25:16; 26:10-27:17; 28:22-

2  29:27. In response, Yu assured Mr. Golacinski not to worry and that Mr. Jeing had all matters

3  under control. *Id.* at 29:28-30:14. By early August 2002, however, Mr. Yu determined he

4  needed to find an alternative to Mr. Jeing, but did not notify Memorex of his decision to do so.

5  11/8/05 AM TX at 36:17-37:14, 11/15/05 AM TX at 41:2-14.

The *Lexar* and *SanDisk* Sanctions Proceedings

6       9.    During the fourth quarter of 2002, the *Lexar* and *SanDisk* courts held proceedings

7  addressing whether sanctions — at least monetary sanctions, and potentially issue sanctions or

8  even terminating sanctions — should be imposed against Memorex and Defendants for failing to

9  comply with statutory and court-ordered discovery, pleading and other pretrial requirements.

10      10.   Memorex first learned of sanctions proceedings in the *Lexar* case in late

11  September 2002, when it was notified by its former counsel, Coudert Brothers, of an Order to

12  Show Cause Re Sanctions issued by Judge Martin Jenkins on September 23, 2002. *See* Trial

13  Exhibit 46, 11/9/05 AM TX at 59:9-60:14. After learning of the *Lexar* sanctions proceedings,

14  Memorex retained the law firm of Keker & Van Nest, LLP ("Keker & Van Nest"), to replace Mr.

15  Jeing as its counsel in the *Lexar* case. *See* Trial Exhibit 51, 11/9/05 AM TX at 60:15-26. By

16  letter dated October 2, 2002, Memorex formally notified Defendants of its decision to replace

17  Mr. Jeing with Keker & Van Nest as its counsel in the *Lexar* Action. *See* Trial Exhibit 51.

18  Defendants also retained a new law firm, Mount & Stoelker, LLP ("Mount & Stoelker"), to

19  assume their defense in the *Lexar* case in Mr. Jeing's stead. *See* Trial Exhibit 52.

20      11.   Memorex first learned of the October 17, 2002, sanctions proceeding in the

21  *SanDisk* case on October 15, 2002, two days before the hearing was scheduled to occur. *See*

22  Trial Exhibit 61, 11/15/05 PM TX at 65:10-46:4. Defendants learned of SanDisk's sanctions

23  motion on October 2, 2002. *See* Trial Exhibits 82, ¶13, p.3 and 83, ¶8, p.2. Defendants and

24  their counsel failed to inform Memorex of the sanctions hearing in the *SanDisk* case for almost

25  two weeks. Defendants' declarations in the *SanDisk* matter executed by Ron Finley, a Mount &

26  Stoelker attorney, and by Charles Lin, a Pretec employee, show that the Defendants and Mount

27

28

5

*Memorex v. C-One, et al.*
Case No. R002-118916

00180

From:Matthews & Partners

1  & Stoelker knew about the specific allegations of Mr. Jeing's failures in the *SanDisk* case as of

2  October 2, 2002. *See* Exhibits 82 and 83. On October 15, 2002, Mr. Finley informed Memorex

3  that SanDisk had opposed Defendants' request to continue the sanctions hearing because no one

4  representing Memorex had not joined in Defendants' request, urged Memorex to immediately

5  join in Defendants' request, and said Mount & Stoelker could specially appear at the sanctions

6  hearing for Memorex. *See* Trial Exhibits 59 and 61. Faced with exigent circumstances,

7  Memorex agreed to allow Mount & Stoelker to appear for Memorex at the October 17, 2002

8  hearing. *See* Trial Exhibits 62.

9      12.  Over the next three weeks, Defendants, through Mr. Finley, made multiple

10  requests that Memorex agree to allow Mount & Stoelker to represent Memorex in both the

11  *SanDisk* and *Lexar* cases. *See* Trial Exhibits 62 and 87. Memorex decided to allow Mount &

12  Stoelker to represent Memorex in the *SanDisk* case on a trial basis and defer its decision whether

13  to accept Mount & Stoelker in the *Lexar* case until after the trial period. 11/9/05 AM TX at

14  80:24-81:24; 86:22-87:17. Mount & Stoelker represented Memorex in the *SanDisk* case through

15  the hearing on SanDisk's sanctions motion on November 14, 2002. *See* Trial Exhibit 89. During

16  this period of time, Keker & Van Nest continued to represent Memorex in the *Lexar* case.

17      13.  Between October 15 and November 14, 2002, Mount & Stoelker communicated

18  with Memorex on two or three occasions. 11/9/05 AM TX at 77:5-11. In these communications,

19  Mount & Stoelker failed to inform Memorex of several procedural and substantive matters

20  relating to the *SanDisk* case sanctions proceedings. 11/9/05 AM TX at 77:13-20.

21      14.  It is undisputed that Mount & Stoelker did not inform Memorex that SanDisk had

22  singled out Memorex for its failure to produce any documents in discovery in its motion for

23  sanctions and its opposition to Pretec's request to continue the sanctions hearing. *See* Trial

24  Exhibits 41, at 2:8-9, 5:1-3 and 68, at 2:21-22. 11/9/05 AM TX at 76:22-77:2; 11/17/05 AM TX

25  at 51:10-52:11.

26      15.  On October 28, 2005, Mr. Finley sent an e-mail to Defendants reporting the status

27  of the *Lexar* and *SanDisk* proceedings. *See* Trial Exhibit 79. In this report, Mr. Finley informed

28

*Memorex v. C-One, et al.*
Case No: R603-118914

00181

1    Defendants that, among other things, Mount & Stoelker would file an opposition to SanDisk's

2    motion for sanctions on October 31, 2002. *Id.* Mr. Finley did not send this status report, or the

3    information contained in it pertaining to the *SanDisk* case, to Memorex. *Id.* On October 31,

4    2002, Mount & Stoelker filed an opposition to SanDisk's sanctions motion, on behalf of Pretec

5    and Memorex, supported by declarations by Mr. Finley and Charles Lin, a Pretec employee. *See*

6    Trial Exhibits 81-83. Mount & Stoelker did not provide copies of these pleadings to Memorex

7    or seek its input or approval for the arguments made therein. 11/9/05 AM TX at 84:12-14.

8    11/10/05 PM TX at 32:14-17.

9        16.    On November 7, 2002, SanDisk filed a reply brief in support of its sanctions

10   motion. *See* Trial Exhibit 85. In its reply, SanDisk noted that although Mount & Stoelker had

11   presented evidence, through the Lin declaration, of Pretec's unawareness of Mr. Jeing's failure

12   to perform and appear, it "offered no support for their contention that Memorex was unaware of

13   Mr. Jeing's actions" and that Mr. Lin was not competent to submit a declaration on behalf of

14   Memorex. *See* Trial Exhibit 85 at p.2, note 1, 11/9/05 AM TX at 82:18-83:11. It is undisputed

15   that Mount & Stoelker did not notify Memorex of SanDisk's reply arguments pertaining to

16   Memorex. *Id.* at 82:18-85:28.

17       17.    Memorex learned of San Disk's allegations against Memorex, and of Mount &

18   Stoelker's failure to respond to or notify Memorex of SanDisk's allegations, only after the

19   sanctions hearing was held, on November 14, 2002. Memorex then decided to terminate Mount

20   & Stoelker as its counsel in the *SanDisk* case and not allow Mount & Stoelker to represent

21   Memorex in the *Lexar* case. *See* 11/9/05 AM TX at 84:11-88:14, Trial Exhibits 91 and 99.

22       18.    On November 27, 2002, Judge Walker issued an order in the *SanDisk* case

23   imposing monetary sanctions against Mr. Jeing, Memorex and Pretec. Trial Exhibit 102 at

24   15:19-28. Judge Walker further warned that any future failure by Memorex or Pretec to comply

25   with discovery rules or deadlines could result in severe sanctions, and required Memorex and

26   Pretec's CEOs to file declarations attesting to their awareness of the order's contents. *Id.*, at

27   14:20-4. On February 13, 2003, Judge Jenkins entered an order in the *Lexar* case awarding

28

*Memorex v. C.One, et al.*
*Case No. RG03-118916*

Proposed Phase One Trial Statement of Decision

From:Matthews & Partners          323 930 5693          03/11/2008 12:21    #720 P.061/077

1    monetary sanctions against Mr. Jeing, but declining to sanction Memorex or C-One.  Trial

2    Exhibit 107.

3                                    II.  Conclusions of Law

4                       Contractual Duties Owed by Defendants to Memorex

5         1.      The Court finds that under the Indemnity Agreement, Defendants assumed three

6    related but separable duties relevant to the instant dispute: (1) a duty to indemnify, (2) a duty to

7    defend and (3) a duty to communicate.  Only the duty to defend and the duty to communicate are

8    at issue in this Phase One trial.

9         2.      The scope of Defendants' duty to indemnify Memorex is set forth in Section 1 of

10   the Indemnification Agreement.  See Trial Exhibit 20.  Section 1 requires Defendants, without

11   limitation, to pay on behalf of Memorex all "losses, costs, damages (compensatory and punitive),

12   expenses, judgments, settlements, awards of costs or attorneys' fees, royalties or any other

13   amounts" that [Memorex] paid or is required to pay arising out of any claims brought against

14   Memorex based on products Memorex purchased from Defendants.  Id., Section 1(i), p.2.  The

15   Court finds that under a narrow, but reasonable, reading of Section 1 of the Indemnification

16   Agreement, Defendants' duty to indemnify Memorex for any losses "arising out of" claims based

17   on Memorex's sale of Defendants' products would not necessarily include a duty to pay

18   monetary sanctions imposed individually on Memorex for litigation misconduct in the

19   underlying patent actions.  Thus, if ordered to pay monetary sanctions for litigation misconduct

20   caused by Defendants' assigned counsel, Memorex could reasonably be concerned whether

21   Memorex would be reimbursed by the Defendants for sanctions individually imposed on

22   Memorex for what the Court determined was assigned counsel's failure to perform, respond, or

23   comply with an order or rule.

24        3.      The Indemnification Agreement also obligated Defendants to fully defend

25   Memorex in the Lexar case and in any other lawsuits brought against Memorex by third parties

26   based on Memorex's sale of Defendants' products.  See Trial Exhibit 20, Section 1, pp.2-3.

27

28                                                8

Proposed Phase One Trial Statement of Decision                    Memorex v. C-One, et al.
                                                                  Case No. RG03-118916

                                                                  00183

1  Thus, the Indemnification Agreement obligated Defendants to defend Memorex in the *SanDisk*

2  case. *See* Trial Exhibit 31.

3      4.    The Indemnification Agreement authorized Defendants to assign counsel of their

4  choice to undertake the professional responsibility of defending Memorex, but also provided that

5  such counsel had to be acceptable to Memtek. *See* Trial Exhibit 20, Section 1, p.2. The Court

6  finds that this acceptability provision is one that must be measured by a standard of objective

7  reasonableness. *See Storek & Storek Inc. v. Citicorp Real Estate Inc.*, 100 Cal. App. 4th 44, 55-

8  65, 122 Cal. Rptr. 2d 267, 275-285 (2002). The Indemnification Agreement further provided

9  that in the event that Defendants either (1) breached their obligation to defend or (2) failed to

10  provide counsel acceptable to Memorex, then Memorex was entitled to hire separate counsel to

11  defend it. *See* Trial Exhibit 20, Section 2, p.2.

12      5.    The other duty that Defendants assumed under the Indemnification Agreement

13  was the duty to communicate. Although this obligation might be characterized as a subpart of

14  the duty to defend, for purposes of clarity of analysis the Court treats it distinctly. Under Section

15  2, page 3, of the Indemnification Agreement, Defendants expressly agreed to instruct counsel to

16  communicate with individuals designated by Memorex and to keep them regularly informed of

17  the progress of the action. Memorex designated two individuals for this purpose: Michael

18  Golaciński, Memorex's president and CEO, and Dorothy Law, an attorney who performed

19  services for Memorex akin to that of an inside or general counsel. 11/17/05 AM TX at 46:18-

20  48:25.

                                    **Breach of Duty To Defend**

21
22      6.    The Court finds Defendants breached their duty to defend Memorex by the

23  actions and inactions of their first assigned counsel, Mr.Jeing. As set forth in the sanction order

24  of Judge Jenkins, Mr. Jeing failed to follow local court rules regarding disclosures, exchanges,

25  statements, briefs, and evidence. *See* Trial Exhibit 46. Similar allegations were made in the

26  *SanDisk* case. *See* Trial Exhibit 102. I find that Mr. Jeing abandoned over a long period of time

27  the defense of Memorex in both cases. During the trial, Defendants did not meaningfully contest

28

*Memorex v. C-One, et al.*
Case No. RG03-118916

00184

the charge that Mr. Jeing failed to carry out his duty to defend Plaintiff. Because Mr. Jeing failed to represent Memorex adequately in both the *Lexar* and *SanDisk* cases, his behavior caused Defendants to breach the Indemnification Agreement.

7.    The court finds the services of the second assigned counsel, Mount & Stoelker, did not breach the basic duty to defend, but were properly rejected by Memorex, using an objectively reasonable standard of acceptability, under the terms of the contract. Keker & Van Nest directly succeeded Mr. Jeing as defense counsel for Memorex in the *Lexar* case. Since Mount & Stoelker never represented Memorex in that case, they could not breach any basic duty to defend in that case. In the *SanDisk* case, Memorex contended Mount & Stoelker failed to fully defend Memorex's interests in opposing the motion for sanctions. Memorex presented evidence that showed Mount & Stoelker (1) failed to submit declarations on Memorex behalf similar to those that the firm submitted on behalf of Defendants, (2) made representations to the Court that did not state Memorex's position with regard to the facts presented, (3) failed to state Memorex's individual efforts and diligence in attempting to ensure Mr. Jeing's compliance with the court orders, litigation rules, and discovery schedule, and (4) omitted any reference to Memorex's reliance on Mr. Yu that everything was okay and proceeding properly. Memorex also contends that Mount & Stoelker failed to argue against an interpretation of the Supreme Court's decision in *Link v. Wabash* that would not impose strictly liable on a party for the conduct of their counsel. The Court concludes these actions do not constitute a breach of the basic duty to defend. The Court does find, however, that Memorex was justified, using an objectively reasonable standard of acceptability, in finding the second assigned counsel and their actions unacceptable under the terms of the Indemnification Agreement.

## Breach of Duty to Communicate

8.    The Indemnification Agreement requires that Defendants instruct any counsel appointed to defend Memorex to communicate regularly about the status of the case with individuals designated by Memorex. Memorex designated Michael Golacinski and inside counsel Dorothy Law. Neither Mr. Jeing nor Mount & Stoelker communicated with these

10

00185

1    representatives in a meaningful or regular way.

2        9.    Defendants do not dispute that Mr. Jeing failed to communicate with Memorex

3    about the status of both cases. Furthermore, the facts show that Defendants failed to meet their

4    own duty to communicate, separate and apart from Mr. Jeing's obligation, by providing updates

5    to Memorex and reasonably responding to inquiries from the designated representatives of

6    plaintiff.

7        10.    Mr. Golacinski repeatedly complained to Gordon Yu, the president of Defendants,

8    about Mr. Jeing's failure to communicate. He was assured by Mr. Yu, without any apparent basis

9    in fact, that things were proceeding acceptably in the cases until the end of August 2002, at

10    which point Mr. Yu himself became sufficiently concerned about the failure of communication

11    with Mr. Jeing that he began looking for alternative counsel.

12        11.    The Court finds that Mount & Stoelker did not communicate regularly to

13    Memorex the status or important events of the *SanDisk* case during the time Mount & Stoelker

14    represented Memorex in that proceeding. The communication failures include:

15        a.)    Memorex was not made aware of the failures involving Mr. Jeing in a timely

16    fashion. The Court concludes that Mount & Stoelker and Pretec both had knowledge by

17    October 2, 2002, of Mr. Jeing's failures and the pending sanctions motions in both the

18    *Lexar* and *SanDisk* matters. *See* Trial Exhibits 82 and 83. However, they did not notify

19    Memorex about these problems until October 15, 2002, in an email sent to Ms. Grace Lu

20    that was forwarded to Ms. Law. Trial Exhibit 61. Given the significance of this

21    information, the failure to communicate this information to Memorex is a breach of the

22    Indemnification Agreement's communication requirement.

23        b.)    Mount & Stoelker failed to provide Memorex with copies of pleadings in the

24    *SanDisk* case. Standing alone, this is insufficient to find a breach of the communication

25    requirement of the Indemnification Agreement. In reviewing Mr. Finley's two or three

26    communications with Memorex in the critical time period of October 15 through

27    November 15, 2002, the Court finds that Mount & Stoelker did not clearly state the

28

11

Proposed Phase One Trial Statement of Decision

Memorex v. C-One, et al.
Case No. RG03-118916

00186

From:Matthews & Partners          323 930 5893          03/11/2008 12:23          #720 P.065/077

positions it was taking in the *SanDisk* sanctions regarding Memorex and Pretec's

respective conduct and culpability.

    c.) Mount & Stoelker failed to provide Memorex with a copy of the October

28th, 2002, status report sent to Defendants. *See* Trial Exhibit 79. Standing alone, this

failure would be sufficient to find a breach of the Indemnification Agreement's

communication requirement. This document was intended to convey the progress of the

*SanDisk* case. At trial, Mr. Finley failed to explain why it was not forwarded to Ms. Law

at Memorex and provided no justification for his failure to do so.

    d.) Mount & Stoelker failed to forward information contained in Mr. Lin's

declarations opposing sanctions. These declarations purported to make representations

concerning Memorex's knowledge of the underlying events leading up to the motion for

sanctions. *See* Trial Exhibits 60 and 62. They are relevant to understand the overall lack

of communication, but, standing alone, are not sufficient to constitute a breach of the

duty to communicate.

    e.) Mount & Stoelker failed to inform Memorex that SanDisk was attempting to

obtain sanctions individually against Memorex because of counsel's failure to present

evidence that Memorex had no knowledge of Mr. Jeing's actions. The Court finds the

failure to communicate that information sufficient to constitute a breach of the duty to

communicate.

    12.    Mount & Stoelker's failures to communicate, especially following the failures of

Mr. Jeing, gave Memorex a proper basis, using an objectively reasonable standard of

acceptability, to reject Mount & Stoelker as its defense counsel.

    13.    Breach of the duty to communicate provides a separate and independent basis for

the Court's finding of breach of contract.

            Prerequisites to Invoking Section 2 of The Agreement Satisfied

    14.    Under Section 2 of the Indemnification Agreement, Memorex was entitled to

serve written notice and "resume" working with its own designated counsel in the event of

*Memorex v. C-One, et al.*
Case No. RG03-118916

00187

1   Defendants' breach.[2]

2        15.   Memorex provided written notice of breach to Defendants in the *Lexar* matter on

3   October 2, 2002, in a letter from Mr. Golacinski to Mr. Yu. Trial Exhibit 51. That letter notified

4   Pretec that Memorex had retained the law firm of Keker & Van Nest to represent it in that

5   matter, based on Mr. Jeing's failure to meet numerous court deadlines and Memorex's doubts as

6   to Mr. Jeing's professional ability.

7        16.   For the *SanDisk* matter, Mount & Stoelker admitted at trial that their

8   representation of Memorex in that case was on a trial basis, or, as Mr. Law stated, a "wait and

9   see" basis. When Memorex concluded that Mount & Stoelker had not performed to its

10  satisfaction in the *SanDisk* matter, it decided to replace Mount & Stoelker with Keker & Van

11  Nest on November 15, 2002. Written notification was sent on November 19, 2002, citing Mount

12  & Stoelker's failure to keep Memorex informed about material events in the case, failure to

13  obtain Memorex's consent and approval of pleadings before filing, failure to inquire about the

14  extent of Memorex's knowledge concerning Mr. Jeing, and failure to consult with Memorex

15  about the litigation. *See* Trial Exhibit. 91.

16       17.   The Court finds that it was objectively reasonable for Memorex to be dissatisfied

17  with the defense counsel Defendants offered and that Memorex was within its rights to replace

18  assigned defense counsel in both the *Lexar* and *SanDisk* cases as set forth in Section 2 of the

19  Indemnification Agreement.

                          **Cure And Waiver Defenses**

20       18.   Defendants argue that any breach they committed was cured and any right that

21  Memorex may have had to replace defense counsel was waived by Memorex's refusal of

22  Defendants' multiple offers to cure the breach between October 15 and November 15, 2002, by

23  tendering Mount & Stoelker as counsel to replace Mr. Jeing. Defendants contend that, once

24  Memorex hired Keker & Van Nest in early October 2002, it categorically refused to consider any

25  attorney suggested by Defendants. Defendants argue that their first attempt to cure was made on

26

27  _____
    [2] The Court reads this to mean that Memorex has the right to "resume" being separately represented, not
    that it necessarily had to resume being represented by its previous counsel, Coudert Brothers.

28                                           13

1   October 15, 2002, when Mount & Stoelker informed Ms. Law that it would represent Memorex

2   in the *SanDisk* matter on a special appearance basis. Defendants claim a second offer of cure in

3   the October 28, 2002, status report and separate communications made between Mr. Finley and

4   Ms. Law. Defendants claim a final offer of cure in Gordon Yu's letter of November 20, 2002,

5   responding to Memorex's oral and written notices of breach and its announced intention to retain

6   Keker & Van Nest as counsel in both the *Lexar* and *SanDisk* matters. *See* Trial Exhibit 95.

7       19.    The Court finds that Memorex acted reasonably in October, 2002, by allowing

8   Mount & Stoelker to represent it on a trial basis in *SanDisk* while also continuing to have Keker

9   & Van Nest represent it in the *Lexar* matter. Mount & Stoelker only made its offer to represent

10  Memorex in the *Lexar* case after Memorex retained Keker & Van Nest. Memorex's decision to

11  defer acceptance of Mount & Stoelker in the *Lexar* case during the period it was evaluating the

12  law firm's representation of Memorex in the *SanDisk* case was reasonable given the history and

13  existing circumstances. The Court believes that Memorex acted reasonably in accepting Mount

14  & Stoelker's representation in *SanDisk* only on a tentative basis, while retaining the option to

15  review the arrangement later.

16      20.    Memorex fairly considered allowing Mount & Stoelker to represent it, but

17  ultimately had objectively reasonable grounds for rejecting Defendants' tenders of joint

18  representation by that firm. Mr. Finley's November 15, 2002, letter illustrates Memorex's

19  concerns about potential conflicts with Mount & Stoelker's representation. *See* Trial Exhibit 90.

20  The letter begins by stating that it sets forth Pretec's position. The letter then refers to Pretec as

21  "our [Mount & Stoelker's] client." The letter takes positions adverse to Memorex in outlining

22  why Pretec did not believe it was responsible for Memorex's legal fees. The letter then states

23  that the failures of previous counsel have been cured. The tone of the letter, failure to

24  specifically state that Mr. Finley was neutral in any disputes between the parties, and advocacy

25  on behalf of Defendants' position against Memorex, would give the recipient Memorex

26  reasonable doubt about the loyalties of Mr. Finley. Since that letter, Defendants have not offered

27  any counsel other than Mount & Stoelker to represent Memorex.

28                                          14

From:Matthews & Partners          323 930 6693          03/11/2008 12:24     6720 P. 058/077

21. The Court finds there has been no cure by Defendants or waiver by Plaintiff.

## III. CONCLUSION

Based on the Findings of Fact and Conclusions of Law set forth above, the Court finds and declares (1) that Defendants breached the terms of the Indemnification Agreement, (2) that Memorex was entitled as a result of the breach to retain separate counsel in both the *Lexar* and *SanDisk* cases, and (3) that Memorex may recover damages as provided for in Section 2 of the Agreement, subject to any remaining defenses Defendants may have.  The Court further finds and declares that Memorex did not waive its rights under Section 2 of the Agreement, or in any other respect, nor did Defendants cure their breach.

This Proposed Phase One Trial Statement of Decision will become the Phase One Trial Statement of Decision unless a party serves and files objections to this statement of decision within 15 days from the notice of entry of this statement of decision.  Rule 232(d), California Rules of Court.  Any party filing objections to this statement must also serve a courtesy copy of all such objections on the Court Clerk of Department 135.  Plaintiff must prepare and submit within 15 days from the notice of entry of this statement a proposed judgment in conformance with this statement.  Rule 232 (c), California Rules of Court.

This case has been bifurcated into two phases.  The Phase Two trial, to determine all remaining issues, shall occur on a date to be determined at a case management conference to be scheduled and noticed by the Court.  The Court does not reach the issue of whether Memorex failed to mitigate its damages or whether the $135,000 settlement amount alleged to have been paid by Memorex in the *Lexar* matter is properly recoverable as damages.

**IT IS SO ORDERED.**

DATED: _April 8, 2006_

_____
JUDGE OF THE SUPERIOR COURT

Proposed Phase One Trial Statement of Decision

Memorex v. C-One, et al.
Case No. RG03-118916

00190

1

2

**Certificate of Service**
*(California Code of Civil Procedure §§ 1013a & 2015.5)*

3    I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party within the action. My address is 4322 Wilshire Boulevard, Suite 200, Los Angeles, CA 90010. On March 11, 2008 served the foregoing document(s), described as follows, on all interested parties in this action by placing a true copy thereof

4

5    Title of Document:    **REQUEST FOR JUDICIAL NOTICE**

6    Case Number:    BC359710

7    SEE ATTACHED SERVICE LIST

8    ☐    PERSONAL DELIVERY: On the above date I caused the above described document(s) to be personally hand delivered to the addressee(s)

9

10   ☐    FACSIMILE: On the above date, I caused the above-described document(s) to be sent to the addressee(s) via the facsimile number on the attached service list.

11   ☐    FEDERAL EXPRESS: On the above date I caused the above-described document(s) to be sent to the addressee(s) via Federal Express with the shipping charges fully prepaid, for ☐ Overnight ☐ Priority Overnight Delivery

12

13   ☒    REGULAR MAIL:

14       ☐    I deposited such envelope(s) in the United States Mail at Los Angeles, California with the postage thereon fully prepaid.

15

16       ☒    I caused such envelope(s) to be deposited in the mail at Los Angeles, California with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on the same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in this affidavit.

17

18

19

20   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on March 11, 2008 at Los Angeles, California.

21

22                                Melanie Ocubillo

23

24

25

26

27

28

00191

From:Matthews & Partners          323 930 6893          03/11/2008 12:25    #720 P.070/077

Service List

Counsel for Plaintiffs

1

2

3  Jerry Hauser
   Phillips, Greenberg & Hauser, L.L.P.
   Four Embarcadero Center, 39th Floor
4  San Francisco, CA 94111
   Facsimile: (415) 398-5786
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00192

# Exhibit L

00193

1 | PHILLIPS, GREENBERG & HAUSER, L.L.P.
JERRY R. HAUSER, SBN. 111568
2 | ERIK C. VAN HESPEN, SBN. 214774
Four Embarcadero Center, 39th Floor
3 | San Francisco, California 94111
Telephone:    (415) 981-7777
4 | Facsimile:    (415) 398-5786

5 | Attorneys for Defendant,
MOUNT & STOELKER, A PROFESSIONAL CORPORATION

6

7

8 | IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | IN AND FOR THE COUNTY OF SANTA CLARA

10

11 | MOUNT & STOELKER, A PROFESSIONAL        CASE NO.: 108 CV 105975
CORPORATION,
12
Plaintiffs,                              **REPLY TO DEFENDANTS'**
13                                          **OPPOSITION TO MOUNT &**
                                           **STOELKER'S MOTION FOR**
14      -v-                                 **PRELIMINARY INJUNCTION**

15 | C-ONE TECHNOLOGY, A TAIWANESE
CORPORATION; PRETEC ELECTRONICS        Date:    March 25, 2008
CORPORATION, A CALIFORNIA              Time:    9:00 am
16 | CORPORATION; INTERNATIONAL           Dept.:   5
CENTER FOR DISPUTE RESOLUTION, A
17 | DIVISION OF THE AMERICAN
ARBITRATION ASSOCIATION; AND
18 | DOES 1 through 50 inclusive,

19      Defendants.
_____/
20

21 | **I.    INTRODUCTION**

22 |       The opposition papers of the defendants C-One Technology ("C-One") and Pretec Electronics

23 | ("Pretec") contain numerous contradictions, but the admissions set forth in these pleadings dictate

24 | that this court must grant the preliminary injunction. These admissions are:

25 |       1.    C-One has no agreement with Mount & Stoelker for the arbitration of any disputes

26 |             with regard to legal services that Mount & Stoelker performed for C-One;

27 |       2.    C-One initiated the C-One Arbitration Proceeding in Santa Clara, California; and

28 |       3.    Pretec did not initial the arbitration clause in the fee agreement with Mount & Stoelker

1

1   and did not believe that said clause was included in the agreement.

2       Based on the above admissions, only the Court and not the arbitrator has jurisdiction to

3   determine arbitrability of the claims asserted in the C-One Arbitration. Whether or not the arbitration

4   clause was included in the Mount & Stoelker/Pretec fee agreement is essentially irrelevant, but

5   Pretec's admission that it did not initial the arbitration clause can only be construed as an elimination

6   of the arbitration provision from the agreement. At best, this is a disputed issue.

7       The defendants reliance on the United States Supreme Court decision in *Preston v. Ferrer,*

8   128 S. Ct. 978 (2008) is misplaced. The Federal Arbitration Act does not apply to the Mount &

9   Stoelker/Pretec Fee Agreement and federal law is the same as California law with regard to who

10   decides whether a non-signatory to the contract or even if an arbitration agreement exist, i.e. the

11   Court decides.

12      Pretec's claim that Mount & Stoelker is somehow estopped from asserting that no arbitration

13   agreement exists is absurd. Pretec's estopple claim is based on a tolling agreement between Mount &

14   Stoelker and C-One (Defendant's Exhibit D-4) wherein C-One dismissed an arbitration that it

15   initiated in June of 2007. Pretec was not a party in that June arbitration or a party to the tolling

16   agreement. Even so, the tolling agreement is not an arbitration agreement, C-One and Mount &

17   Stoelker preserved all their rights and the tolling agreement expired on September 26, 2007, months

18   before C-One initiated the arbitration proceeding at issue. The fact that Mount & Stoelker objected to

19   the jurisdiction of the arbitrator in the C-One Arbitration proceedings does not mean it waived any

20   rights to challenge the jurisdiction arbitrator in this Court.

21      Finally, C-One asserts that this Court has no jurisdiction over it. C-One makes this claim

22   despite the fact that it admits it entered into an agreement with Mount & Stoelker for the performance

23   of legal services in the Northern District of California and initiated an arbitration proceeding against

24   Mount & Stoelker with regard to these services in Santa Clara, California. These undisputed facts

25   clearly give this Court jurisdiction over C-One.

26   //

27   //                                                                              00195

28
                                                                                                            2

## II.    LEGAL ARGUMENT

### A.    Defendants' Admissions Establish That Only The Court Can Determine Whether The Disputes Are Subject To Arbitration

The primary issue before the court is which body, the superior court or the arbitrator, has jurisdiction to determine arbitrability of the claims at issue. The admission of Pretec and C-One that no contract agreement exists between C-One and Mount & Stoelker and the assertion that C-One is not bound by the Mount & Stoelker/Pretec fee agreement establishes as a matter of law that only this court has jurisdiction to determine arbitrability. For that matter, the Court of Appeal held that under these circumstances it would be an abuse of discretion for the court to decline to issue a preliminary injunction. *American Builders v. William Au-Yang* (1990) 226 Cal. App. 3d 170, 179; *Valley Case Work, Inc. v. Comfort Construction* (1999) 76 Cal. App. 4th 1013, 1019.

> We conclude the trial court erred in holding the arbitrator had jurisdiction to determine the non-signatory's status. Whether the non-signatory was a undisclosed principle so as to be properly joined in the arbitration was a question of fact for the trial court in the first instance. The order [denying the request for preliminary injunction] therefore is reversed and the matter is remanded. *American Builders*, supra, 226 Cal. App. 3d at 173...

> Therefore, not withstanding an arbitrator's broad authority to resolve questions presented by a controversy, an arbitrator has no power to determine the rights and obligations of one who is not a party to the arbitration agreement. [citations omitted] The question of whether a non-signatory is a party to the arbitration agreement is one for the trial court in the first instance. *Id.* at 179.

The fact that Pretec asserts that it has an arbitration agreement with Mount & Stoelker is irrelevant to this court's jurisdiction. This is the exact situation if *Valley Case Work, Inc.*, supra, 76 Cal. App. 4th at 1013, which also involved an arbitration before the American Arbitration Association. In that case, arbitration was sought by a party to the arbitration agreement and a non-signatory to said agreement. The court held it was an abuse of discretion for the trial court not to grant the preliminary injunction enjoining the arbitration because only the trial court has jurisdiction to determine whether or not a non-signatory to the arbitration agreement can be a party to the arbitration proceeding. *Id.* at 1016-1017.

In their opposition papers, the Pretec ignores California law, but instead argues that under the holding of the United States Supreme Court in *Preston v. Ferrer*, 128 S.Ct. 978 (2008), California law

3

1  does not apply. *Preston* involved a contract between Ferrer, a Florida television judge, and Preston, a

2  California entertainment attorney, which required arbitration of any dispute with regard to the contract in

3  accordance with the American Arbitration Association rules. Preston sought to assert a fee claim in

4  arbitration and Ferrer filed an action to enjoin the arbitration on the grounds that the contract was invalid

5  and unenforceable under the California Talent Agencies Act ("TAA") because Preston acted as a talent

6  agent without a required license. The issue in *Preston* was whether or not the California labor

7  commissioner has exclusive jurisdiction over the determination of whether the contract was invalid

8  under the TAA. The Supreme Court held that since the Federal Arbitration Act ("FAA") controls the

9  contract at issue, the FAA supersedes state law lodging primary jurisdiction in another forum.

10        In *Preston* there was no issue of whether FAA applies because the contract was between parties

11  from different states and therefore came within the definition of "commerce" under the act. By its terms

12  the FAA applies to contracts evidencing a "transaction involving commerce." 9 *USCS* § 2. Commerce

13  under the FAA means "commerce among the several States or with foreign nations." 9 *USCS* § 1. The

14  contract at issue here is between two California parties for the performance of legal services in

15  California. Therefore, the FAA does not apply.

16        Even if the FAA applies, Federal law is consistent with California law that the court decides if a

17  non-signatory to the arbitration contract can enforce it or if the arbitration contract exists at all. The issue

18  in *Preston* was not whether an arbitration clause existed, but whether or not the entire agreement was

19  invalid and unenforceable under California law. There ws no question that an arbitration clause existed

20  between the parties. The Supreme Court clearly distinguished the case from other cases in which the

21  dispute involved a stranger to the arbitration agreement, i.e. a non-signatory, and in such situations, the

22  California court did have authority to issue a stay of the arbitration. *Id.* at 929. "Federal law with regard

23  to arbitrations does not control parties not bound by the arbitration agreement." *Id.* In other cases the

24  Supreme Court has made this position clear.

25        This Court has determined that "arbitration is a matter of contract and a
      party cannot be required to submit to arbitration any dispute which he
26    has not agreed so to submit." *Steelworkers* v. *Warrior & Gulf Nav. Co.*,
      363 U.S. 574, 582, 4 L. Ed. 2d 1409, 80 S. Ct. 1347 (1960); see also
27    *First Options*, 514 U.S. at 942-943. Although the Court has also long
      recognized and enforced a "liberal federal policy favoring arbitration
28    agreements," *Moses H. Cone Memorial Hospital* v. *Mercury Constr.*

4

*Corp.*, 460 U.S. 1, 24-25, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983), it
has made clear that there is an exception to this policy: The question
whether the parties have submitted a particular dispute to arbitration,
*i.e.*, the *"question of arbitrability,"* is "an issue for judicial
determination unless the parties clearly and unmistakably provide
otherwise." *AT&T Technologies, Inc.* v. *Communications Workers*, 475
U.S. 643, 649, 89 L. Ed. 2d 648, 106 S. Ct. 1415 (1986) (emphasis
added); *First Options*, 514 U.S. at 944. We must decide here whether
application of the NASD time limit provision falls into the scope of this
last-mentioned interpretive rule.

Linguistically speaking, one might call any potentially dispositive
gateway question a "question of arbitrability," for its answer will
determine whether the underlying controversy will proceed to
arbitration on the merits. The Court's case law, however, makes clear
that, for purposes of applying the interpretive rule, the phrase "question
of arbitrability" has a far more limited scope. See 514 U.S. at 942. The
Court has found the phrase applicable in the kind of narrow
circumstance where contracting parties would likely have expected a
court to have decided the gateway matter, where they are not likely to
have thought that they had agreed that an arbitrator would do so, and,
consequently, where reference of the gateway dispute to the court
avoids the risk of forcing parties to arbitrate a matter that they may well
not have agreed to arbitrate.

Thus, a gateway dispute about whether the parties are bound by a given
arbitration clause raises a "question of arbitrability" for a court to
decide. See *id.*, at 943-946 (holding that a court should decide
whether the arbitration contract bound parties who did not sign
the agreement); *John Wiley & Sons, Inc.* v. *Livingston*, 376 U.S. 543,
546-547, 11 L. Ed. 2d 898, 84 S. Ct. 909 (1964) (holding that a court
should decide whether an arbitration agreement survived a corporate
merger and bound the resulting corporation). Similarly, a disagreement
about whether an arbitration clause in a concededly binding contract
applies to a particular type of controversy is for the court. See, *e.g.*,
*AT&T Technologies, supra*, 475 U.S. 643, at 651-652 (holding that a
court should decide whether a labor-management layoff controversy
falls within the arbitration clause of a collective-bargaining agreement);
*Atkinson* v. *Sinclair Refining Co.*, 370 U.S. 238, 241-243, 8 L. Ed. 2d
462, 82 S. Ct. 1318 (1962) (holding that a court should decide whether
a clause providing for arbitration of various "grievances" covers claims
for damages for breach of a no-strike agreement). *Howsam v. Dean
Witter Reynolds*, 537 U.S. 79, 83-84 (2002). Emphasis added.

**B.    No Arbitration Agreement Exists Between Mount & Stoelker and Pretec**

In its opposition, Pretec admits that the existence of an arbitration agreement is controlled by

contract law. It is horn book law that a contract requires mutual consent, which is codified in California

statutory law. *Civil Code* §§ 1550 and 1565. An offer without acceptance simply does not create a

contract. The manner of acceptance may be controlled by the offer and the failure to comply with the

prescribed method means that a contract does not come into being. *Witkin, Summary of California Law,*

5

1    *10th Edition*, Contracts, Section 189, Page 223-224.

2         In the Mount & Stoelker/Pretec fee agreement it clearly states that if Pretec wanted to include

3    an arbitration clause in the agreement it needed to initial the appropriate paragraph. Pretec's failure to

4    initial the paragraph is a rejection of the arbitration clause.

5         **C.    Mount & Stoelker Is Not Estopped To Assert That There Is No Agreement For**
          **Arbitration**

6

7         In its opposition, Pretec asserts that Mount & Stoelker is estopped from asserting the existence of

8    an arbitration agreement because in June of 2007 C-One initiated an arbitration proceeding against

9    Mount & Stoelker. Mount & Stoelker and C-One then entered into a ninety (90) day tolling agreement to

10   see if they could settle the case outside of arbitration. Pursuant to that agreement, C-One dismissed the

11   June 2007 arbitration. This tolling agreement is irrelevant to the issues before this court. First, this was

12   an agreement between Mount & Stoelker and C-One (Pretec was not a party to the June 2007

13   arbitration.) Second, the tolling agreement expired on September 26, 2007 and C-One initiated the of the

14   second arbitration proceeding , which is the arbitration proceeding at issue, on December 24, 2007; on

15   February 15, 2008 C-One amended its claim to add Pretec as a claimant. Third, Mount & Stoelker never

16   submitted to the jurisdiction of the arbitrator in the June 2007 arbitration. By entering into the tolling

17   agreement, Mount & Stoelker did not waive anything except to toll the limitations period for ninety (90)

18   days.

19        Pretec also asserts that since it has paid arbitration fees the court should allow the arbitration to

20   go forward. This argument is ridiculous, because it was C-One and not Pretec that paid the arbitration

21   fees. The fact that the parties attempted to reach a settlement in 2007 outside of arbitration has no

22   bearing on this court's jurisdiction to determine arbitrability of the claims at issue.

23        **D.    This Court Has Jurisdiction Over C-One.**

24        In arguing that this court has no jurisdiction over it, C-One completely disregards two

25   fundamental and undisputed facts. First, there is no question that C-One retained Mount & Stoelker to

26   represent it in legal actions filed in the Northern District of California and in the Alameda Superior

27   Court. The fact that C-One claims that this was not pursuant to a written contract is irrelevant for

28   purposes of jurisdiction. In *Newman v. VRL International* (2005) 129 Cal. App. 4th 482, the appellant

6

1  | law firm filed an action against an out of state client seeking fees for services rendered in the defending a

2  | personal injury suit in California. In overturning the trial court's order granting the client's motion to

3  | quash, the Court of Appeal held that specific jurisdiction existed:

4  |        "No California case has considered whether retaining an attorney in
        another state gives that state personal jurisdiction in subsequent
5  |        disputes over attorneys' fees. Most reported cases from other states
        uphold the exercise of personal jurisdiction. [Citations.] We reach the
6  |        same conclusion here." (Vorys, Sater, Seymour & Pease v. Ryan,
        supra, 154 Cal. App. 3d at pp. 93–95, italics added.) ...

7  |        First, respondent authorized the retention of appellant to represent it in
8  |        the Cuenllas action [A California action]. ... [Respondent] elected to
        seek relief in the California courts, authorized the retention of
9  |        appellant, and cooperated with appellant in obtaining the relief sought.

10 |        Second, appellant's claim is for attorney fees in connection with
        appellant's successful representation of respondent in the Cuenllas
11 |        action. It thus arises out of and results from respondent's forum-related
        activity.

12 |
        Third, it is reasonable to recognize limited jurisdiction under the
13 |        circumstances. ...

14 |        Appellant is a California law firm which provided valuable legal
        assistance to respondent. It would be unjust to allow an out-of-state
15 |        corporation, even one which does not have adequate contacts with the
        state for establishment of general jurisdiction, to authorize retention of
16 |        the California firm and then avoid paying the firm fees it claims due for
        activities undertaken on the corporation's behalf in California.

17 |
18 |        C-One initiated the arbitration in California with regard to a dispute over legal services

19 | performed by Mount & Stoelker in California. These forum related activities are sufficient to confer

20 | jurisdiction, and for that matter the only forum that has jurisdiction is California.

       **III.    CONCLUSION**

21 |        For the reasons set forth above, Mount & Stoelker respectfully requests that this court issue a

22 | preliminary injunction enjoining the C-One arbitration from going forward until this matter has been

23 | resolved.

24 | DATE: March 17, 2008                    PHILLIPS, GREENBERG & HAUSER, L.L.P.

25 |
26 |
27 |                                          By: _____
                                              JERRY R. HAUSER
28 |

                                                                                     7

1

**PROOF OF SERVICE**

2

*C-One v. Mount & Stoelker*

3

4

5

6

The undersigned declares:  I am a resident of the United States and am employed in the City and County of San Francisco, State of California; I am over the age of eighteen years and not a party to the within action; my business address is Phillips, Greenberg & Hauser, LLP, Four Embarcadero Center, 39th Floor, San Francisco, California 94111.  On the date indicated below, I served the following documents:

7

**REPLY TO DEFENDANTS' OPPOSITION TO MOUNT & STOELKER'S MOTION FOR PRELIMINARY INJUNCTION**

8

9

**DECLARATION OF JERRY R. HAUSER IN SUPPORT IN SUPPORT OF REPLY TO DEFENDANTS' OPPOSITION TO MOUNT & STOELKER'S MOTION FOR PRELIMINARY INJUNCTION**

10

11

by placing a true copy thereof enclosed in a sealed envelope and served in the manner described below to the interested parties herein and addressed to:

12

Leodis Matthews

13

Matthews & Partners

4322 Wilshire Blvd., Suite 200

14

Los Angeles, CA 95110

15

16

17

18

19

20

X___  **BY FIRST CLASS MAIL:** By placing a true copy of each document listed above in (an) envelope(s) addressed as shown above, sealing the envelope(s) and placing them for collection and mailing, following ordinary business practices, at my employer's office on the date below written.  to be deposited in the mail at my business address, I am readily familiar with this firm's business practice for collection and processing of correspondence for mailing with the United States Postal Service.  In the ordinary course of business such correspondence is deposited with the United States Postal Service at San Francisco, California, with first-class postage fully prepaid thereon, on the same day as I place it for collection and mailing.

21

22

I declare under penalty of perjury under the laws of the State of California that the forgoing is true and correct.  Executed on March 17, 2008 at San Francisco, California.

23

24

Valerie Vitullo

25

26

27

28

00201

1 | PHILLIPS, GREENBERG & HAUSER, L.L.P.
JERRY R. HAUSER, SBN. 111568
2 | ERIK C. VAN HESPEN, SBN. 214774
Four Embarcadero Center, 39th Floor
3 | San Francisco, California 94111
Telephone:   (415) 981-7777
4 | Facsimile:   (415) 398-5786

5 | Attorneys for Defendant,
MOUNT & STOELKER, A PROFESSIONAL CORPORATION

6 |

7 |

8 |               IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 |                  IN AND FOR THE COUNTY OF SANTA CLARA

10 |

11 | MOUNT & STOELKER, A PROFESSIONAL          CASE NO.: 108 CV 105975
CORPORATION,
12 |
Plaintiffs,                       REPLY TO DEFENDANTS'
13 |                                           OPPOSITION TO MOUNT &
          -v-                                 STOELKER'S MOTION FOR
14 |                                           PRELIMINARY INJUNCTION
C-ONE TECHNOLOGY, A TAIWANESE
15 | CORPORATION; PRETEC ELECTRONICS          Date:    March 25, 2008
CORPORATION, A CALIFORNIA                 Time:    9:00 am
16 | CORPORATION; INTERNATIONAL              Dept.:   5
CENTER FOR DISPUTE RESOLUTION, A
17 | DIVISION OF THE AMERICAN
ARBITRATION ASSOCIATION; AND
18 | DOES 1 through 50 inclusive,

19 |                Defendants.
                                         /
20 |

21 |                        I.     INTRODUCTION

22 |       The opposition papers of the defendants C-One Technology ("C-One") and Pretec Electronics

23 | ("Pretec") contain numerous contradictions, but the admissions set forth in these pleadings dictate

24 | that this court must grant the preliminary injunction. These admissions are:

25 |       1.     C-One has no agreement with Mount & Stoelker for the arbitration of any disputes

26 |              with regard to legal services that Mount & Stoelker performed for C-One;

27 |       2.     C-One initiated the C-One Arbitration Proceeding in Santa Clara, California; and

28 |       3.     Pretec did not initial the arbitration clause in the fee agreement with Mount & Stoelker

                                                                                                1

1   and did not believe that said clause was included in the agreement.

2       Based on the above admissions, only the Court and not the arbitrator has jurisdiction to

3   determine arbitrability of the claims asserted in the C-One Arbitration. Whether or not the arbitration

4   clause was included in the Mount & Stoelker/Pretec fee agreement is essentially irrelevant, but

5   Pretec's admission that it did not initial the arbitration clause can only be construed as an elimination

6   of the arbitration provision from the agreement. At best, this is a disputed issue.

7       The defendants reliance on the United States Supreme Court decision in *Preston v. Ferrer*,

8   128 S. Ct. 978 (2008) is misplaced. The Federal Arbitration Act does not apply to the Mount &

9   Stoelker/Pretec Fee Agreement and federal law is the same as California law with regard to who

10  decides whether a non-signatory to the contract or even if an arbitration agreement exist, i.e. the

11  Court decides.

12      Pretec's claim that Mount & Stoelker is somehow estopped from asserting that no arbitration

13  agreement exists is absurd. Pretec's estopple claim is based on a tolling agreement between Mount &

14  Stoelker and C-One (Defendant's Exhibit D-4) wherein C-One dismissed an arbitration that it

15  initiated in June of 2007. Pretec was not a party in that June arbitration or a party to the tolling

16  agreement. Even so, the tolling agreement is not an arbitration agreement, C-One and Mount &

17  Stoelker preserved all their rights and the tolling agreement expired on September 26, 2007, months

18  before C-One initiated the arbitration proceeding at issue. The fact that Mount & Stoelker objected to

19  the jurisdiction of the arbitrator in the C-One Arbitration proceedings does not mean it waived any

20  rights to challenge the jurisdiction arbitrator in this Court.

21      Finally, C-One asserts that this Court has no jurisdiction over it. C-One makes this claim

22  despite the fact that it admits it entered into an agreement with Mount & Stoelker for the performance

23  of legal services in the Northern District of California and initiated an arbitration proceeding against

24  Mount & Stoelker with regard to these services in Santa Clara, California. These undisputed facts

25  clearly give this Court jurisdiction over C-One.

26  //

27  //                                                                      00203

28

2

## II.    LEGAL ARGUMENT

### A.    Defendants' Admissions Establish That Only The Court Can Determine Whether The Disputes Are Subject To Arbitration

The primary issue before the court is which body, the superior court or the arbitrator, has jurisdiction to determine arbitrability of the claims at issue. The admission of Pretec and C-One that no contract agreement exists between C-One and Mount & Stoelker and the assertion that C-One is not bound by the Mount & Stoelker/Pretec fee agreement establishes as a matter of law that only this court has jurisdiction to determine arbitrability. For that matter, the Court of Appeal held that under these circumstances it would be an abuse of discretion for the court to decline to issue a preliminary injunction. *American Builders v. William Au-Yang* (1990) 226 Cal. App. 3d 170, 179; *Valley Case Work, Inc. v. Comfort Construction* (1999) 76 Cal. App. 4th 1013, 1019.

> We conclude the trial court erred in holding the arbitrator had jurisdiction to determine the non-signatory's status. Whether the non-signatory was a undisclosed principle so as to be properly joined in the arbitration was a question of fact for the trial court in the first instance. The order [denying the request for preliminary injunction] therefore is reversed and the matter is remanded. *American Builders*, supra, 226 Cal. App. 3d at 173...

> Therefore, not withstanding an arbitrator's broad authority to resolve questions presented by a controversy, an arbitrator has no power to determine the rights and obligations of one who is not a party to the arbitration agreement. [citations omitted] The question of whether a non-signatory is a party to the arbitration agreement is one for the trial court in the first instance. *Id.* at 179.

The fact that Pretec asserts that it has an arbitration agreement with Mount & Stoelker is irrelevant to this court's jurisdiction. This is the exact situation if *Valley Case Work, Inc.*, supra, 76 Cal. App. 4th at 1013, which also involved an arbitration before the American Arbitration Association. In that case, arbitration was sought by a party to the arbitration agreement and a non-signatory to said agreement. The court held it was an abuse of discretion for the trial court not to grant the preliminary injunction enjoining the arbitration because only the trial court has jurisdiction to determine whether or not a non-signatory to the arbitration agreement can be a party to the arbitration proceeding. *Id.* at 1016-1017.

In their opposition papers, the Pretec ignores California law, but instead argues that under the holding of the United States Supreme Court in *Preston v. Ferrer*, 128 S.Ct. 978 (2008), California law

1  does not apply. *Preston* involved a contract between Ferrer, a Florida television judge, and Preston, a

2  California entertainment attorney, which required arbitration of any dispute with regard to the contract in

3  accordance with the American Arbitration Association rules.  Preston sought to assert a fee claim in

4  arbitration and Ferrer filed an action to enjoin the arbitration on the grounds that the contract was invalid

5  and unenforceable under the California Talent Agencies Act ("TAA") because Preston acted as a talent

6  agent without a required license. The issue in *Preston* was whether or not the California labor

7  commissioner has exclusive jurisdiction over the determination of whether the contract was invalid

8  under the TAA. The Supreme Court held that since the Federal Arbitration Act ("FAA") controls the

9  contract at issue, the FAA supersedes state law lodging primary jurisdiction in another forum.

10      In *Preston* there was no issue of whether FAA applies because the contract was between parties

11  from different states and therefore came within the definition of "commerce" under the act. By its terms

12  the FAA applies to contracts evidencing a "transaction involving commerce." 9 *USCS* § 2. Commerce

13  under the FAA means "commerce among the several States or with foreign nations." 9 *USCS* § 1. The

14  contract at issue here is between two California parties for the performance of legal services in

15  California. Therefore, the FAA does not apply.

16      Even if the FAA applies, Federal law is consistent with California law that the court decides if a

17  non-signatory to the arbitration contract can enforce it or if the arbitration contract exists at all. The issue

18  in *Preston* was not whether an arbitration clause existed, but whether or not the entire agreement was

19  invalid and unenforceable under California law. There ws no question that an arbitration clause existed

20  between the parties. The Supreme Court clearly distinguished the case from other cases in which the

21  dispute involved a stranger to the arbitration agreement, i.e. a non-signatory, and in such situations, the

22  California court did have authority to issue a stay of the arbitration. *Id.* at 929. "Federal law with regard

23  to arbitrations does not control parties not bound by the arbitration agreement." *Id.* In other cases the

24  Supreme Court has made this position clear.

25          This Court has determined that "arbitration is a matter of contract and a
             party cannot be required  to submit to arbitration any dispute which he

26          has not agreed so to submit." *Steelworkers* v. *Warrior & Gulf Nav. Co.*,
             363 U.S. 574, 582, 4 L. Ed. 2d 1409, 80 S. Ct. 1347 (1960); see also

27          *First Options*, 514 U.S. at 942-943. Although the Court has also long
             recognized and enforced a "liberal federal policy favoring arbitration

28          agreements," *Moses H. Cone Memorial Hospital* v. *Mercury Constr.*

*Corp.,* 460 U.S. 1, 24-25, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983), it has made clear that there is an exception to this policy: The question whether the parties have submitted a particular dispute to arbitration, *i.e.,* the *"question of arbitrability,"* is "an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *AT&T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 649, 89 L. Ed. 2d 648, 106 S. Ct. 1415 (1986) (emphasis added); *First Options,* 514 U.S. at 944. We must decide here whether application of the NASD time limit provision falls into the scope of this last-mentioned interpretive rule.

Linguistically speaking, one might call any potentially dispositive gateway question a "question of arbitrability," for its answer will determine whether the underlying controversy will proceed to arbitration on the merits. The Court's case law, however, makes clear that, for purposes of applying the interpretive rule, the phrase "question of arbitrability" has a far more limited scope. See 514 U.S. at 942. The Court has found the phrase applicable in the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.

Thus, a gateway dispute about whether the parties are bound by a given arbitration clause raises a "question of arbitrability" for a court to decide. See *Id.,* at 943-946 (holding that a court should decide whether the arbitration contract bound parties who did not sign the agreement); *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 546-547, 11 L. Ed. 2d 898, 84 S. Ct. 909 (1964) (holding that a court should decide whether an arbitration agreement survived a corporate merger and bound the resulting corporation). Similarly, a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court. See, *e.g., AT&T Technologies, supra,* 475 U.S. 643, at 651-652 (holding that a court should decide whether a labor-management layoff controversy falls within the arbitration clause of a collective-bargaining agreement); *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241-243, 8 L. Ed. 2d 462, 82 S. Ct. 1318 (1962) (holding that a court should decide whether a clause providing for arbitration of various "grievances" covers claims for damages for breach of a no-strike agreement). *Howsam v. Dean Witter Reynolds,* 537 U.S. 79, 83-84 (2002). Emphasis added.

**B.     No Arbitration Agreement Exists Between Mount & Stoelker and Pretec**

In its opposition, Pretec admits that the existence of an arbitration agreement is controlled by contract law. It is horn book law that a contract requires mutual consent, which is codified in California statutory law. *Civil Code* §§ 1550 and 1565. An offer without acceptance simply does not create a contract. The manner of acceptance may be controlled by the offer and the failure to comply with the prescribed method means that a contract does not come into being. *Witkin, Summary of California Law,*

5

1 | *10th Edition*, Contracts, Section 189, Page 223-224.

2 |      In the Mount & Stoelker/Pretec fee agreement it clearly states that if Pretec wanted to include

3 | an arbitration clause in the agreement it needed to initial the appropriate paragraph. Pretec's failure to

4 | initial the paragraph is a rejection of the arbitration clause.

5 |     **C.**     **Mount & Stoelker Is Not Estopped To Assert That There Is No Agreement For**

6 |                **Arbitration**

7 |      In its opposition, Pretec asserts that Mount & Stoelker is estopped from asserting the existence of

8 | an arbitration agreement because in June of 2007 C-One initiated an arbitration proceeding against

9 | Mount & Stoelker. Mount & Stoelker and C-One then entered into a ninety (90) day tolling agreement to

10 | see if they could settle the case outside of arbitration. Pursuant to that agreement, C-One dismissed the

11 | June 2007 arbitration. This tolling agreement is irrelevant to the issues before this court. First, this was

12 | an agreement between Mount & Stoelker and C-One (Pretec was not a party to the June 2007

13 | arbitration.) Second, the tolling agreement expired on September 26, 2007 and C-One initiated the of the

14 | second arbitration proceeding , which is the arbitration proceeding at issue, on December 24, 2007; on

15 | February 15, 2008 C-One amended its claim to add Pretec as a claimant. Third, Mount & Stoelker never

16 | submitted to the jurisdiction of the arbitrator in the June 2007 arbitration. By entering into the tolling

17 | agreement, Mount & Stoelker did not waive anything except to toll the limitations period for ninety (90)

18 | days.

19 |      Pretec also asserts that since it has paid arbitration fees the court should allow the arbitration to

20 | go forward. This argument is ridiculous, because it was C-One and not Pretec that paid the arbitration

21 | fees. The fact that the parties attempted to reach a settlement in 2007 outside of arbitration has no

22 | bearing on this court's jurisdiction to determine arbitrability of the claims at issue.

23 |     **D.**     **This Court Has Jurisdiction Over C-One.**

24 |      In arguing that this court has no jurisdiction over it, C-One completely disregards two

25 | fundamental and undisputed facts. First, there is no question that C-One retained Mount & Stoelker to

26 | represent it in legal actions filed in the Northern District of California and in the Alameda Superior

27 | Court. The fact that C-One claims that this was not pursuant to a written contract is irrelevant for

28 | purposes of jurisdiction. In *Newman v. VRL International* (2005) 129 Cal. App. 4th 482, the appellant

6

1  law firm filed an action against an out of state client seeking fees for services rendered in the defending a

2  personal injury suit in California. In overturning the trial court's order granting the client's motion to

3  quash, the Court of Appeal held that specific jurisdiction existed:

> "No California case has considered whether retaining an attorney in
> another state gives that state personal jurisdiction in subsequent
> disputes over attorneys' fees. Most reported cases from other states
> uphold the exercise of personal jurisdiction. [Citations.] We reach the
> same conclusion here." (Vorys, Sater, Seymour & Pease v. Ryan,
> supra, 154 Cal. App. 3d at pp. 93–95, italics added.) ...

> First, respondent authorized the retention of appellant to represent it in
> the Cuenllas action [A California action]. ... [Respondent] elected to
> seek relief in the California courts, authorized the retention of
> appellant, and cooperated with appellant in obtaining the relief sought.

> Second, appellant's claim is for attorney fees in connection with
> appellant's successful representation of respondent in the Cuenllas
> action. It thus arises out of and results from respondent's forum-related
> activity.

> Third, it is reasonable to recognize limited jurisdiction under the
> circumstances. ...

> Appellant is a California law firm which provided valuable legal
> assistance to respondent. It would be unjust to allow an out-of-state
> corporation, even one which does not have adequate contacts with the
> state for establishment of general jurisdiction, to authorize retention of
> the California firm and then avoid paying the firm fees it claims due for
> activities undertaken on the corporation's behalf in California.

C-One initiated the arbitration in California with regard to a dispute over legal services

performed by Mount & Stoelker in California. These forum related activities are sufficient to confer

jurisdiction, and for that matter the only forum that has jurisdiction is California.

## III.    CONCLUSION

For the reasons set forth above, Mount & Stoelker respectfully requests that this court issue a

preliminary injunction enjoining the C-One arbitration from going forward until this matter has been

resolved.

DATE: March 17, 2008                    PHILLIPS, GREENBERG & HAUSER, L.L.P.


By: _____
        JERRY R. HAUSER

7

## PROOF OF SERVICE

### *C-One v. Mount & Stoelker*

The undersigned declares:  I am a resident of the United States and am employed in the City and County of San Francisco, State of California; I am over the age of eighteen years and not a party to the within action; my business address is Phillips, Greenberg & Hauser, LLP, Four Embarcadero Center, 39th Floor, San Francisco, California 94111.  On the date indicated below, I served the following documents:

**REPLY TO DEFENDANTS' OPPOSITION TO MOUNT & STOELKER'S MOTION FOR PRELIMINARY INJUNCTION**

**DECLARATION OF JERRY R. HAUSER IN SUPPORT IN SUPPORT OF REPLY TO DEFENDANTS' OPPOSITION TO MOUNT & STOELKER'S MOTION FOR PRELIMINARY INJUNCTION**

by placing a true copy thereof enclosed in a sealed envelope and served in the manner described below to the interested parties herein and addressed to:

Leodis Matthews
Matthews & Partners
4322 Wilshire Blvd., Suite 200
Los Angeles, CA 95110

X     **BY FIRST CLASS MAIL:**  By placing a true copy of each document listed above in (an) envelope(s) addressed as shown above, sealing the envelope(s) and placing them for collection and mailing, following ordinary business practices, at my employer's office on the date below written.  to be deposited in the mail at my business address, I am readily familiar with this firm's business practice for collection and processing of correspondence for mailing with the United States Postal Service.  In the ordinary course of business such correspondence is deposited with the United States Postal Service at San Francisco, California, with first-class postage fully prepaid thereon, on the same day as I place it for collection and mailing.

I declare under penalty of perjury under the laws of the State of California that the forgoing is true and correct.  Executed on March 17, 2008 at San Francisco, California.

_____
Valerie Vitullo

00209

# Exhibit M

00210

1  PHILLIPS, GREENBERG & HAUSER, L.L.P.
   JERRY R. HAUSER, SBN. 111568
2  ERIK C. VAN HESPEN, SBN. 214774
   Four Embarcadero Center, 39th Floor
3  San Francisco, California 94111
   Telephone:    (415) 981-7777
4  Facsimile:    (415) 398-5786

5  Attorneys for Defendant,
   MOUNT & STOELKER, A PROFESSIONAL CORPORATION
6

7

8                IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
9
                   IN AND FOR THE COUNTY OF SANTA CLARA
10

11  MOUNT & STOELKER, A PROFESSIONAL         CASE NO.: 108 CV 105975
    CORPORATION,
12
              Plaintiffs,                    NOTICE OF ENTRY OF ORDER
13
              -v-
14
    C-ONE TECHNOLOGY, A TAIWANESE
15  CORPORATION; PRETEC ELECTRONICS
    CORPORATION, A CALIFORNIA
16  CORPORATION; INTERNATIONAL
    CENTER FOR DISPUTE RESOLUTION, A
17  DIVISION OF THE AMERICAN
    ARBITRATION ASSOCIATION; AND
18  DOES 1 through 50 inclusive,

19            Defendants.
                                    /
20
    TO PARTIES AND THEIR ATTORNEYS OF RECORD:
21
          PLEASE TAKE NOTICE that on March 26 2008, the Order Granting Motion for Preliminary
22
    Injunction, attached hereto as Exhibit A, was entered in the above-entitled Court.
23
    DATE: March 31, 2008                     PHILLIPS, GREENBERG & HAUSER, L.L.P.
24

25
                                             By:
26                                                JERRY R. HAUSER

27

28
                                                                        00211

# F I L E D

MAR 26 2008

KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of CA/County of Santa Clara
BY _____ DEPUTY
J. ALVAREZ

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SANTA CLARA

| | |
|---|---|
| MOUNT & STOELKER | Case No.    1-08-CV105975 |
| Plaintiff, | ORDER RE: MOTION FOR PRELIMINARY INJUNCTION |
| vs. | |
| C-ONE TECHNOLOGY, et al., | |
| Defendants. | |

The Motion for Preliminary Injunction filed by Plaintiff Mount & Stoelker came on for hearing before the Honorable Mary Jo Levinger on March 25, 2008 at 9:00 a.m, in Department 5. The matter having been submitted, the Court orders as follows:

The Court GRANTS the Motion for Preliminary Injunction. The injunction shall become effective upon the posting of the undertaking in the amount of $5,000.

Dated: March 26, 2008

Mary Jo Levinger
Judge of the Superior Court

00212

Exhibit ___A___

1

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
191 N. First Street
San Jose, CA 95113-1090

**FILED**

MAR 26 2008

KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of CA/County of Santa Clara
BY _____ DEPUTY

TO:   FILE COPY

RE:  Mount & Stoelker vs C-One Technology
Case Nbr: 1-08-CV-105975

PROOF OF SERVICE

Order Re: Motion for Preliminary Injunction

was delivered to the parties listed below in the above entitled case as set
forth in the sworn declaration below.

**Parties/Attorneys of Record:**

CC: Jerry R. Hauser , Phillips Greenberg & Hauser LLP
    Four Embarcadero Center, 39th Floor, San Francisco, CA 94111
    D P Sindicich , Matthews & Partners
    4322 Wilshire Blvd, Los Angeles, CA 90010-3792
    Leodis C Matthews , Matthews & Partners
    4322 Wilshire Blvd, Los Angeles, CA 90010-3792
    International Center For Dispute Resolution

If you, a party represented by you, or a witness to be called on behalf of that party need an accommodation under the American with
Disabilities Act, please contact the Court Administrator's office at (408)882-2700, or use the Court's TDD line, (408)882-2690 or
the Voice/TDD California Relay Service, (800)735-2922.

DECLARATION OF SERVICE BY MAIL: I declare that I served this notice by enclosing a true copy in a sealed envelope, addressed to each
person whose name is shown above, and by depositing the envelope with postage fully prepaid, in the United States Mail at
San Jose, CA on 03/26/08. KIRI TORRE, Chief Executive Officer/Clerk by Jean Alvarez, Deputy

00213

1

## PROOF OF SERVICE

2

*C-One v. Mount & Stoelker*

3

4    The undersigned declares:  I am a resident of the United States and am employed in the City and County of San Francisco, State of California; I am over the age of eighteen years and not a party to the within action; my business address is Phillips, Greenberg & Hauser, LLP, Four Embarcadero Center, 39th Floor, San Francisco, California 94111.  On the date indicated below, I served the following documents:

5

6

7    **NOTICE OF ENTRY OF ORDER**

8    by placing a true copy thereof enclosed in a sealed envelope and served in the manner described below to the interested parties herein and addressed to:

9

10   Leodis Matthews                    Sasha Carbone
     Matthews & Partners                ICDR Senior Case Manager
11   4322 Wilshire Blvd., Suite 200     International Centre for Dispute Resolution
     Los Angeles, CA 95110              1633 Broadway
12   (323) 930-5693                     New York NY 10019-6708
                                        (212) 716-5902
13

14   X___   **BY FIRST CLASS MAIL:**  By placing a true copy of each document listed above in (an) envelope(s) addressed as shown above, sealing the envelope(s) and placing them for collection and mailing, following ordinary business practices, at my employer's office on the date below written. to be deposited in the mail at my business address, I am readily familiar with this firm's business practice for collection and processing of correspondence for mailing with the United States Postal Service.  In the ordinary course of business such correspondence is deposited with the United States Postal Service at San Francisco, California, with first-class postage fully prepaid thereon, on the same day as I place it for collection and mailing.

15

16

17

18

19   I declare under penalty of perjury under the laws of the State of California that the forgoing is true and correct.  Executed on March 31, 2008 at San Francisco, California.

20

21

22                                    _____
                                          Valerie Vitullo
23

24

25

26

27

28

00214

# Exhibit N

00215

1  | PHILLIPS, GREENBERG & HAUSER, L.L.P.
   | JERRY R. HAUSER, SBN. 111568
2  | ERIK C. VAN HESPEN, SBN. 214774
   | Four Embarcadero Center, 39th Floor
3  | San Francisco, California 94111
   | Telephone:   (415) 981-7777
4  | Facsimile:   (415) 398-5786
5  | Attorneys for Defendant,
   | MOUNT & STOELKER, A PROFESSIONAL CORPORATION
6
7
8                    IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
9
                         IN AND FOR THE COUNTY OF SANTA CLARA
10
11 | MOUNT & STOELKER, A PROFESSIONAL            CASE NO.: 108 CV 105975
   | CORPORATION,
12
   |              Plaintiffs,                    NOTICE OF FILING OF
13 |                                             UNDERTAKING
   |       -v-
14
   | C-ONE TECHNOLOGY, A TAIWANESE
15 | CORPORATION; PRETEC ELECTRONICS
   | CORPORATION, A CALIFORNIA
16 | CORPORATION; INTERNATIONAL
   | CENTER FOR DISPUTE RESOLUTION, A
17 | DIVISION OF THE AMERICAN
   | ARBITRATION ASSOCIATION; AND
18 | DOES 1 through 50 inclusive,
19 |              Defendants.
   | _____/
20
   | TO PARTIES AND THEIR ATTORNEYS OF RECORD:
21
   |       PLEASE TAKE NOTICE that on April 1, 2008, the Undertaking Re: Preliminary Injunction,
22
   | attached hereto as Exhibit A, was entered in the above-entitled Court.
23
   | DATE: April 2, 2008                         PHILLIPS, GREENBERG & HAUSER, L.L.P.
24
25
   |                                             By: _____
26 |                                                 ERIK C. VAN HESPEN
27
28

00216

## American Contractors Indemnity Company

In The    **SUPERIOR**    Court 2008 APR -1 P 2: 59

County of    **SANTA CLARA**

State of California

| | |
|---|---|
| MOUNT & STOELKER, | ) M. Rosalez |
| PLAINTIFF, | ) |
| | ) |
| vs. | ) |
| C-ONE TECHNOLOGY, ET AL., | ) |
| DEFENDANTS. | ) Case No.  1-08-CV105975 |
| | ) |
| | ) |
| | ) |

UNDERTAKING UNDER
SECTION  **529**
C.C.P.
American Contractors Indemnity Company
9841 Airport Blvd., 9th Floor
Los Angeles, CA 90045

**WHEREAS,** the above named    **PLAINTIFF**

desires to give an undertaking for    **PRELIMINARY INJUNCTION**

as provided in Section    **529**    C.C.P.

**NOW, THEREFORE,** the undersigned Surety, does hereby obligate itself, jointly and severally, to

**C-ONE TECHNOLOGY, ET AL**

under said statutory obligations in the sum of    **FIVE THOUSAND & NO/100ths—————————**

————————————————    Dollars($  **5,000.00**    )

**IN WITNESS WHEREOF,** The corporate seal and name of the said Surety Company is hereto affixed and attested by

**Paul D. Fazzio**    who declares under penalty of perjury that he is its duly authorized Attorney-

in-Fact acting under an unrevoked power of attorney on file with the Clerk of the County in which above entitled Court is located.

Executed at    **SAN FRANCISCO**    ,    California on    **MARCH 31, 2008**

Bond No.   **1000792189**

The premium charge for this bond

is $   **100.00**

00217

AMERICAN CONTRACTORS INDEMNITY COMPANY

Paul D. Fazzio    Attorney-in Fact

**Exhibit** A

1

**PROOF OF SERVICE**

2

*Mount & Stoelker v. C-One*

3

The undersigned declares: I am a resident of the United States and am employed in the City

4

and County of San Francisco, State of California; I am over the age of eighteen years and not a party

to the within action; my business address is Phillips, Greenberg & Hauser, LLP, Four Embarcadero

5

Center, 39th Floor, San Francisco, California 94111. On the date indicated below, I served the

following documents:

6

7

**NOTICE OF FILING OF UNDERTAKING**

8

by placing a true copy thereof enclosed in a sealed envelope and served in the manner described

below to the interested parties herein and addressed to:

9

Leodis Matthews                          Sasha Carbone

10

Matthews & Partners                      ICDR Senior Case Manager

4322 Wilshire Blvd., Suite 200           International Centre for Dispute Resolution

11

Los Angeles, CA 95110                    1633 Broadway

New York NY 10019-6708

12

13

14

__X__    **BY FIRST CLASS MAIL:** By placing a true copy of each document listed above in

(an) envelope(s) addressed as shown above, sealing the envelope(s) and placing them for

15

collection and mailing, following ordinary business practices, at my employer's office on the

date below written. to be deposited in the mail at my business address, I am readily familiar

16

with this firm's business practice for collection and processing of correspondence for mailing

with the United States Postal Service. In the ordinary course of business such correspondence

17

is deposited with the United States Postal Service at San Francisco, California, with first-class

postage fully prepaid thereon, on the same day as I place it for collection and mailing.

18

19

__X__    **BY FACSIMILE TRANSMISSION:** By sending the documents listed above via

facsimile transmission to the fax number(s) shown above on the date below written. Pursuant

20

to California Rules of Court, rule 2008(e), I caused the machine to print a transmission record

of the transmission, a copy of which is attached to this declaration.

21

I declare under penalty of perjury under the laws of the State of California that the forgoing is

22

true and correct. Executed on April 2, 2008 at San Francisco, California.

23

24

_____

Valerie Vitullo

25

26

27

28

00218

# Exhibit O

00219

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Jerry R. Hauser                                       111568<br>Phillips, Greenberg & Hauser, LLP<br>4 Embarcadero Center, 39th Floor<br>San Francisco, CA 94111<br>TELEPHONE NO: (415) 981-7777    FAX NO. (Optional): (415) 398-5786<br>E-MAIL ADDRESS (Optional): jhauser@pghllp.com<br>ATTORNEY FOR (Name): Plaintiffs Mount & Stoelker | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Santa Clara
STREET ADDRESS: 191 N. First Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose, CA 95113
BRANCH NAME: Santa Clara

PLAINTIFF/PETITIONER: Mount & Stoelker, A Professional Corporation

DEFENDANT/RESPONDENT: C-One Technology, A Taiwanese Corporation

| CASE MANAGEMENT STATEMENT | | CASE NUMBER: |
|---|---|---|
| (Check one):  [X] UNLIMITED CASE<br>(Amount demanded exceeds $25,000) | [ ] LIMITED CASE<br>(Amount demanded is $25,000 or less) | 108 CV 105975 |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:
Date: July 8, 2008     Time: 2:15 PM   Dept.: 5      Div.:          Room:
Address of court (if different from the address above):

INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.

1. **Party or parties** (answer one):
   a. [X] This statement is submitted by party (name): Plaintiffs Mount & Stoelker
   b. [ ] This statement is submitted jointly by parties (names):

2. **Complaint and cross-complaint** (to be answered by plaintiffs and cross-complainants only)
   a. The complaint was filed on (date): February 15, 2008
   b. [ ] The cross-complaint, if any, was filed on (date):

3. **Service** (to be answered by plaintiffs and cross-complainants only)
   a. [ ] All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. [X] The following parties named in the complaint or cross-complaint
      (1) [X] have not been served (specify names and explain why not):
           C-One Technology, Pretec Electronics. See attached.
      (2) [ ] have been served but have not appeared and have not been dismissed (specify names):

      (3) [ ] have had a default entered against them (specify names):

   c. [ ] The following additional parties may be added (specify names, nature of involvement in case, and the date by which they may be served):

4. **Description of case**
   a. Type of case in   [X] complaint   [ ] cross-complaint     (describe, including causes of action):
      DECLARATORY RELIEF, TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTION

                                                                                              00220

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2007]

CASE MANAGEMENT STATEMENT

Page 1 of 4
Cal. Rules of Court,
rule 3.720-3.730
www.courtinfo.ca.gov

Mount & Stoelker

CM-110

| PLAINTIFF/PETITIONER: Mount & Stoelker, A Professiona | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: C-One Technology, A Taiwanese | 108 CV 105975 |

4. b. Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*
**Plaintiff filed an action against defendants to enjoin an arbitration from going forward with regard to a fee dispute and legal malpractice claims. On March 26, 2008, this court granted plantiff's motion for preliminary injunction and ordered the arbitration stayed. Both defendants C-One and Pretec appeared to oppose the preliminary injunction motion.**

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
   The party or parties request ☐ a jury trial ☒ a nonjury trial *(If more than one party, provide the name of each party requesting a jury trial)*:

6. **Trial date**
   a. ☐ The trial has been set for *(date)*:
   b. ☒ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain)*: **Defendants have not yet appeared.**
   c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability)*:

7. **Estimated length of trial**
   The party or parties estimate that the trial will take *(check one)*:
   a. ☒ days *(specify number)*: **3 days**
   b. ☐ hours (short causes) *(specify)*:

8. **Trial representation** *(to be answered for each party)*
   The party or parties will be represented at trial ☒ by the attorney or party listed in the caption ☐ by the following:
   a. Attorney:
   b. Firm:
   c. Address:
   d. Telephone number:
   e. Fax number:
   f. E-mail address:
   g. Party represented:
   ☐ Additional representation is described in Attachment 8.

9. **Preference**
   ☐ This case is entitled to preference *(specify code section)*:

10. **Alternative Dispute Resolution (ADR)**
    a. Counsel ☒ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
    b. ☐ All parties have agreed to a form of ADR. ADR will be completed by *(date)*:
    c. ☐ The case has gone to an ADR process *(indicate status)*:

00221

Mount & Stoelker

CM-110

| PLAINTIFF/PETITIONER: Mount & Stoelker, A Professiona | CASE NUMBER: |
| DEFENDANT/RESPONDENT: C-One Technology, A Taiwanese | 108 CV 105975 |

10. d. The party or parties are willing to participate in *(check all that apply)*:

    (1) [X] Mediation

    (2) [ ] Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)

    (3) [ ] Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)

    (4) [ ] Binding judicial arbitration

    (5) [ ] Binding private arbitration

    (6) [ ] Neutral case evaluation

    (7) [ ] Other *(specify)* :

   e. [ ] This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit

   f. [ ] Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

   g. [ ] This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption)* :

11. **Settlement conference**

   [ ] The party or parties are willing to participate in an early settlement conference*(specify when)* :

12. **Insurance**

   a. [ ] Insurance carrier, if any, for party filing this statement *(name)* :

   b. Reservation of rights: [ ] Yes [ ] No

   c. [ ] Coverage issues will significantly affect resolution of this case*(explain)* :

13. **Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.

   [ ] Bankruptcy   [ ] Other *(specify)*:

Status:

14. **Related cases, consolidation, and coordination**

   a. [ ] There are companion, underlying, or related cases.

      (1) Name of case:

      (2) Name of court:

      (3) Case number:

      (4) Status:

      [ ] Additional cases are described in Attachment 14a.

   b. [ ] A motion to [ ] consolidate [ ] coordinate will be filed by *(name party)* :

15. **Bifurcation**

   [ ] The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons)*:

16. **Other motions**

   [X] The party or parties expect to file the following motions before trial*(specify moving party, type of motion, and issues)*:

   MOTION FOR SUMMARY JUDGMENT.

00222

Mount & Stoelker

CM-110

| PLAINTIFF/PETITIONER: Mount & Stoelker, A Professiona | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: C-One Technology, A Taiwanese | 108 CV 105975 |

**17. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|

See 19 below.

c. ☐ The following discovery issues are anticipated *(specify):*

**18. Economic Litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**19. Other Issues**

☒ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):* See attached.

**20. Meet and confer**

a. ☒ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

**21. Case management orders**

Previous case management orders in this case are *(check one):* ☐ none ☐ attached as Attachment 21.

**22. Total number of pages attached** *(if any):* ___1___

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: June 23, 2008

Jerry R. Hauser
(TYPE OR PRINT NAME)                                    ▶ _____
                                                          (SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)                                    ▶ _____
                                                          (SIGNATURE OF PARTY OR ATTORNEY)
                                                          ☐ Additional signatures are attached

Mount & Stoelker

00223

## Attachment to Case Management Statement

**3.b.(1)**

Plaintiff has made a number of attempts to serve both C-One Technology and Pretec Electronics. C-One is a foreign corporation and Pretec is a dissolved corporation. Plaintiff has attempted on numerous occasions to serve the persons whom it believes can accept service on behalf of these entities, but have been unsuccessful. Even so, plaintiff believes that C-One and Pretec have made a general appearance based upon their opposition to request for a preliminary injunction. Further, on June 5, 2008, counsel for C-One and Pretec agreed to file a responsive pleading and/or a removal petition on or before June 19, 2008.

**19.**

Counsel for defendants C-One and Pretec stated that these parties have filed an action in Federal Court and will be filing a petition for removal or other responsive pleading before the case management conference. If C-One and/or Pretec do not make an appearance prior to the CMC, then plaintiff will be filing an ex parte application for a determination that said defendants' opposition to the motion for preliminary injunction constituted a general appearance and their failure to file a responsive pleading will allow the taking of their default. In the alternative, plaintiff will file a motion seeking an order that service on said defendants be completed by serving the Secretary of State.

00224

## PROOF OF SERVICE

*Mount & Stoelker v. C-One*

The undersigned declares:  I am a resident of the United States and am employed in the City and County of San Francisco, State of California; I am over the age of eighteen years and not a party to the within action; my business address is Phillips, Greenberg & Hauser, LLP, Four Embarcadero Center, 39th Floor, San Francisco, California 94111.  On the date indicated below, I served the following documents:

**CASE MANAGEMENT STATEMENT**

by placing a true copy thereof enclosed in a sealed envelope and served in the manner described below to the interested parties herein and addressed to:

Leodis Matthews
Matthews & Partners
4322 Wilshire Blvd., Suite 200
Los Angeles, CA 95110
(323) 930-5693

X      **BY FIRST CLASS MAIL:** By placing a true copy of each document listed above in (an) envelope(s) addressed as shown above, sealing the envelope(s) and placing them for collection and mailing, following ordinary business practices, at my employer's office on the date below written. to be deposited in the mail at my business address, I am readily familiar with this firm's business practice for collection and processing of correspondence for mailing with the United States Postal Service.  In the ordinary course of business such correspondence is deposited with the United States Postal Service at San Francisco, California, with first-class postage fully prepaid thereon, on the same day as I place it for collection and mailing.

X      **BY FACSIMILE TRANSMISSION:** By sending the documents listed above via facsimile transmission to the fax number(s) shown above on the date below written.  Pursuant to California Rules of Court, rule 2008(e), I caused the machine to print a transmission record of the transmission, a copy of which is attached to this declaration.

I declare under penalty of perjury under the laws of the State of California that the forgoing is true and correct. Executed on June 23, 2008 at San Francisco, California.

_____
Valerie Vitullo

00225

1

**Certificate of Service**
*[California Code of Civil Procedure §§ 1013a & 2015.5]*

2

3         I am employed in the County of Los Angeles, State of California. I am over the age of 18
and not a party within the action. My address is 4322 Wilshire Boulevard, Suite 200, Los Angeles, CA
90010.   On July 16, 2008 served the foregoing document(s), described as follows, on all interested

4    parties in this action by placing a true copy thereof

5    Title of Document:    **NOTICE OF REMOVAL OF SANTA CLARA SUPERIOR COURT
                           CASE NO 108 CV 105975 TO THE SAN FRANCISCO DIVISION**
6                          **OF THE UNITED STATE DISTRICT COURT FOR THE**
7                          **NORTHERN DISTRICT OF CALIFORNIA**

8    Case Number:

9    **SEE ATTACHED SERVICE LIST**

10   ☐    PERSONAL DELIVERY: On the above date I caused the above described document(s) to be
          personally hand delivered to the addressee(s)
11

12   ☐    FACSIMILE: On the above date, I caused the above-described document(s) to be sent to the
          addressee(s) via the facsimile number on the attached service list.

13   ☐    FEDERAL EXPRESS: On the above date I caused the above-described document(s) to be
          sent to the addressee(s) via Federal Express with the shipping charges fully prepaid.
14

15   ☐    REGULAR MAIL:

          ☐    I deposited such envelope(s) in the United States Mail at Los Angeles, California with
16               the postage thereon fully prepaid.

17        ☐    I caused such envelope(s) to be deposited in the mail at Los Angeles, California with
               postage thereon fully prepaid. I am "readily familiar" with the firm's practice of
18             collection and processing correspondence for mailing. It is deposited with the U.S.
               Postal Service on the same day in the ordinary course of business. I am aware that
19             on motion of the party served, service is presumed invalid of postal cancellation date
               or postage meter date is more than one day after the date of deposit for mailing in this
20             affidavit.

21         I declare under penalty of perjury under the laws of the State of California that the foregoing is
     true and correct. Executed on July 16, 2008 at Los Angeles, California.
22

23
                                                  Melanie Ocubillo
24

25

26

27

28

1

**Service List**

2

Counsel for Plaintiffs

3   Jerry Hauser
    Phillips, Greenberg & Hauser, LLP
    Four Embarcadero Center, 39th Floor
4   San Francisco, CA 94111
    Facsimile: (415) 398-5786
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28